UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SINGULARDTV, GmbH,** <br><br> *Plaintiff*, <br><br> v. <br><br> **JOHN DOE**, <br><br> *Defendant*. | Civil Action No.: 1:21-cv-6000 <br><br> **JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff SingularDTV, GmbH, ("SingularDTV" or "Plaintiff" or the "Company") hereby complains and alleges against John Doe ("Defendant") as follows:

## NATURE OF THE ACTION

1. This is a civil action for damages against Defendant arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a) ("RICO"), and the common law claims of conversion, fraud in the inducement and unjust enrichment.

## THE PARTIES

2. Plaintiff SingularDTV is a Swiss corporation organized and existing under the laws of Switzerland and is headquartered in New York, New York.

3. Upon information and belief, Defendant controls the arielevyycohen@gmail.com e-mail account (the "Fraudulent Account") that was used to harm SingularDTV. SingularDTV is unaware of the true name(s) of Defendant sued herein as John Doe. Plaintiff has conducted a reasonable search to determine the actual name of Defendant, but Defendant's identity remains unknown to Plaintiff. The John Doe designation is fictitious and serves as a placeholder until

SingularDTV can conduct discovery and uncover the actual identity of Defendant. Plaintiff will amend this Complaint to allege the true name and capacity of Defendant when ascertained.

## JURISDICTION AND VENUE

4. This is a civil action arising under 18 U.S.C. § 1030 (CFAA), 18 U.S.C. § 1962(a) (RICO), and common law claims of conversion, fraud in the inducement and unjust enrichment. All non-federal claims alleged in this Complaint are so related to the claims within the original jurisdiction of this Court such that they form part of the same case or controversy. As such, this Court has original subject-matter jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the non-federal claims pursuant to 28 U.S.C. § 1367(a).

5. This Court has personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. 302,[1] or in the alternative, Federal Rule of Civil Procedure 4(k),[2] because the resulting injuries from Defendant's tortious conduct (which may or may not have occurred within New York) have caused resulting injuries in the State of New York, and Defendant should reasonably have expected such acts to have consequences in New York; and (b) on information and belief,

---

[1] N.Y. CPLR § 302 (a)(3) provides, "a court may exercise personal jurisdiction over any non-domiciliary…who in person or through an agent…commits a tortious act without the state causing injury to person or property within the state…if he…expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

[2] Plaintiff is headquartered in New York, New York and Defendant's tortious conduct had resulting injury in the location where the company's operations take place. *See* Fed. R. Civ. P. § 4(k)(2)(a) establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."; *see also United States v. Int'l Bhd. of Teamsters*, 945 F. Supp. 609, 617 (S.D.N.Y. 1996) (holding that "Rule 4(k)(2) only provides federal courts with personal jurisdiction over a foreign defendant in federal question cases and only if the foreign defendant has sufficient contacts with the United States to satisfy due process requirements" and that courts will establish personal jurisdiction over a foreign corporate defendant where: "(1) the case arises under federal law, and is not pending before the court pursuant to the court's diversity jurisdiction and (2) that the foreign defendant lacks sufficient contact with any single state to subject it to personal jurisdiction there… [t]hen, the court must scrutinize plaintiff's allegations to ascertain whether plaintiff has demonstrated that defendant has sufficient aggregate contacts with the United States to comport with constitutional notions of due process.") (citations omitted).

Defendant has wrongfully derived a substantial financial benefit through interstate and/or international commerce.

6. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1391(b)(3), which allows for a civil action to be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action," if there is no district in which an action may otherwise be brought.

## FACTS

7. SingularDTV GmbH is a company that uses blockchain technology to create a decentralized distribution ecosystem for the entertainment and film industries. SingularDTV also used blockchain technology to form the SNGLS cryptocurrency tokens ("SNGLS" or the "Tokens"). The Tokens operate on the Ethereum platform and were sold to buyers in an initial coin offering on or around October 2, 2016.

8. SingularDTV has three shareholders: Joseph Lubin ("Lubin"), Arie Levy-Cohen ("Levy-Cohen") and Zach LeBeau ("LeBeau").

9. In or about February 2019, Lubin and LeBeau proposed a settlement to Levy-Cohen, pursuant to which he would relinquish his ownership interest in the Company in exchange for a release of all claims and a payment in the amount of 76,800,000 SNGLS Tokens and 11,520,000 SNGJ tokens (the "SNGJ Tokens").[3] The parties negotiated a settlement agreement (the "Settlement Agreement") that was drafted by Mr. Carl Volz, who at the time served as the Company's General Counsel ("Volz").

10. The parties failed to make headway with respect to the proposed settlement offer, which was rescinded by the Company in early 2020. Volz however persisted with the effort to

---

[3] The valuations of the SNGLS tokens and the SNGJ tokens are subject to fluctuations in the market price.

obtain a settlement and once again approached Levy-Cohen.

11.     On or around March 11, 2021 Levy-Cohen allegedly expressed interest in accepting the terms of the Settlement Agreement and communicated his willingness to execute the Settlement Agreement in an e-mail dated as of March 11, 2021. Volz and Levy-Cohen continued to discuss the settlement throughout the ensuing months via e-mail.

12.     All communications to Levy-Cohen leading up to the settlement were sent to and from arielevycohen@gmail.com. On information and belief, that e-mail address is owned by Levy-Cohen.

13.     On May 6, 2021, Volz received an e-mail from the Fraudulent Account (the "May 6th E-mail") that included a PDF copy of the Settlement Agreement with what appeared to be Levy-Cohen's signature above his name on the signature page (the "Fraudulent Agreement"). The May 6th E-mail contained the following e-mail message, which Plaintiff believed was sent by Levy-Cohen:

> From: Arie Y LEVY COHEN <arielevyycohen@gmail.com>
> Date: Thursday, May 6, 2021 at 6:39 AM
> To: Carl Volz <cvolz@breaker.io>
> Subject: Re: DRAFT Agreement
>
> Hi Carl,
>
> Attached are the signed documents as requested. I also include my SNGLS and SNGJ wallets below.
>
> SNGLS
> 0xfea5ec99b2b55412655985c9333137fe5e487f23
>
> SNGJ
> 0x2fdD1A203082f8dF9A93CE6A85d55610Ca049388
>
> Regards
>
> Arie

14.     Upon receipt of the May 6th E-Mail and the Fraudulent Agreement, which Volz believed to have been validly executed by the intended signatory, Levy-Cohen, Volz advised

LeBeau, the Company's Chief Executive Officer, to remit payment to Levy-Cohen on behalf of SingularDTV pursuant to the terms of the Settlement Agreement. On May 7, 2021, LeBeau wired 76,800,000 SNGLS tokens[4] to the cryptocurrency wallets designated by Defendant (the "Recipient Wallet Addresses"), who was believed to be Levy-Cohen.

15. After the SNGLS tokens were wired to the Recipient Wallet Addresses, they were subsequently wired to three separate wallet addresses and thereafter transferred to Binance.[5] Once transacted through Binance, no further transaction history is available.

16. Following the transfer to the Recipient Wallet Addresses, Levy-Cohen informed the Company that (a) he in fact did not sign the Settlement Agreement and (b) the Fraudulent Account was not owned by Levy-Cohen. Levy-Cohen asserted that Volz' computer network must have been hacked.

17. Based on an analysis by DAG Tech, LLC—the Company's information technology consultant—the owner of the Fraudulent Account gained access to the Company network and/or Volz's Company-issued computer without authorization. After gaining access, the Defendant, on information and belief, searched through Volz' e-mail and hand-picked a very specific Gmail user to impersonate, Levy-Cohen. Defendant then created a rule in Volz' e-mail system that redirected all e-mails to and from arielevycohen@gmail.com to an RSS subfolder, bypassing Volz' e-mail inbox. Defendant then proceeded to impersonate Levy-Cohen by replying to an old e-mail thread between Levy-Cohen and Volz, using the Fraudulent Account. The e-mail accounts are identical except for an extra 'y' in the Fraudulent Account, and Levy-

---

[4] As of the date the SNGLS tokens were sent to Defendant, the total valuation for the 76,800,000 SNGLS was approximately $2 million U.S. dollars.

[5] Binance Holdings Limited is a global cryptocurrency exchange that provides a platform for buying, selling and storing digital currencies. *See* BINANCE, https://www.binance.com/en (last visited July 7, 2021).

Cohen's signature on the Fraudulent Agreement is indistinguishable from Levy-Cohen's actual signature.

18. The Fraudulent Account, on information and belief, was created to impersonate Levy-Cohen for the purpose of inducing the Company to send cryptocurrency to a third party who was not Levy-Cohen.

19. Through this scheme, Defendant deceived SingularDTV personnel into believing that Levy-Cohen executed the Settlement Agreement and wrongfully obtained the payment intended for Levy-Cohen.

20. SingularDTV has exerted significant effort to retrieve the unlawfully obtained Tokens but has been unsuccessful. Through Defendant's fraudulent misrepresentation, Defendant unlawfully deprived SingularDTV of its property interest in the SNGLS tokens.

## CAUSES OF ACTION

### COUNT I: VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)

21. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 20 above.

22. Defendant's unauthorized access of the Company e-mail system constitutes a violation of the CFAA, 18 U.S.C. §§ 1030(a)(2) and 1030(a)(4).

23. Title 18, United States Code, Section 1030(g) provides that "any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

24. Defendant violated the CFAA, 18 U.S.C. §1030(a)(2) by intentionally accessing a protected computer without authorization or in excess of any authorization and thereby obtained

information from the protected computer in a transaction involving an interstate or foreign communication. *See* 18 U.S.C. § 1030(a)(2)(C).

25. The CFAA defines "protected computer" as, *inter alia*, a computer "which is used in or affecting interstate or foreign commerce or communication," 18 U.S.C. § 1030(e)(2)(B), a definition that has been interpreted to encompass any computer with an internet connection, *see United States v. Yücel*, 97 F.Supp.3d 413, 418–19 (S.D.N.Y. 2015) (collecting cases and noting "widespread agreement in the case law" that "protected computer" includes any internet-connected computer).[6]

26. The statute defines the term "exceeds authorized access" as the "means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6); s*ee also Van Buren v. United States*, 141 S. Ct. 1648, 1949 (2021) (holding that "an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him").

27. Defendant did not have authorization to access the Company's computer and e-mail systems, and as such, Defendant 'exceeded authorized access' in violation of the CFAA. Furthermore, the e-mail exchange between Volz and Defendant constitutes "a transaction involving an interstate or foreign communication."

28. In addition to the foregoing analysis, Defendant accessed the Company e-mail system with the intent to defraud SingularDTV of its property by inducing Volz and Plaintiff into

---

[6] Applied here, Plaintiff's computer system is one with an internet connection and thus constitutes a "protected computer" under the statute.

believing that Defendant was Levy-Cohen so that Defendant could obtain something of value — namely, vital information concerning the Settlement Agreement — in furtherance of the fraudulent misrepresentation that Defendant was Levy-Cohen to in order to obtain the Tokens.

29. Accordingly, Defendant also violated the CFAA, 18 U.S.C. §1030(a)(4) by knowingly and with the intent to defraud, accessing a protected computer by exceeding authorized access and by means of such conduct furthering the intended fraud and obtaining something of value. *See* 18 U.S.C. § 1030(a)(4).

30. Defendant's conduct has caused a loss to Plaintiff during a one-year period aggregating at least $5,000 in value.

31. Plaintiff has suffered damages resulting from Defendant's conduct and seeks compensatory damages pursuant to 18 U.S.C. §1030(g) in an amount to be proven at trial.

### COUNT II: VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") (18 U.S.C. § 1962(a))

32. All preceding paragraphs are repeated, re-alleged and incorporated as if fully set forth herein.

33. 18 U.S.C. §1941 creates a private right of action for civil litigants to bring a claim under a criminal statute.[7]

34. RICO provides that "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity…to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of

---

[7] 18 U.S.C. §1964(c) provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).[8]

35. Defendant directly received income (in this case the Tokens) derived from a pattern of a "racketeering activity."[9] 18 U.S.C. § 1962(c). Defendant committed acts indictable under 18 U.S.C. § 1343 (relating to wire fraud) by devising a scheme to defraud Plaintiffs into sending money or property by means of false or fraudulent pretenses and representations, thereby causing to be transmitted by means of wire in interstate or foreign commerce, writings for the purpose of executing such scheme. *See* 18 U.S.C. § 1343.

36. As a direct and proximate result of Defendant's false pretenses, Plaintiff was defrauded of property in an amount to be proven at trial.

## COUNT III: CONVERSION

37. All preceding paragraphs are repeated, re-alleged and incorporated as if fully set forth herein.

38. At all relevant times, Plaintiff was and continues to be the sole rightful owner of the Tokens.

39. Defendant, by her or his wrongful acts, unlawfully acquired property which was rightfully owned by Plaintiff and converted such property for Defendant's own use and benefit.

40. By reason of the foregoing, Plaintiff has sustained damages in an amount to be proven at trial.

---

[8] 18 U.S.C. § 2(a)-(b) defines "principal" as whoever: "(a) commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal; or (b) willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

[9] 18 U.S.C. § 1961(1)(B) defines "racketeering activity" as: "any act which is indictable under any of the following provisions of title 18, United States Code…section 1343 (relating to wire fraud)."

## COUNT IV: FRAUD IN THE INDUCEMENT

41. Under New York law, a claim for fraud in the inducement requires that plaintiff demonstrate: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 197 (S.D.N.Y. 2011).

42. Defendant created a deceptive e-mail account purporting to be the account of the rightful recipient of Tokens payable pursuant to the Settlement Agreement with the sole intention to inducing Plaintiff to transmit tokens to a digital cryptocurrency wallet owned by Defendant.

43. Defendant knew this misrepresentation was false.

44. Plaintiff reasonably relied on Defendant's misrepresentation and, as a result, Plaintiff suffered severe economic harm in an amount to be determined at trial.

## COUNT V: UNJUST ENRICHMENT

45. All preceding paragraphs are repeated, re-alleged and incorporated as if fully set forth herein.

46. Under New York law, an unjust enrichment cause of action must be supported with allegations that defendant was enriched at the plaintiff's expense and that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. *Cty. Of Nassau v. Expedia, Inc.*, 120 A.D.3d 1178, 1180, 992 N.Y.S.2d 293, 296 (2d Dept. 2014).

47. Through deceitful means, Defendant obtained a benefit upon SingularDTV furnishing the Tokens to Defendant that Defendant was not rightfully entitled to so receive.

48. Defendant has been unjustly enriched at the expense of Plaintiff, and accordingly, Plaintiff has suffered severe economic loss including but not limited to the value of the Tokens,

attorneys' fees, costs to recover the Tokens, and compensatory and punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant for the following:

(a) awarding compensatory and punitive damages in favor of Plaintiff for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at a final hearing,

(b) awarding Plaintiff's costs and attorneys' fees incurred in connection with this matter; and

(c) awarding Plaintiff such other relief as this Court may deem just and proper.

Dated: New York, New York
July 13, 2021

By: _/s/ Jerald M. Tenenbaum_
Jerald M. Tenenbaum.
87 Walker Street
New York, NY 10013
(212) 620-0938
jerald@m-t-law.com
*Attorneys for Plaintiff*