**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SINGULARDTV, GMBH,

                Plaintiff,

     v.

JOHN DOE

                Defendant.

Case No. 1:21-cv-6000

## <u>SINGULARDTV GMBH'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE OR, IN THE ALTERNATIVE, SUBSTITUTE COUNSEL</u>

November 29, 2021

KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

Benjamin J. A. Sauter
Christopher S. Cogburn

*Attorneys for Intervenor SingularDTV GmbH*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................... iii

**PRELIMINARY STATEMENT** ............................................................................... 1

**FACTUAL BACKGROUND** .................................................................................... 4

    I.   LeBeau, Lubin, And Levy-Cohen Found SingularDTV And Raise Initial Capital For The Company By Launching The SNGLS Token .................................................... 4

    II.  Lubin And Levy-Cohen Begin To Suspect That LeBeau Is Engaged In Self-Dealing ........ 5

    III. LeBeau Recklessly Or Fraudulently Transfers Millions Of Dollars Worth Of SNGLS And ETH From SingularDTV ....................................................................... 6

    IV. LeBeau Is Removed From SingularDTV Leadership And Stripped Of His Authority To Act For The Company ...................................................................................... 9

    V.  LeBeau And Jackson Instruct Morrison Tenenbaum To File This Action On Behalf Of SingularDTV, Despite Their Lack Of Authority To Do So. ........................... 11

**ARGUMENT** ............................................................................................................. 14

    I.   Because SingularDTV Did Not Authorize Morrison Tenenbaum To Initiate This Action On Its Behalf, It Has Yet To Effectively Appear In This Case ................................. 14

    II.  SingularDTV's Interest In The Subject Matter Of This Action Entitles It To Intervene ... 16

    III. Morrison Tenenbaum Has No Current Authority To Pursue This Action And Should Be Removed As Counsel Of Record. ................................................................. 18

**CONCLUSION** ........................................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. Nandi*,
   258 F. Supp. 2d 309 (S.D.N.Y. 2003) ................................................................ 18, 19

*Amusement Indus., Inc. v. Stern*,
   657 F. Supp. 2d 458 (S.D.N.Y. 2009) ...................................................................... 19

*ER Holdings, LLC v. 122 W.P.R. Corp.*,
   65 A.D.3d 1275, N.Y.S.2d 138 (2009) ...................................................................... 14

*Floyd v. City of N.Y.*,
   770 F.3d 1051 (2d Cir. 2014) ..................................................................................... 16

*Karimian v. Time Equities, Inc.*,
   No. 10 CIV. 3773 AKH JCF, 2011 WL 1900092 (S.D.N.Y. May 11, 2011) ............ 18

*Penn-Star Ins. Co. v. McElhatton*,
   818 F. App'x 67 (2d Cir. 2020) ................................................................................. 16

*Pereira v. Sonia Holdings, Ltd. (In re Artha Mgmt., Inc.)*,
   91 F.3d 326 (2d Cir. 1996) ........................................................................................ 14

*Rest. L. Ctr. v. City of New York*,
   360 F. Supp. 3d 192 (S.D.N.Y. 2019) ....................................................................... 14

*Stair v. Calhoun*,
   722 F. Supp. 2d 258 (E.D.N.Y. 2010) ....................................................................... 18

*U.S. Bank Nat'l Ass'n v. Nakash*,
   195 A.D.3d 651, 151 N.Y.S.3d 50 (2021) ........................................................... 15, 16

**Rules**

Federal Rule of Civil Procedure 24 ................................................................................ 13

Federal Rule of Civil Procedure 24(a) ........................................................................... 16

SingularDTV GmbH ("SingularDTV") respectfully submits this memorandum of law in support of its motion to intervene or, in the alternative, substitute counsel (the "Motion"). The Motion is supported by the Declaration of Benjamin J. A. Sauter, Esq. dated Nov. 29, 2021 ("Sauter Decl.") (Dkt. No. 13), the Declaration of Patrik Allenspach dated Nov. 26, 2021 ("Allenspach Decl.") (Dkt. No. 14), and the Declaration of Michael Mráz dated Nov. 26, 2021 ("Mráz Decl.") (Dkt. No. 15), all of which have been filed concurrently with the Motion.

## PRELIMINARY STATEMENT

This Motion seeks to rectify a troubling sequence of events in which a husband and wife, Zachary LeBeau and Kimberly Jackson, have apparently instructed their personal lawyer to file and pursue this case on behalf of SingularDTV, a company for which they have no authority to act. Strange enough in isolation, this case is part of a broader pattern of conduct by LeBeau and Jackson, who have since commandeered SingularDTV's corporate form in similar fashion in Switzerland, where they have purported to initiate a criminal complaint on the company's behalf. Worse still, LeBeau and Jackson are currently misappropriating SingularDTV's email accounts, trade secrets, and business assets worth over US $50 million, all of which are the subject of a related action and preliminary injunction motion being simultaneously filed by SingularDTV with this Court.

From the perspective of SingularDTV, LeBeau's erratic behavior is likely a ploy to generate leverage in an ongoing shareholder dispute between the Company's three co-founders and, potentially, to cover up LeBeau's own role in the hack at issue in this case and other fraudulent practices during his time at the Company. As described below, LeBeau was terminated as the chief executive officer of SingularDTV in May 2021, after the company began scrutinizing his self-dealing transactions and lax financial controls—the latter of which enabled the multimillion-dollar

fraud against the company that is the subject of this case—and after LeBeau then refused Board instructions to custody the company's remaining digital assets in a wallet with industry-standard multi-signature protections. Regrettably, this would not be the first time that LeBeau has been involved in a fraudulent scheme. In 2010, prosecutors charged LeBeau with a dozen felony counts based on his and others' use of sham expense records, generated through a film-production company, to steal transferrable tax credits from the state of Iowa.

Regardless of how the shareholder dispute is eventually resolved (LeBeau has initiated judicial dissolution proceedings that are currently underway in Switzerland), neither LeBeau nor Jackson—nor, by extension, the lawyer they have instructed to pursue this case—has authority to act for SingularDTV here. This is clear not only from SingularDTV's corporate records but also from LeBeau's own filings in his Swiss dissolution proceeding, which admit, among other things, that he "cannot represent the company anymore," "has been deprived of any ability to influence the company's operational developments," and has had his "authority to sign" revoked. For its part, the SingularDTV Board of Directors has specifically resolved that (i) Morrison Tenenbaum PLLC, purported counsel of record in this case, does not and never did have authority to represent the company, and (ii) to the extent that Morrison Tenenbaum was purportedly engaged by LeBeau and/or Jackson to represent the company, such purported engagement is null and void and otherwise hereby terminated.

Last but not least, the Company has very serious concerns about LeBeau's and Jackson's interest in directing this case and their impartiality in investigating the alleged hack. Not only was LeBeau responsible for recklessly sending out the Company funds at issue, but there are also a number of red flags in the filings to date suggesting LeBeau may have more to hide. In particular, although the Complaint (Dkt. 1 ¶¶ 9 & 13), Motion for Leave to Serve Subpoena (Dkt. 6 at 2-3),

Affidavit of Carl Volz (Dkt. 6-3 ¶¶ 18 & 19), and Affidavit of Kimberly Jackson (Dkt. 6-7 ¶ 9 n.1) all make reference to the transfer of 11,520,000 SNGJ tokens to the hacker, they avoid any mention what happened to those SNGJ tokens <u>after</u> the alleged hack and instead focus solely on the stolen SNGLS tokens. In fact, the public blockchain shows that the 11,520,000 SNGJ tokens were transferred on July 13, 2021 to a company called GazeTV[1]—a company co-founded by LeBeau and Jackson. The Motion for Leave to Serve Subpoena, filed in this case a week later on July 20, inexplicably did not mention or seek leave to serve a subpoena on GazeTV. The 11,520,000 SNGJ tokens were then transferred *back* to SingularDTV on August 2 to a wallet that LeBeau exclusively controls:

| Txn Hash | Method ⓘ | Age | From | | To | Quantity |
|---|---|---|---|---|---|---|
| | | | *** | | | |
| 👁 0x86f625eb5c165a0106... | Transfer | 113 days 15 hrs ago | GazeTV: Deployer | → | SingularDTV: Wallet | 11,553,586 |
| 👁 0x9b5575216e7c3afc55... | Transfer | 133 days 8 hrs ago | 0x4bb475803d571041f2... | → | GazeTV: Deployer | 6,587,059.99 |
| 👁 0x2939f61db14d28eb21... | Transfer | 133 days 11 hrs ago | 0x018da4aba1bf9ee9dd... | → | GazeTV: Deployer | 4,966,526 |

The status updates submitted to this Court on September 16, October 19, and November 16 likewise make no reference to these SNGJ tokens nor of their return to the SingularDTV wallet that LeBeau controls.

It is highly suspicious, to say the least, that an action purportedly intended to uncover the perpetrator of the hack would focus on SNGLS transfers to an offshore exchange notorious for evading U.S. disclosures, while glossing over the SNGJ transfers to and from a company co-founded by LeBeau and Jackson.

---

[1] *See* https://etherscan.io/token/0x249f71f8d9da86c60f485e021b509a206667a079.

By this motion, SingularDTV seeks to intervene in this case, regain control and oversight of the litigation purportedly filed on its behalf, and replace the current counsel of record with the lawyers of SingularDTV's choosing. For the reasons set forth below, SingularDTV respectfully requests that this Motion be granted and its attorneys at Kobre & Kim LLP be recognized as its counsel of record.

## **FACTUAL BACKGROUND**

I. **LeBeau, Lubin, And Levy-Cohen Found SingularDTV And Raise Initial Capital For The Company By Launching The SNGLS Token.**

SingularDTV is a private company organized under and governed by Swiss law.[2] It was founded in December 2016 for the purposes of "development, marketing, distribution and licensing of software, in particular the creation of a Blockchain and Ethereum-based production and distribution platform, as well as the development, marketing, distribution and licensing of high-quality film and TV content." (Allenspach Decl. at ¶ 3 and Ex. 1 (the "Articles of Association") art. 2.) SingularDTV's shares were divided among its three founders in accordance with their respective capital contributions: Zachary LeBeau, Joseph Lubin, and Arie Levy-Cohen. (*Id.* at ¶ 4.) LeBeau and Lubin each received 43-percent ownership shares in SingularDTV, while Levy-Cohen received the remaining 14 percent. (*Id.*) In addition to their ownership interests, each of the founders acted as managing directors for SingularDTV and held executive positions at the company. (*Id.*) Specifically, LeBeau acted as the company's Chief Executive Officer ("CEO"), Levy-Cohen as its Chief Financial Officer ("CFO"), and Lubin as its Chief Technology Officer ("CTO"). (*Id.*) In late 2018, SingularDTV also engaged Kimberly Jackson, LeBeau's common-

---

[2] The Complaint filed in this case states that "Plaintiff is headquartered in New York, New York[.]" (Dkt. 1, n.2.) That allegation is false. SingularDTV is a *Gesellschaft mit beschränkter Haftung*, a corporate form under Swiss law that is roughly equivalent to the limited liability company form available under the laws of most U.S. states. SingularDTV's headquarters are located in Zug, Switzerland. (*See* Articles of Association, art. 2, *see also* Mráz Decl. at ¶ 11, Ex. 7)

law wife, as an independent contractor who would provide Chief Operating Officer ("COO") services to the company. (*Id*.) However, Jackson was never authorized to unilaterally sign contracts or other legally binding instruments on the Company's behalf. (*Id*.; Mráz Decl. ¶¶ 9, 10.)

Shortly before incorporating SingularDTV, the founders launched an Ethereum-based cryptographic token, SNGLS, to raise money for a range of initial projects, including an original television series, a documentary division, a digital-rights-management platform, and a video-on-demand distribution portal. (Allenspach Decl. at ¶ 5.) The launch generated one billion SNGLS tokens, all of equivalent value, through a smart-contract system. (*Id*.) 500 million of those tokens were purchased at launch at a value of 0.00116 ETH per token, raising approximately 580,000 ETH (worth roughly US $7.5 million at the time). (*Id*.) 100 million SNGLS tokens were allocated to SingularDTV's early financial contributors. (*Id*.) The remaining 400 million tokens were allocated to founders, to be used for the benefit of SingularDTV. (*Id*.)

## II.  Lubin And Levy-Cohen Begin To Suspect That LeBeau Is Engaged In Self-Dealing.

Since the inception of SingularDTV and the launch of SNGLS, the relationship between LeBeau and the other two founders has soured. (*Id.* at ¶ 6.) This fracture was caused primarily by Defendants' attempts to control the Company through a separate New York business entity that they control—SingularDTV, LLC—which is wholly owned by Jackson and does business under the trade name Breaker LLC ("Breaker"),[3] and to which LeBeau is believed to have diverted assets via a unilateral invoicing-and-payment scheme. (*Id*.) Regrettably, this would not be the first time that LeBeau has been involved in a fraudulent invoicing scheme: he was previously charged with felony fraud for engaging in many of the same practices that are suspected to have occurred at

---

[3]  To avoid confusion, this memorandum will refer to SingularDTV, LLC as "Breaker."

SingularDTV, such as submitting exaggerated or fictitious expenses.[4] According to various contemporaneous news articles, LeBeau was a "participant in a criminal network that unlawfully exaggerated expenditures far beyond their actual fair-market values on applications for tax credits," and "there was evidence of double-billing and highly inflated expenditures—many that were for in-kind services or in-kind payments where no actual transactions took place."[5]

## III.   LeBeau Recklessly Or Fraudulently Transfers Millions Of Dollars Worth Of SNGLS And ETH From SingularDTV.

Lubin's and Levy-Cohen's faith in LeBeau reached a breaking point this past May, when an alleged hacker—allegedly using a spoofed e-mail address and aided by unauthorized access to an email account of SingularDTV's then-general counsel—allegedly impersonated Levy-Cohen for the purpose of stealing digital assets from the company. (*Id.* at ¶ 14; Mráz Decl. at ¶ 3.) Allegedly duped by this scheme, on May 6, 2021, LeBeau (then-CEO of SingularDTV) transferred 76.8 million of SingularDTV's SNGLS tokens and 11,520,000 of SingularDTV's SNGJ tokens to two digital wallet addresses provided by the hacker, without Board approval—indeed, without even discussing the transfer with the other SingularDTV Directors, one of whom (Levy-Cohen) was the intended recipient of the funds. (Allenspach Decl. at ¶ 14, Mráz Decl. at ¶ 3.) At the time of the transfer, these tokens were worth approximately US $2 million. (Allenspach Decl. at ¶ 14, Mráz Decl. at ¶ 3.) The hacker has since apparently transferred these SNGLS tokens to Binance, an offshore cryptocurrency exchange, making it virtually impossible—as LeBeau well knows—to recover the assets. (Allenspach Decl. at ¶ 14)

---

[4] In 2010, prosecutors in Iowa charged LeBeau with a dozen counts of fraud-based felonies for his role in a scheme to defraud the State through their film tax credit program. Prosecutors eventually dropped the charges against LeBeau after he agreed to cooperate in prosecuting other members of his criminal network. *See* https://www.mprnews.org/story/2011/01/14/iowa-movie-program-plea-mn-filmmaker.

[5] *See* https://wcfcourier.com/news/local/govt-and-politics/separate-trials-ordered-for-accused-filmmakers/article_80281dac-8b8a-540e-bfd1-9750b45334d8.html.

SingularDTV intends to further investigate this sequence of events (the "Hack") and has not ruled out the involvement of one or more company insiders, including LeBeau. (Mráz Decl. at ¶ 3.) Indeed, according to public blockchain data, the SNGJ tokens that LeBeau transferred to the alleged hacker on May 6 were subsequently paid into a company called GazeTV.



(*See* Sauter Decl. ¶ 5.) According to GazeTV's historical website and other media reports, LeBeau and Jackson are two of GazeTV's three co-founders. (Sauter Decl. ¶ 4 & Exs. 1-3.)[6]

What is more, on August 2, GazeTV transferred 11,553,586 SNGJ tokens back to the same SingularDTV wallet that LeBeau exclusively controls and from which he initially sent those tokens to the alleged hacker.[7]

| Txn Hash | Method ⓘ | Age | From | To | Quantity |
|---|---|---|---|---|---|
| | | *** | | | |
| 0x86f525eb5c165a0106... | Transfer | 113 days 15 hrs ago | GazeTV: Deployer | → SingularDTV: Wallet | 11,553,586 |
| 0x9b5575216e7c3afc55... | Transfer | 133 days 8 hrs ago | 0x4bb475803d571041f2... | → GazeTV: Deployer | 6,587,059.99 |
| 0x2939f51db14d28eb21... | Transfer | 133 days 11 hrs ago | 0x018da4aba1bf9ee9dd... | → GazeTV: Deployer | 4,966,526 |

(*See* Sauter Decl. ¶ 5.) Inexplicably, the filings in this case to date make no mention of GazeTV, nor of its transfer of the allegedly stolen SNGJ tokens back to the wallet controlled by LeBeau.

---

[6] LeBeau's and Jackson's role in creating GazeTV has since been removed from its website, potentially in an effort to obscure their connection to the Hack. According to the same sources, the third founder of GazeTV is Jack Cheng, a business associate and confidant of LeBeau who was previously employed by Breaker.

[7] *See* https://etherscan.io/token/0x249f71f8d9da86c60f485e021b509a206667a079.

As it turns out, LeBeau's transfer of SNGJ tokens out of SingularDTV on May 6 may not even have been the first time that week that he transferred substantial Company assets to an entity in which LeBeau and Jackson have an apparent interest. Just two days earlier, on May 4, LeBeau secretly transferred 599 ETH (worth just under US $2 million at the time) from the Company's Cold Wallet to Breaker. On information and belief, Breaker then transferred those assets to another New York company named Writers Block LLC.



On information and belief, Writers Block was an entity created by LeBeau, Jackson, and/or others acting on their behalf to produce films for Breaker. The registered address for Writers Block LLC is 40 Fulton Street, 5th Floor, New York NY 10038—the same address at which Breaker was registered in 2016. (Sauter Decl. at ¶ 6, Exs. 4-5.) Edward Greenwood, a current and/or former Breaker employee, has made corporate filings on behalf of Writers Block LLC. (*See id.*, Ex. 7)

In the aftermath of the Hack, Lubin, through counsel and in his capacity as a Director, wrote to LeBeau to demand an explanation for LeBeau's unilateral and reckless transfer of such substantial company assets. (Allenspach Decl. at ¶ 15.) Lubin's letter also insisted that, to avoid similar catastrophes in the future, LeBeau transfer SingularDTV's digital assets—including the remaining ETH and company SNGLS tokens—to a more secure storage method involving multi-signature protections (*i.e.*, digital asset wallets requiring the consent of multiple digital "signatories"

to effectuate any transfer) or to a wallet custodied at the company's residential bank in Switzerland. (*Id.*) In fact, the digital assets were always intended to be held under multi-signature protections, which LeBeau resisted with vague assurances that the company's assets were "safe" without those protections. Yet LeBeau refused to explain his conduct during the Hack or the lack of multi-signature protections on the wallet currently holding the digital assets, nor did he make any commitment to transfer the company's assets to a custody arrangement protected by industry-standard multi-signature protocols. (*Id.*)

## IV.   LeBeau Is Removed From SingularDTV Leadership And Stripped Of His Authority To Act For The Company.

Given LeBeau's failure to explain his actions or respond to the other Directors' efforts to exercise oversight and secure company assets, Levy-Cohen—acting as chairman of SingularDTV's Board of Directors—invited the company's Directors to participate in a Board meeting on May 27 to discuss "the compliance incident" (*i.e.*, the Hack) and "resolutions to be taken" in response, including "the exit of [LeBeau] as CEO." (Mráz Decl. at ¶ 4, Ex. 2 at 1.) Although LeBeau raised unfounded objections to the invitation, agenda, and timing of the May 27 meeting (and ultimately refused to attend despite never officially excusing himself), the meeting was convened in accordance with Swiss law and SingularDTV's bylaws, and a quorum of the company's directors participated. (*See id.* at ¶ 5, Ex.3 (the "Bylaws") §§ IV.C (requiring "notice of any board meeting . . . not less than seven (7) days prior to the date of the meeting"), IV.D ("A board meeting is validly constituted, if at least 50% [of] the Managing Directors are present (including by video or telephone conference).").) At the meeting, SingularDTV's board of directors voted to:

- terminate LeBeau as CEO with immediate effect;
- revoke LeBeau's signatory powers and authority to act on SingularDTV's behalf;

- direct LeBeau to return SingularDTV assets to a multi-signature custody arrangement controlled by SingularDTV;
- terminate SingularDTV's relationship with Breaker LLC "as soon as possible"; and
- cease "any spending on content" immediately and "take[] all steps to completely exit any remaining obligations for the production of content, effective immediately."

(*Id.* at ¶ 6, Ex. 4 (the "May 27 Board Minutes").)

On May 28, 2021, SingularDTV terminated the Services Agreement between SingularDTV and Breaker and instructed Jackson "to perform no additional work from receipt of this notice," "to incur no additional fees," and to "full[y] deliver [. . .] any intellectual property or financial assets held by Breaker LLC on behalf of Singular[DTV]." (*Id.* at ¶ 7, Ex. 5.) Neither Jackson nor LeBeau responded to this notice—and, based on their actions since, appear to have ignored it altogether. (*Id.* at ¶ 8.) After Jackson failed to surrender or even respond to SingularDTV's request to deliver its intellectual property and financial assets, on June 8, 2021, the Board resolved to terminate Jackson's position as COO. (*Id.* at ¶ 9, Ex. 6.)

The Swiss Commercial Register provides the legally authoritative record of SingularDTV's directors and authorized signatories according to Swiss law. (*Id.* at ¶ 11, Ex. 7.) The Commercial Register clearly and unambiguously shows that LeBeau has been removed as an authorized signatory of SingularDTV and that Jackson never was an authorized signatory. (*Id.*, Ex. 7.)

LeBeau himself recently and repeatedly admitted his lack of authority to act for SingularDTV in a September 24, 2021 filing in Switzerland in which he seeks judicial dissolution of SingularDTV:

- "Lubin and Cohen had already revoked plaintiff's authority to sign and had it removed from the commercial register."
- "The plaintiff cannot represent the company anymore. He has been deprived of any ability to influence the company's operational developments."

- "The agenda includes the removal of the plaintiff as managing director of the company. Due to the majority situation in the company, it is to be expected that the plaintiff will be voted out of office."
- "As a result, Lubin and Cohen can henceforth exercise operational control over the company and its assets without accountability to Plaintiff."
- "He [LeBeau] can hardly have any influence on the happenings of the company. Likewise, he is currently excluded from the management of the company."

(*Id.* at ¶ 12, Ex. 8.)

## V.   LeBeau And Jackson Instruct Morrison Tenenbaum To File This Action On Behalf Of SingularDTV, Despite Their Lack Of Authority To Do So.

Without notifying the Company, Lebeau and/or Jackson apparently authorized Morrison Tenenbaum to file this federal action on or about July 13, 2021, identifying "SingularDTV GmbH" as the plaintiff. (*See generally* Compl. (Dkt. No. 1).) In addition, despite the fact that the Board passed a resolution removing Jackson as COO in June 2021, she submitted a declaration in this case in July 2021 omitting that fact and stating that "I am the Chief Operating Officer of Plaintiff company, SingularDTV GmbH[.]" (Allenspach Decl. at ¶ 7.) Jackson likewise neglected to mention that, even during the period when she was SingularDTV's COO, she had no unilateral authority to enter into contracts on the company's behalf or otherwise bind the company.

SingularDTV has no record or knowledge of the terms or scope of its purported engagement of Morrison Tenenbaum. (*Id.* at ¶ 8.) Under SingularDTV's bylaws, the power to enter into significant contracts on the company's behalf—including those with outside legal counsel—devolves directly from the board of directors: "The Board appoints the persons authorized to represent the company and sign on its behalf [and] determines their signing authority." (Mráz Decl. Ex. 3 (Bylaws § VI).) SingularDTV's Board never authorized Morrison Tenenbaum to act on its behalf in this matter. Instead, after learning about this matter after it was filed, SingularDTV retained Kobre & Kim for purposes of representing its interests in this matter. (Allenspach Decl. at ¶ 8.) In addition, the company bylaws require that agreements executed on behalf of the company

11

"be filed at the company's address" in Switzerland and that, "[w]here applicable, Board minutes confirming the quorum approval for a specific contract will be filed attached to the company's execution copy" of that contract. (Mráz Decl. Ex. 3 (Bylaws § VI).) Neither LeBeau nor Jackson has filed the purported engagement with Morrison Tenenbaum at SingularDTV's Swiss headquarters. (Allenspach Decl. at ¶ 8.)

Worse still, LeBeau, Jackson, and Morrison Tenenbaum then filed *another* complaint in New York Supreme Court on behalf of LeBeau, both in his personal capacity and as a purported derivative plaintiff for SingularDTV. (*Id.* at ¶ 11.[8]) Morrison Tenenbaum named SingularDTV as a nominal defendant in the case, notwithstanding its purported ongoing representation of SingularDTV in this federal action. (*Id.*)

To be clear, neither LeBeau, Jackson, nor Morrison Tenenbaum has any current authority to act for SingularDTV. (*Id.* at ¶ 12.) The Board has specifically and expressly disavowed any purported engagement of Morrison Tenenbaum and otherwise terminated any such engagement:

> The Board of Managing Directors resolves that Morrison Tenenbaum does not and never did have authority to represent the Company in any way. To the extent that Morrison Tenenbaum was purportedly engaged to represent the Company, such purported engagement is, to the extent possible by law, nul and void or otherwise it is hereby terminated. The Board of Managing Directors hereby resolves to not ratify any contract that Morrison Tenenbaum has entered into on behalf of the Company without authority and to revoke any authority that the Company purportedly has given to Morrison Tenenbaum to act on behalf of the Company.

(*Id.* Ex. 4.)

SingularDTV has attempted to meet and confer with Morrison Tenenbaum and LeBeau regarding their dubious course of action. On November 5, 2021, undersigned counsel attempted to

---

[8] *See Zach LeBeau v. Joseph Lubin, et. al. & SingularDTV GmbH*, 1:21-CV-06000-VEC (N.Y. Sup. Ct.).

meet and confer with Morrison Tenenbaum and Neil Postrygacz, who acts as counsel to LeBeau and Breaker and with whom Morrison Tenenbaum is apparently working. Mr. Postrygacz cancelled the call hours before it was set to occur. Undersigned counsel then rescheduled the call for November 8, 2021. On that day undersigned counsel met and conferred with Mr. Postrygacz and Morrison Tenenbaum, among other law firms, and requested that Morrison Tenenbaum explain, among other things, (a) who from SingularDTV purported to retain it and when; (b) the nature and scope of its purported representation of SingularDTV; and (c) whether it would consent to a substitution of counsel in favor of Kobre & Kim LLP. (Sauter Decl. ¶¶ 7 & 8.) Morrison Tenenbaum has refused to provide the requested information and stated during the parties' meet and confer discussion that the parties are at an impasse on these issues. Morrison Tenenbaum has since stated that it would be "open to discussing joint representation" in this case, but the Company has no interest in such an arrangement.

SingularDTV now finds itself in the obviously untenable scenario of an ousted director and officer and their personal lawyer hijacking SingularDTV's corporate form and using it to pursue unauthorized litigation beyond its control. Under the circumstances, SingularDTV has no choice but to move under Federal Rule of Civil Procedure 24 to intervene in this action by and through its chosen legal representatives, Kobre & Kim LLP. (*See* Allenspach Decl. at ¶ 8.) SingularDTV's interest in this action—which purportedly seeks to investigate the Hack and recover damages incurred by the company as a result of LeBeau's reckless management of company funds—is beyond question. Intervention is the correct procedural mechanism for its appearance in the case given that all previous actions taken on its behalf were unauthorized and are therefore voidable under basic principles of agency law. In the alternative, SingularDTV respectfully requests that,

under Local Civil Rule 1.4, the Court remove Morrison Tenenbaum and install Kobre & Kim as counsel of record.

## ARGUMENT

**I.    Because SingularDTV Did Not Authorize Morrison Tenenbaum To Initiate This Action On Its Behalf, It Has Yet To Effectively Appear In This Case.**

Every action Morrison Tenenbaum has purported to take on SingularDTV's behalf is null and void under established principles of agency law. "The relationship between lawyer and client is one of agent and principal." *Pereira v. Sonia Holdings, Ltd. (In re Artha Mgmt., Inc.)*, 91 F.3d 326, 328 (2d Cir. 1996). Like any other agency relationship, the touchstone of the attorney-client relationship—both in determining whether it exists and in delineating the scope of the attorney's authority—is the client's consent. *See* Restatement (Third) Agency § 1.01 cmt. d (explaining that creation of agency relationship "requires that an agent-to-be and a principal-to-be consent to their association with each other" because "agency is a consensual relationship"); *accord Rest. L. Ctr. v. City of New York*, 360 F. Supp. 3d 192, 230 (S.D.N.Y. 2019) ("Under ordinary agency principles, an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." (internal quotation marks omitted)). "An agent must have authority, whether apparent, actual or implied, to bind his principal." *Restaurant Law Ctr.*, 360 F. Supp 3d. at 230. As a result, actions undertaken by an agent without the principal's authority do not bind the principal; instead, they are null unless and until the principal ratifies them. *See, e.g.*, *ER Holdings, LLC v. 122 W.P.R. Corp.*, 65 A.D.3d 1275, 887 N.Y.S.2d 138, 139 (2009). And because any action taken by a purported agent is necessarily unauthorized if no principal-agent relationship exists, all such actions are voidable at the option of the purported principal.

As recently as this summer, a state appellate court confirmed that this bedrock principle of agency law extends to attorney-client relationships governed by New York law. In *U.S. Bank National Ass'n v. Nakash*, the Second Department of the New York Supreme Court's Appellate Division held that actions taken by a lawyer that the defendant "did not know" and "never authorized . . . to represent her," including accepting service of motion papers, could not be attributed to or otherwise bind the defendant. 151 N.Y.S.3d 50, 54 (N.Y. App. Div. 2021). This lack of authority had far-reaching implications: because service of motion papers on the lawyer could not be attributed to the defendant, the trial court was "depriv[ed] . . . of jurisdiction to entertain th[o]se motions," which rendered "much of the resulting order," along with a subsequent "order and judgment of foreclosure and sale," "nullities that must be vacated." *Id.* at 54–55.

Neither LeBeau nor Jackson had authority to initiate or direct this litigation. Based on LeBeau's retention of Morrison Tenenbaum to represent him personally in the New York State Derivative Complaint action, SingularDTV presumes that LeBeau is also purporting to instruct Morrison Tenenbaum directly or indirectly in this federal action. If true, LeBeau's "retention" of Morrison Tenenbaum on the company's behalf is clearly *ultra vires*: even if LeBeau had at one time been empowered as SingularDTV's CEO to unilaterally retain and instruct outside counsel on the company's behalf, he was stripped of that power when the board terminated him and revoked his signatory authority on May 27—over a month *before* the complaint in this action was filed. *See* Mráz Decl. at ¶ 6, Ex. 4, at 1. Likewise, Jackson did not have authority to instruct Morrison Tenenbaum because the Board resolved to terminate her position as COO on June 8, 2021. Neither LeBeau nor Jackson ever obtained Board authorization to hire Morrison Tenenbaum, and the Board has expressly disavowed any such authorization. (*See* Allenspach Decl. ¶ 12.)

In sum, SingularDTV—the purported plaintiff in this action—has, to date, participated in this case solely through a law firm that is not authorized to represent it. All actions taken on SingularDTV's behalf in connection with this matter, up to and including SingularDTV's status as a party to the case, are therefore "nullities." *U.S. Bank Nat'l Ass'n*, 151 N.Y.S.3d at 55. Accordingly, SingularDTV now moves to intervene in the case through its duly authorized counsel, Kobre & Kim LLP. (*See* Allenspach Decl. at ¶ 8.)

## II.     SingularDTV's Interest In The Subject Matter Of This Action Entitles It To Intervene.

Under Federal Rule of Civil Procedure 24(a), courts "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Thus, to intervene, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Penn-Star Ins. Co. v. McElhatton*, 818 F. App'x 67, 70 (2d Cir. 2020).

SingularDTV meets all four criteria for intervention. To begin with, SingularDTV's motion to intervene is timely. Although the timeliness requirement "defies precise definition," the Second Circuit has instructed that "[f]actors to consider in determining timeliness include: (a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Floyd v. City of N.Y.*, 770 F.3d 1051, 1058 (2d Cir. 2014) (internal quotation marks omitted). Because SingularDTV is the only named party to to the case—and because the

John Doe defendant has not yet been identified, much less served with process or involved in any other way—SingularDTV's intervention will cause no prejudice at all.

On the other hand, allowing Morrison Tenenbaum to persist as counsel of record would severely prejudice SingularDTV's ability to exercise oversight of this litigation and vindicate any interest it may have in the investigation of the Hack or a recovery from the party or parties responsible. SingularDTV does not have any control over Morrison Tenenbaum's actions. And while SingularDTV has no direct knowledge of why LeBeau and/or Jackson might have instructed their personal lawyer of choice to file the complaint in this case, the fact that they apparently did so mere weeks after being removed from their executive roles is deeply concerning. Moreover, because LeBeau was responsible for the transfer of assets stolen through the Hack—and, indeed, may have been involved in the Hack itself or subsequent transfers of assets—SingularDTV has no confidence that this action is a good-faith attempt to investigate the Hack. Furthermore, LeBeau's refusal to surrender company assets and his suspected involvement in a rash of self-dealing during his time as CEO creates doubts that any recovery in this action would ever make it into SingularDTV's hands. LeBeau may also have personal incentives to use information he gains through discovery in this case to advantage his prosecution of the Derivative Complaint, even though any such information should be treated as company property and may include confidential or otherwise sensitive information that could be damaging to the company's interests if filed on a public docket.

Finally, there can be no dispute that SingularDTV has an interest in this case, nor that it is the only party capable of fully vindicating that interest. The claims in this case relate to a theft of SingularDTV's property, achieved through a serious breach of SingularDTV's computer systems and lack of managerial controls, and seek to recover damages on behalf of SingularDTV.

Permitting anyone but SingularDTV to exercise control over the pursuit of those claims—particularly the former executive who at a minimum recklessly allowed the funds to be paid out—is self-evidently wrong. The Court can avoid such a perverse result by granting SingularDTV's motion to intervene.

III.    **Morrison Tenenbaum Has No Current Authority To Pursue This Action And Should Be Removed As Counsel Of Record.**

Even if the Court finds that Morrison Tenenbaum was initially authorized to initiate this action, that law firm has no current authority to represent SingularDTV and should therefore be removed as counsel of record. Local Civil Rule 1.4 empowers courts in this District to "relieve[] or displace[]" a lawyer "who has appeared as attorney of record for a party" where the movant demonstrates "satisfactory reasons" for removing the lawyer from the representation. The rule further instructs courts to consider "the posture of the case, including its position, if any, on the calendar, and whether or not the attorney is asserting a retaining or charging lien." *Id.* The flexible "satisfactory reasons" standard entrusts "to the sound discretion of the trial court" the decision whether to displace a lawyer who has formally appeared for a party. *Karimian v. Time Equities, Inc.*, No. 10 CIV. 3773 AKH JCF, 2011 WL 1900092, at *2 (S.D.N.Y. May 11, 2011) (quoting *Stair v. Calhoun*, 722 F. Supp. 2d 258, 264 (E.D.N.Y. 2010)).

Despite the discretion incorporated into Local Civil Rule 1.4, courts in this District have made clear that "the order to withdraw should issue" in cases where "counsel has been discharged" unless "the most compelling circumstances" warrant denial. *Allstate Ins. Co. v. Nandi*, 258 F. Supp. 2d 309, 311 (S.D.N.Y. 2003) (internal quotation marks and alterations omitted). This is consistent with Rule 1.16(b)(3) of the New York Rules of Professional Conduct, which "mandates that an attorney withdraw if he or she has been discharged by the client." *Id.* This logic applies with even

greater force where, as here, the client has not merely "discharged" its lawyer but disputes that the lawyer was ever legitimately retained at all.

Here, Morrison Tenenbaum is not authorized to continue acting on the company's behalf. (*See* Allenspach Decl. at ¶ 12, Ex. 4.) The Board has specifically resolved that (i) Morrison Tenenbaum does not and never did have authority to represent the company, and (ii) its purported engagement is null and void and, to the extent necessary, terminated. (*Id.*)

Thus, the reasons favoring Morrison Tenenbaum's removal are more than "satisfactory" (*see* L. Civ. R. 1.4); they implicate SingularDTV's fundamental "right to the counsel of its choice." *Amusement Indus., Inc. v. Stern*, 657 F. Supp. 2d 458, 460 (S.D.N.Y. 2009). And there are no circumstances—let alone ones "most compelling," *see Allstate Ins. Co.*, 258 F. Supp. 2d at 311— that would justify permitting Morrison Tenenbaum to continue as counsel of record for a client that it has no ongoing authority to represent. Nor do any of the other considerations identified in Local Civil Rule 1.4 militate against substitution. The action was initiated some five months ago, and Morrison Tenenbaum's service of third-party subpoenas appears to be the only material development in the case beyond the filing of the complaint. The matter is not set for trial—indeed, based on the public docket, the case does not appear to occupy any particular space on the court's calendar. And Morrison Tenenbaum has not asserted a retaining lien, nor does it have any basis to retain work product it performed in the course of an attorney-client relationship that never existed.

Under these circumstances, if the Court concludes that Morrison Tenenbaum at one time had authority to initiate this action, SingularDTV respectfully requests that the interests of justice require that Morrison Tenenbaum now be displaced from a representation that its putative client has no interest in maintaining. The Court should remove Morrison Tenenbaum as counsel of record and substitute Kobre & Kim to act on SingularDTV's behalf.

## **CONCLUSION**

For the reasons above, SingularDTV respectfully requests that the Court grant its motion to intervene or, in the alternative, substitute counsel.

Dated: New York, New York
      November 29, 2021

                                    Respectfully submitted,

                                    /s/ Benjamin J. A. Sauter
                                    Benjamin J. A. Sauter
                                    benjamin.sauter@kobrekim.com
                                    Christopher S. Cogburn
                                    christopher.cogburn@kobrekim.com
                                    KOBRE & KIM LLP
                                    800 Third Avenue
                                    New York, NY 10022
                                    Telephone: (212) 488-1200
                                    Facsimile: (212) 488-1220

                                    *Attorneys for Intervenor SingularDTV GmbH*