# EXHIBIT 5

DocuSign Envelope ID: E924E726-7695-4AF2-9458-8BE855230DE4

May 28, 2021

SingularDTV GmbH.

Kim Jackson Et Al.,

Pursuant to Resolution six (6) of the attached meetings of the most recent SingularDTV GmbH ("Singular") board of directors and my authority thereunder, I write to provide notice to you of Singular's termination of its Amended Services and Development Agreement with SingularDTV LLC now known as or d/b/a Breaker LLC ("Breaker LLC"), a copy of which is attached hereto (the "Development Agreement").

You are instructed that through Paragraph 39 of the Development Agreement, Singular terminates the Development Agreement effective June 11, 2021 (the "Termination Date"). You are instructed to perform no additional work from receipt of this notice, and to incur no additional fees. You are further instructed to provide a final accounting of any fees in advance of the Termination Date, as well as full delivery of any intellectual property or financial assets held by Breaker LLC on behalf of Singular.

Further, you are instructed that "Breaker" is a trademark of Singular (the "Trademark"), and that effective immediately, Singular has withdrawn its consent to your use of the Trademark.

Sincerely,

*Joseph Lubin*
DocuSigned by: 835D0047BC394A9...

Joseph Lubin, Director for SingularDTV GmbH

DocuSign Envelope ID: E924E726-7695-4AF2-9458-8BE855230DE4

# Amended Service and Development Agreement (the "Agreement")

**between**

SingularDTV GmbH
Gugelstrasse 11, 6300 Zug, Switzerland

(hereinafter "Client")

**and**

SingularDTV LLC
324 Pearl Street, Apartment 4C, 10038, USA

(hereinafter "Supplier")

(Client and Supplier shall be collectively referred to as "Parties" and individually as "Party")

DocuSign Envelope ID: E924E726-7695-4AF2-9458-8BE855230DE4

Amended Service and Development Agreement (the "Agreement")

**Preamble**

1. WHEREAS, Singular DTV has conceptualized and partially developed a decentralized platform for smart contract based film right management and video on demand services ("SDTV Platform");

2. WHEREAS Supplier has substantial expertise in rendering various Deliverables and Services in Client's area of practice and is interested to be engaged as contractor to conduct such Deliverables and Services for Client with respect to the SDTV Platform Project, in particular planning, elaborating, conducting and executing of the specific contents of the SDTV Platform as well as related works

3. NOW, THEREFORE, the Parties, intending to be legally bound, hereby agree as follows:

**I.  Definitions**

1. **Budget Proposal** shall mean a contractual document that is drafted by Supplier and acknowledged by Client containing all Works, Deliverables and Services and corresponding Specifications conducted and performed by Supplier within the respective upcoming year and expected costs thereof.

2. **Confidential Information** shall mean all material and information related to Client that has or will come into Supplier's possession or knowledge of Supplier in connection with its performance hereunder. Confidential information does not include information that:

   - is or becomes public knowledge through no fault of Supplier;

   - was in Suppliers lawful possession prior to the disclosure and had not been obtained by the Supplier either directly or indirectly from Client;

   - Supplier obtains from sources other than Client who owe no duty of confidentiality to Client; or

   - Supplier independently develops;

   - is required to be disclosed by any judicial or governmental requirement or order (provided that Supplier timely advises Client of the governmental demand for disclosure).

3. **Intellectual Property Rights** shall mean Patents, rights to inventions, copyright and neighbouring and related rights, trademarks, business names and domain names, rights in get up and trade dress, goodwill and the right to sue for passing off or unfair competition, rights in designs, database rights, rights to use, and protect the confidentiality of, confidential information (including know-how and trade secrets) and all other intellectual property rights, in each case whether registered or unregistered and including all applications and rights to apply for and be granted, renewals or extensions of, and rights to claim priority from, such rights and all similar or equivalent rights or forms of protection which subsist or will subsist now or in the future in any part of the world.

4. **Schedule** shall mean the delivery dates for each Deliverable / Service.

2

DocuSign Envelope ID: E924E726-7695-4AF2-9458-8BE855230DE4

Amended Service and Development Agreement (the "Agreement")

5. **Specifications** shall mean the specifications (according to the Budget Proposal) for the Deliverable / Services as directed by Client, together with any modifications that may be agreed to in writing by the parties during the term of this Agreement.

6. **Deliverable** means any work product to be delivered under this Agreement as further specified in the Budget Proposal and additional sources.

7. **Services** means the services specified in Budget Proposal to be provided by Supplier to Client.

## II. Supplier's Duties

8. **Specifications.** Client herby engages Supplier and Supplier herby agrees to be engaged by Client and to provide the Services and to develop the Deliverables in accordance with the specifications agreed upon by the Parties in the respective Budget Proposal.

9. **Subcontractors.** Supplier has no right to appoint subcontractors without Client's prior approval.

10. **Timing.** Supplier shall complete the development of the Deliverables and provide the Services according the Specifications and the time schedule agreed upon between the Parties in the respective Budget Proposal.

11. **Delivery Date.** The Deliverable shall be delivered to Client by the date set forth in the time schedule (Budget Proposal).

12. Supplier shall inform Client immediately if he may not comply with the Delivery Date and/or the time schedule agreed upon. In such case, the parties shall try to adapt their time schedule without delay. If an agreement is not possible, Client shall be entitled to set Supplier an appropriate respite (minimal 15 calendar days). If this respite is also not complied with, Client is entitled to set further respites, assert an appropriate claim to reduction of the payments for the Software, to withdraw from the Agreement and/or have a third party finalize the development at cost of Supplier.

## III. Services

13. The Services shall be rendered in accordance with the Agreement and within the term indicated in the Agreement.

13.1 Client may request that Supplier perform all marketing, distribution, accounting and other necessary and mandated functions associated with the Deliverables, provided that Supplier shall timely submit and disclose all figures (such as revenues, rewards, etc.) connected to such additional functions associated with the Deliverables and shall timely remit to Supplier all revenues generated thereby, less any administrative costs or fees necessary for the efficient collection, processing, transfer or conversion of those revenues.

14. The Client designates the place of performance. Unless otherwise agreed, the place of delivery shall be considered the place of performance.

15. The Supplier shall use best efforts to provide its services under this Agreement. In particular,

3

DocuSign Envelope ID: E924E726-7695-4AF2-9458-8BE855230DE4

Amended Service and Development Agreement (the "Agreement")

> Supplier undertakes to perform the Agreement and to render the corresponding Service diligently, faithfully and competently and guarantees that all Services and Deliverables rendered comply with the contractual conditions and specifications, the current state of technology, art, and the legal requirements. Supplier shall ensure that the Services and Deliverables supplied are always of merchantable quality and fit for any purpose held out by the Supplier or made known to the Supplier at the time the Budget Proposals are placed. Otherwise the Services and Deliverables shall be fit for the purpose for which similar Services and/or Deliverables are ordinarily used.

16. The Supplier informs the Client regularly of the progress of work and, immediately and in writing, indicates to the Client any facts or circumstances it has noted or that are recognizable to it that may interfere with or endanger the performance in accordance with the Agreement.

17. The Client has the right to verify at any time the status of performance of the Agreement and Supplier will without undue delay provide to Client any and all requested information in that regard. The Client Agent is entitled to all the information, and in particular extracts from the Principal's books, in order to check and review the status of the performance of the Agreement and the allocation of funds paid to Supplier. The Supplier shall permit the Client, or an independent auditor appointed for that purpose by the Client, to inspect the Supplier's books for the purpose of checking the relevant data. The costs of such inspection shall be borne by the Client.

18. The Supplier will participate in programs implemented by the Client with respect to quality in rendering and delivery of Deliverables / Services.

19. The Client has the right to give instructions to Supplier regarding the specific execution of Services/ Deliverables.

IV.    **Deliverables: Delivery and Acceptance**

20. Deliverables shall function in accordance with the Specifications set forth in the Budget Proposal (Annex A) on or before the Delivery Date. Client conducts an acceptance test following delivery, whereby the Deliverable shall be tested for its applicability, functionality and conformity with the Specifications.

V.    **Change in Specification**

21. **Change Management.** Client may at all time request that reasonable changes be made to the Specifications of any Deliverables and Services as well as tasks associated with the Services / Deliverables as described in the acknowledged yearly Budget Proposal (see Section 6 "Remuneration").

22. **Additional Time or Expense**. If Client requests such a change, Supplier will use its best efforts to implement the requested change at no additional expense to Client and without delaying delivery of the Deliverable. In the event that the proposed change would lead to a delay in the delivery of the Deliverable or would result in additional costs for Client, Supplier shall inform Client no later than 5 days after the change request and provide a binding offer regarding both timing and additional costs. Client may either withdraw the requested change or accept Supplier's offer.

DocuSign Envelope ID: E924E726-7695-4AF2-9458-8BE855230DE4

Amended Service and Development Agreement (the "Agreement")

## VI. Remuneration

23. **Fee for Services and Deliverables**: Annually, Supplier shall submit to Client a Budget Proposal compiling its expected costs for Deliverables / Services in the upcoming year. Client shall set forth in detail, as far as reasonable, what Services / Deliverables are intended to be conducted and to what specific conditions (i.e. remuneration, delivery, milestones, etc.). Upon Client's consent and acknowledgement of the Budget Proposal, Supplier shall issue an invoice for the respective Fee agreed upon for the upcoming year. This Fee is, unless otherwise agreed upon, understood to be a payment in full (fixed Fee) for all Deliverables/ Services of the Supplier with respect to the acknowledged Budget Proposal and Deliverables/ Services provided thereunder and is a final and total buy-out of all rights, if any, granted by Supplier hereunder. Upon acknowledgement of the Budget Proposal Supplier shall invoice the Fee to Client. Client shall pay the invoiced amount within 30 days upon receipt.

24. **Transfer Pricing**: The transfer pricing at arm's length for all Renumeration is fixed at 10%.

25. **VAT**: Applicable value added tax (VAT) or other such statutory tax payments, fees or public dues are also covered by the Fee in accordance with the applicable laws and regulations and shall be indicated separately in the acknowledged Budget Proposal and in the corresponding invoice.

26. **Public and fiscal charges**: The Client expressly points out that the Supplier shall be responsible for the fulfilment and handling of tax obligations resulting from the Deliverables/ Services performed hereunder. All taxes, public and fiscal charges arising for which the Supplier is subject to tax, in particular earnings, turnover and wage tax, shall be exclusively borne by the Supplier. The Supplier undertakes to pay all social security contributions directly whereas the Client cannot be held liable for such contributions.

27. Should the Client be held liable for any tax, insurance contributions and/or social security charges, the Client shall have the right to deduct such full amount/claim from any invoices/claims of the Supplier and/or reclaim any such full amount/claim from the Supplier.

28. **Expenses.** All costs and expenses of Supplier are covered by the Fee.

29. **Payment in ETH.** Client has the right to conduct any and all payments under this Agreement in ETH (or other cryptocurrencies chosen by Client). The corresponding amount of ETH is calculated according to the exchange rates at the time of payment as provided by Coinmarketcap or a similar provided chosen by Client.

## VII. Ownership of Rights to Deliverables / Services

30. The Supplier hereby irrevocably assigns and transfers to the Client any rights, in particular, but without limitation, any and all Intellectual Property Rights, in perpetuity and throughout the universe, in the results of Supplier's work for Client conceived, made or developed by Supplier, and/or created by the Supplier in connection to its activities rendered under this Agreement (hereinafter "results of the Supplier's works"). Accordingly, Supplier agrees that all items delivered or services rendered by Supplier to Client and all fruits of Supplier's work for Client conceived, made or developed by the Supplier, whether alone or together with others, in connection with the Agreement, including but not limited to any and all Intellectual Property Rights, such as, but without limitation, (i) inventions, concepts, discoveries, developments, improvements and innovations, whether or not patentable or reduced to

5

DocuSign Envelope ID: E924E726-7695-4AF2-9458-8BE855230DE4

Amended Service and Development Agreement (the "Agreement")

practice, (ii) copyrightable works, such as (but not only) reports, plans and artwork, digitized or other computer files containing data, databases, software (source, object and executable code) and documentation, ("Creative Works") shall be and remain the exclusive property of Client. All of the rights and things described in the foregoing sentence, and all intellectual property, trade secrets or other proprietary rights relating thereto (such as copyrights; copyright registrations, renewals, and applications; patents; patent applications; substitutions for, and divisions, continuations, extensions, continuations in part, renewals, reissues, and reexaminations of, patents and patent applications) shall be defined, collectively, as the "Work Product." The parties agree that the Work Product includes, without limitation, the deliverables and services under the Agreement. Supplier agrees that all Creative Works are works made for hire. Supplier hereby gives, transfers and assigns to Client all right, title and interest, including all rights in the nature of patent, copyright, trade secret or other intellectual property or proprietary rights, now or hereafter arising in and to the Work Product not otherwise owned by Client as a work made for hire, and hereby assigns to Client or, in case the assignment is not permitted by law, waives, any so-called "moral rights" in the Work Product, to the extent permitted by law.

31. Supplier agrees to execute and deliver such additional documents and take such additional reasonable actions as Client deems necessary or convenient to perfect or evidence Supplier's ownership of the Work Product or to enable Client to record this Agreement and/or secure rights of copyright and/or letters patent in its name, or otherwise to enforce its rights in the Work Product in any country throughout the world or otherwise carry out the provisions of this Section 7 (Ownership) provided that preparation of such additional documents shall be at the expense of Client.

32. To the extent intellectual property rights are not assignable or transferable to the Client (non-assignable IP}, the Supplier hereby grants to Client a exclusive, royalty-free, irrevocable, perpetual, world-wide license to make, have made, modify, manufacture, reproduce, sub-license, use and sell such non-assignable IP. To the extent moral rights relating to the assigned intellectual property rights cannot be assigned to Client, the Supplier waives absolutely any moral rights arising in relation to the Services/Deliverables and/or any other work products and, as far as legally possible, any broadly equivalent rights Supplier may have in any territory of the world.

33. The Client may dispose of all Services/Deliverables or any other work products without restrictions in terms of time, space and substance. The disposal rights encompass all rights of use possible now and in future, especially use, publication, sale and modification. Modification encompasses in particular change, further processing and use for the creation of new work products. The Client may grant the Supplier rights to use all Services/Deliverables or any other work products in the Agreement.

34. With respect to pre-existing intellectual property rights appertaining to parts of all Services/Deliverables or any other work products, the Client shall receive a non-exclusive, transferrable right to use without restrictions in terms of time, space and substance, which grants the Client the possibility to use and dispose of the Services /Deliverables or any other work products within the meaning of the foregoing paragraph. The Supplier undertakes not to establish any rights based on those pre-existing rights which might be asserted against the possibilities of use granted here. In particular, the Supplier undertakes to transfer or license these intellectual property rights only subject to the rights of use of the Client.

35. The Client shall have no obligation to actually use or exploit the results of the Supplier's work.

DocuSign Envelope ID: E924E726-7695-4AF2-9458-8BE855230DE4

Amended Service and Development Agreement (the "Agreement")

36. The Client shall have the right to assign, license or otherwise transfer, in whole or in part, any and all of its rights under this Agreement to any person, firm, corporation or other entity without the approval of the Supplier.

### VIII. Exclusivity/ Non-Competition.

37. During the term of this Agreement, and thereafter for a period of 3 years, Supplier shall render Services and/or Deliverables exclusively for Client. In particular, but without limitation, during the term of the Agreement and thereafter for a period of 3 years, Supplier shall not, neither directly nor indirectly, neither individually nor in a partnership or in conjunction with any person as a principal, agent, employee, consultant or shareholder, carry on, or be engaged in, or advise, or otherwise assist or be interested in, any business which is commercially competitive with the business of the Client, including, but without limitation, the engagement in the research, development and distribution of products of the Client and the solicitation or interference with or the enticing away of any of Client's customers, suppliers or employees. This non-competition clause shall apply to any activities worldwide.

38. In particular, but without limitation, Supplier agrees not to sell, license, transfer, share or make available in any other way the Deliverable (and/or other work product created as part of this Agreement, including any Source Code) to anyone else than Client. Supplier further agrees to refrain from using the Deliverable by himself or through any third Parties in any way.

### IX. Term and Termination

39. **Term.** This Agreement shall commence upon mutual execution and continue until all of the obligations of the parties have been performed or until earlier terminated as provided herein. Client shall have the right to terminate this Agreement at any time with a notice period of 14 days. Supplier shall have the right to terminate this Agreement no earlier than five years after commencement.

40. **Termination.** This Agreement may be terminated for cause by either party upon written notice to the other, if:

- the other party breaches any material obligation; and

- the breaching party fails to cure such breach within 30 days of receipt of the notice.

41. Effect of Termination:

- **Client's rights.** In case of a termination for cause, Client shall have the right to request the handover of the Deliverable as developed at the time of termination against a pro rata remuneration of Supplier. Further, Client shall have the right to request Supplier to immediately stop any or particular works / Services under this Agreement.

- **Return or Destruction.** Within 10 days after the termination or expiration of this Agreement, Supplier shall return, or at the option of Client, Supplier shall destroy all copies of Confidential Information and shall deliver written certification by an officer of Client that Client has complied with these requirements.

DocuSign Envelope ID: E924E726-7695-4AF2-9458-8BE855230DE4

Amended Service and Development Agreement (the "Agreement")

### X.   Representations

42. **No Infringement.** Supplier represents and warrants that, with the sole exception of Client and its affiliates, and prior to the assignment set forth in Section VII (Ownership) above, Supplier is the sole and exclusive owner of all right, title and interest in and to the Work Product, including without limitation, the deliverables under the Agreement; provided that Supplier makes no warranty as to the materials provided to Supplier by Client for use under this Agreement. Supplier represents, warrants and covenants that, with the exception of the materials provided to Supplier by Client for use under this Agreement, the Work Product is and will be the original creation of Supplier (including its permitted subcontractors, if any) and is and will not be the product of the copying of the property or creation of any third party. Supplier represents, warrants and covenants that it has obtained and will obtain writ- ten assignments from all of its independent contractors, subcontractors, and co-developers of any rights they may have in any of the Work Product and releases of all rights from any performers engaged by Supplier (or its contractors) for the Work Product. Supplier further represents and warrants that there are no claims of infringement or misappropriation, pending or threatened, against the Work Product (excluding the materials provided by Client to Supplier for use under this Agreement), and there is no basis for such a claim. Supplier represents, warrants and covenants that prior to the assignment set forth in Section 7 (Ownership) above, Supplier (and its contractors) did not transfer, and will not transfer, any right or interest in the Work Product (including, without limitation, a license) to any third party and that the Work Product and the corresponding rights is free from any security interest, option, mortgage, charge or lien Supplier covenants, represents and warrants that it is free to enter into and perform this Agreement and that the making and performance of this Agreement by Supplier shall not conflict with any agreement to which Supplier is or may become a party. Supplier represents, warrants and covenants that the Work Product (and any media upon which it is delivered to Client) contains no hidden or otherwise un- documented screens, levels, or other play; crude, obscene, lewd or suggestive text, sounds or images (including, without limitation expletives); or secret or otherwise undocumented sounds, images (including, without limitation, characters), video or other play features (including, without limitation, moves) or materials, unless and only to the extent that the same have been expressly approved in writing by Client.

43. Supplier represents, warrants and covenants that its performance under this Agreement shall comply with all applicable laws and regulations and shall not violate or infringe upon the rights of or otherwise injure or damage any third party.

44. **No Obligation.** Supplier represents and warrants that neither Supplier nor any other Client or individual performing services pursuant to this Agreement is under any obligation to as- sign or give any work done under this Agreement to any third party.

45. **No Employment.** Supplier represents and warrants that Supplier is an independent con- tractor and not an employee of Client. Supplier represents and warrants having all necessary permits to provide the Services to the Client. Supplier furthermore represents and warrants that he is responsible for any of his insurances (including social security). Supplier represents and warrants that he is responsible for payment of all taxes and social security contributions in connection with the Development Fee and any other payment made from Client to Supplier. Supplier represents and warrants that Supplier will provide client with the documentation to prove compliance with this section upon Client's request. If Client should be held liable for any social security contributions or taxes in connection with the Development Fee and any other payment made from Client to Supplier, Supplier represents and warrants that it will hold Client harmless for any costs incurred.

DocuSign Envelope ID: E924E726-7695-4AF2-9458-8BE855230DE4

Amended Service and Development Agreement (the "Agreement")

### XI. Warranties

46. **Deliverables.** Supplier warrants that the Deliverable is conform with the Specifications. The warranty period of the Deliverable is two years ("Warranty Period").

47. **Services.** With regard to services, Supplier warrants that the Services will be carried out to the best of Supplier's knowledge and in accordance to best industry practise and state of the art.

48. **Repair or Replace.** Supplier will repair any errors or bugs of the Deliverable during the Warranty Period within 2 days after Client informs Supplier such errors or bugs.

### XII. Acknowledgement-Relationship of the Parties

49. **Independent Contractor.** Supplier is an independent contractor and is not an employee or agent of Client.

50. **No Partnership.** Nothing in this Agreement creates a partnership or joint venture between the parties.

### XIII. Protection of Trade Secrets

51. **Confidential Information.** The Supplier agrees to hold the Client's Confidential Information strictly confidential for a period of five (5) years following the Effective Date of this Agreement. Unless required by law, the Supplier shall not make Client's Confidential Information available in any form to any third party or to use each other's Confidential Information for any purpose other than the implementation of this Agreement. The Supplier shall take any and all reasonable steps to ensure that Confidential Information is not disclosed or distributed by its employees or agents in violation of the terms of this Agreement.

52. **Penalty.** For each breach of the confidentiality obligation, Supplier shall pay to Client a penalty in the amount of CHF 50'000. The payment of the penalty does not release the Supplier from its confidentiality obligations and from additional damage claims of Client.

### XIV. Indemnification and Liability

53. Supplier will defend, indemnify and hold Client, its affiliates, distributors, licensees and licensors harmless from and against any and all losses, costs, damages, liabilities, claims or expenses including reasonable legal fees arising out of any breach of the representations and warranties set forth in this Agreement, in particular in Section 10 (Representations) or any portion of the Work Product (excluding the materials provided by Client to Supplier for use according to this Agreement) (or the exploitation thereof in any manner) infringing, misappropriating or otherwise violating the trade secrets, copyrights,
trade- marks, patents, rights of privacy, rights of publicity or any other intellectual property or proprietary right of any third party.

54. Supplier shall be liable for any damages incurred or suffered by Client in connection with the Deliverables or services performed in connection with this Agreement. The liability of Client for any damages incurred or suffered by Supplier in connection with this Agreement shall be excluded to the extent permitted by law.

DocuSign Envelope ID: E924E726-7695-4AF2-9458-8BE855230DE4

Amended Service and Development Agreement (the "Agreement")

## XV. Miscellaneous

55. **No Modification Unless in Writing**. No modification of this Agreement shall be valid unless in writing and agreed upon by both Parties.

56. **Entire Agreement**. This Agreement (including its Budget Proposals) contains the entire agreement between the parties and supersedes all understandings and agreements whether written or oral.

57. **Governing Law**. This agreement shall be governed by and construed in accordance with the Swiss laws. The application of the United Nations Convention for Contracts for the International Sales of Goods is hereby expressly excluded.

58. **Jurisdiction**. The ordinary courts of the city of Zug, Switzerland, have exclusive jurisdiction for any disputes arising out of or in connection to this Agreement.

59. **Severability**. The validity of this Agreement shall not be affected by single invalid, ineffective or impracticable provisions. Such provisions of this Agreement shall be replaced by provisions approaching to their best the economic intentions of the parties at the moment of entering into the Agreement.

Place and Date: ZUG, 1 Jan. 17                            Place and Date: NEW YORK, 5 Jan. 17

_____                               _____

**SINGULARDTV GMBH**                                      **SINGULARDTV LLC**

Arie Yehuda Levy-Cohen                                    Kim Jackson