UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SINGULARDTV, GMBH,<br><br>                Plaintiff,<br><br>    v.<br><br>ZACHARY LEBEAU and KIMBERLY JACKSON,<br><br>                Defendants. | Case No. 1:21-cv-6000<br><br>**ORAL ARGUMENT REQUESTED** |

**SINGULARDTV GMBH'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE OR, IN THE ALTERNATIVE, SUBSTITUTE COUNSEL**

December 23, 2021

                                                  KOBRE & KIM LLP
                                                  800 Third Avenue
                                                  New York, NY 10022
                                                  Telephone: (212) 488-1200
                                                  Facsimile: (212) 488-1220

                                                  Benjamin J. A. Sauter
                                                  Christopher S. Cogburn
                                                  Alexa R. Perlman

                                                  *Attorneys for Intervenor*
                                                  *SingularDTV GmbH*

**PRELIMINARY STATEMENT**

The opposition brief (the "Opposition," cited as "Opp." (Dkt. No. 22))[1] submitted by Morrison Tenenbaum fails to justify its continued acts on behalf of SingularDTV in derogation of the Company's clear instructions. At bottom, the Opposition argues that the Court should ignore an unauthorized representation in a case over which it is presiding while two of SingularDTV's disgruntled former officers (Zachary LeBeau and Kimberly Jackson) pursue baseless corporate disputes across multiple jurisdictions. (*See* Opp. at ¶ 18.) There is no authority allowing these former officers or their counsel to hijack the Company and invoke federal judicial process on its behalf while these other disputes play out.

Jackson's declaration states in conclusory fashion that "[c]ommencing the aforementioned claim was within [her] authority as the [Chief Operating Officer] COO," and that the "Company's Articles of Association as well as the By-Laws do not require board approval for litigation." (Jackson Decl. ¶¶ 3, 15.) There are three fundamental flaws with this argument.

First, Jackson was unambiguously removed as COO in June 2021. Jackson may dispute her termination (although she has not claimed a salary from the Company since June 2021), but the fact remains that she was removed and that the Company no longer recognizes her as its COO. (*See* Mraz Decl. Ex. 6; Allenspach Decl. Ex. 8.).

Second, the incorporating documents on which Jackson relies do not delegate any authority to Jackson specifically nor to a "COO" role generally. To the contrary, these documents clearly state that the Board must appoint any person authorized to represent the Company and sign on its behalf. (Mraz Decl. Ex. 3 ¶ 8.) The bylaws do not themselves grant any signatory authority to the COO or other non-board members such as Jackson. *Id.* Nor is there any company record of another

---

[1] Unless otherwise noted, all capitalized terms have the meanings ascribed to them in SingularDTV's opening memorandum of law (the "Opening Brief," cited as "Br." (Dkt. No. 12)), and all emphases are added.

1

instrument (such as a power of attorney) delegating signature authority to Jackson, and the Opposition does not supply one. As such, there is no basis for the Court to find that Jackson ever had authority to retain Morrison Tenenbaum as counsel for SingularDTV.

Third, there is no credible basis for Morrison Tenenbaum to have relied—much less continue relying—on Jackson's "apparent" authority. Any apparent authority to act for the Company would be found in the Swiss Commercial Register. (Allenspach Supp. Declaration (filed concurrently), Ex. 21). The Swiss Commercial Register identifies those persons who are authorized to sign on behalf of the Company, and it does not list Jackson.

Ultimately, the Opposition rests on nothing more than Jackson's say-so, along with the existence of speculative litigation in other courts, to defend Morison Tenenbaum's continued representation of the Company here. The Court should reject these arguments, grant the Motion, and replace Morrison Tenenbaum with the Company's counsel of choice, Kobre & Kim LLP.

**ARGUMENT**

I.  **SingularDTV's Motion Is Timely.**

The Opposition argues that the Motion is untimely because SingularDTV's founders "had multiple interactions in the summer of 2021 concerning this hack" and, as a result, "it would appear" that the Company's remaining officers and directors "became aware of this action many months before deciding to intervene." (Opp. at 15.) The Opposition attempts to justify this conjecture with a pair of falsehoods, asserting that "there is nothing in [SingularDTV's] papers to indicate when Intervenor first became aware of this action" (*id.*) and that SingularDTV is "represented by Counsel in [the] two companion actions" (*id.* at 16).

The Opposition is wrong on both counts. In support of the Motion, SingularDTV's Resident Signatory (who, with the oversight of the Company's current Board of Directors, is instructing Kobre & Kim with respect to both actions pending before this Court) attested that, to

2

the best of his knowledge, "SingularDTV first became aware of this case fewer than two months ago." (Allenspach Decl. (Dkt. No. 14) ¶ 9.) And while the other four defendants in the New York State Derivative Complaint have appeared and are represented by counsel, the nominal defendant SingularDTV has not been served with process, and SIngularDTV as Nominal Defendant has not yet appeared in the case—as Morrison Tenenbaum, which represents LeBeau in that action, ought to know.[2] (Allenspach Decl. Ex. 3.)

In any event, the Motion is timely. SingularDTV filed it less than two months after first learning about the complaint that initiated this case (Allenspach Decl. ¶ 9) and—as SingularDTV's supporting submissions make clear, but the Opposition ignores—only three weeks after a meet-and-confer discussion during which Morrison Tenenbaum refused to withdraw by consent from its unauthorized representation. (Sauter Decl. ¶¶ 7–8.) Unlike the delays in the cases cited by the Opposition, this is hardly "undue." *See In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000) (denying motion where intervention would have jeopardized years-long settlement negotiations and intervenor waited more than eight months after settlement was agreed in principle before filing motion); *Jackson v. Waterbury Police Dep't*, No. 3:11-cv-642, 2015 WL 5251533 (D. Conn. Sept. 8, 2015), at *10 (denying motion filed over three years after complaint and over two years after intervenor became aware of action); *Apple v. Atlantic Yards Dev. Co., LLC*, No. 11-cv-5550 (JG), 2014 WL 5450030 (E.D.N.Y. Oct. 27, 2014), at *12 (denying motion to avoid "significant prejudice to existing parties," who had "concluded fact discovery and all but concluded expert discovery" in case "pending for almost three years").

---

[2] Morrison Tenenbaum appears to have a conflict of interest that calls into question its unauthorized representation of the Company in this case. Neil Postrygacz—the lawyer who is **directly** adverse to the Company in *SingularDTV GmbH v. LeBeau, et al.*, No. 1:21-cv-10130 (VEC) (the "Related Case")—stated in a declaration submitted April 16, 2021 in *TBG Duane, LLC v. Gutenbrunner, et al.*, No. 650659/2021 (N.Y. Sup. Ct.) that he is "of counsel to Morrison Tenenbaum PLLC." As such, it appears that Morrison Tenenbaum is simultaneously purporting to represent SingularDTV in this case, and opposing SingularDTV in the Related Case.

3

Moreover, the Second Circuit has made clear that while the timeliness inquiry begins with "the length of time the applicant knew or should have known of its interest before making the motion," it does not end there. *Floyd v. City of N.Y.*, 770 F.3d 1051, 1058 (2d Cir. 2014). Rather, the Court must also consider the "prejudice to existing parties resulting from the applicant's delay" and the "prejudice to the applicant if the motion is denied." *Id.* (enumerating "[f]actors to consider in determining timeliness"). These factors weigh decisively in favor of intervention. The Opposition does not articulate any prejudice caused by SingularDTV's supposed delay, because there is none. On the other hand, as explained in the Opening Brief and discussed in greater detail below, the prejudice to SingularDTV if the Motion is denied will be profound, because it has no control over this case or the counsel purportedly acting for it.

**II.     SingularDTV Has an Interest in This Action That Entitles It to Intervene.**

The Opposition next argues that intervention should be denied because SingularDTV's interest in the case "is contingent on determination of collateral issues"—namely, whether Jackson and LeBeau were authorized to retain, and remain empowered to instruct, Morrison Tenenbaum to act on behalf of SingularDTV. (Opp. at 17.) As an initial matter, the Opposition's framing of this question as one of "standing" (*id.* at 5, 8, 16, 18) is clearly incorrect. The Intervenor—SingularDTV—has an obvious and concrete interest in this case; after all, it is the purported plaintiff. All of the cases that the Opposition cites for the proposition that the intervenor must have a concrete (rather than "contingent") interest in the litigation are inapposite for this reason. The question presented by the Motion is not one of standing, but of SingularDTV's right to appoint counsel of its choice and direct the conduct of litigation brought in its own name.

The Opposition asserts that the Court needs to "determin[e] . . . which officers and members of the board had and continue[] to have legal authority to retain counsel to pursue the instant litigation." (Opp. at 17.) As described in the supporting declarations, the overwhelming evidence

4

shows that Jackson and LeBeau were removed as COO and CEO (and, in LeBeau's case, removed from the Board) and that SingularDTV revoked any signature authority that they may have had.

Moreover, the Opposition's premise—that a decision granting the Motion "would be tantamount to issue determination of the proper constitution of the Board and would amount to the Court's tacit concurrence that the removal of [Jackson] . . . was proper" (Opp. at 5)—is not avoided if the Court denies the Motion, in which case it will have effectively endorsed Jackson's unsupported assertion that she and LeBeau have some entitlement to continue instructing lawyers on the Company's behalf. And contrary to the arguments in the Opposition (at 17–18), the fact that this determination involves questions of fact does not present any sort of procedural or jurisdictional barrier to the Court's deciding that issue to resolve this Motion—especially where, as here, those factual issues are easily resolved.

The Opposition and supporting papers repeatedly contend that the mere existence of a corporate dispute about the composition of SingularDTV's Board of Directors (and the alleged effect of Board resolutions unambiguously removing LeBeau and Jackson as CEO and COO, respectively, in late spring 2021) requires that the Motion be denied. (*See e.g.*, Opp. at 7 ("Jackson maintains that her removal as the Company COO . . . [is] improper and unlawful."), 13 ("It is our client's position that Jackson remains the COO of SINGULARDTV and LeBeau remain[s] a member of the Board and the Plaintiff's CEO since resolution(s) pertaining to their removal were improper and unlawful."), Jackson Decl. (Dkt. No. 21) ¶ 3 ("[I]t has been my position and that of the co-founder of SINGULARDTV, Zachary LeBeau, that due to the Board's failure to adhere to Swiss Law and established corporate formalities in holding meetings and voting on removal resolutions without a quorum, [Jackson] continues to serve as the COO.").) Tellingly, however, the Opposition makes no effort to support these "positions." As SingularDTV explained at length

5

in support of its Motion for Preliminary Injunction in the Related Case, Morrison Tenenbaum has not and cannot overcome the overwhelming evidence supporting the Board's removal of LeBeau and Jackson from SingularDTV's leadership. This evidence includes:

- On May 19, 2021, Levy-Cohen called a Board meeting to discuss "resolutions to be taken" in response to the Hack and LeBeau's subsequent failure to justify his actions or take additional precautions. (Mráz Decl. (Dkt. No. 15) ¶ 4, Ex. 2.) The Board meeting was set to take place on May 27, 2021. (*Id.*)

- At the May 27 meeting, SingularDTV's directors voted, among other things, to terminate LeBeau as CEO and revoke his signatory powers. (*Id.* ¶ 6, Ex. 4.) The vote was unanimous, although LeBeau refused to participate. (*Id.*)

- Less than two weeks later, on May 8, 2021, the Board held another meeting at which it resolved to terminate Jackson as COO. (*Id.* ¶ 9, Ex. 6.) This vote was likewise unanimous. (*Id.*)

- On August 2, 2021, the Swiss Commercial Register—a legally authoritative record of corporate directors and authorized signatories designed to apprise third parties of the individuals authorized to transact on behalf of a corporation—was updated to reflect LeBeau's removal as CEO of SingularDTV. (*Id.* ¶ 11, Ex. 7.)

- The Commercial Register never listed Jackson as an authorized signatory of SingularDTV. (*Id.*)

- After learning that LeBeau and Jackson had initiated this action after their termination from Company leadership, the Board passed another set of resolutions designed to eliminate any ambiguity about the Company's authorized legal representatives. Specifically, the Board resolved (1) that Morrison Tenenbaum "does not and never did have authority to represent the Company in any way" and that any "purported engagement" with Morrison Tenenbaum was "to the extent possible by law, null and void and otherwise hereby terminated" (Allenspach Decl. Ex. 4), and (2) that Kobre & Kim would be retained to act for SingularDTV "with regard to legal matters in the United States" (*id.* ¶ 2).

LeBeau and Jackson have raised only two objections to contest their termination. Both are easily debunked.

First, LeBeau and Jackson claim that the resolutions removing them "violated both [t]he Company's By-Laws as well as the corporate regulations of Switzerland." (Jackson Decl. ¶ 22.) Although these alleged transgressions are never described, this is presumably a reference to the argument in the Derivative Complaint that the May 27 Board meeting was conducted "without

proper notice to LeBeau." (*See* Derivative Complaint (Dkt. No. 14-3) ¶ 91.) But the Company's bylaws require only that "notice of any board meeting . . . be dispatched in writing by courier, mail, fax, or e-mail not less than seven (7) days prior to the date of the meeting." (Mráz Decl. Ex. 3 § IV.C.) On May 19—eight days before the meeting took place—Levy-Cohen sent all directors notice of the meeting by e-mail. (Allenspach Supp. Decl. ¶ 17, Ex. 24.)

Second, LeBeau and Jackson contend that Levy-Cohen resigned from SingularDTV's Board of Directors on February 12, 2019, and that all subsequent Board actions involving Levy-Cohen are therefore null and void—a theory that LeBeau and Jackson themselves never raised (and, indeed, actively contradicted through their actions) for over two years. It was not until after they both faced the threat of termination that LeBeau and Jackson first seized on a February 2019 "resignation" letter allegedly signed by Levy-Cohen to challenge his Board membership. But as SingularDTV has explained in the Related Case, and as is clearly reflected in the associated Board minutes, this letter merely marked Levy-Cohen's withdrawal from his role as "Resident Director" in light of his plans to move away from Switzerland; it did not constitute a wholesale resignation of his Board seat. (Related Case Dkt. No. 15 at 20).

The minutes of a Shareholder meeting conducted just weeks later on February 27, 2019 (*see* Related Case Dkt. No. 17-12), make this clear: they continue to identify Levy-Cohen as a "Director" and "Chairman," and LeBeau himself is noted as observing that Levy-Cohen resigned "as Resident Director" of SingularDTV (*Id.* at 1.) The minutes of subsequent Board and Shareholder meetings—all attended by LeBeau and once even signed by LeBeau—likewise refute Defendants' assertion that Levy-Cohen resigned his directorship in its entirety. (*See, e.g.*, Allenspach Supp. Decl. Ex. 15 (May 2, 2019 Shareholder meeting minutes signed by LeBeau listing Levy-Cohen as "***Director***" and "***Chairman***"); *id.* Ex. 16 (May 2, 2019 Board minutes

7

stating that "***Director and Chairman*** Arie Levy-Cohen was represented by Director Joseph Lubin, by virtue of the proxy previously executed by Mr. Levy-Cohen"); *id.* Exs. 13, 17 (Board minutes from August and December 2019 identifying Levy-Cohen as "***director***" and "***chairman***").) None of these minutes reflect any objection by LeBeau—nor, for that matter, by Jackson, who by her own admission "attended every Board meeting" and was invited to participate in a manner "co-equal with other founders." (Jackson Decl. ¶ 6.)

Contemporaneous correspondence involving other SingularDTV personnel supports the same conclusion. (*See, e.g.*, Sauter Supp. Decl. (filed concurrently) Ex. 10 (August 2019 e-mail explaining that Levy-Cohen was "still a board member" but "ha[d] chosen not to participate in board meetings because of perceived hostility of Zach/Kim and/or because of his health"); Allenspach Supp. Decl. Ex. 22 (February 2020 e-mail referring to recipients, including Levy-Cohen, as "Board members"); *id.* Ex. 28 (April 2021 e-mail addressed to recipients, including Levy-Cohen, as "Board of Directors of SingularDTV GmbH").

Moreover, SingularDTV's filings with the Swiss Commercial Register—which are entitled to a strong presumption of correctness under Swiss law (*see* Mráz Supp. Decl. (filed concurrently) ¶¶ 3–4)—further confirm that Levy-Cohen did not resign his board seat. In July 2019, SingularDTV amended Levy-Cohen's designation in the Commercial Register to reflect his return to New Jersey from the Swiss municipality of Thalwil, yet continued to list Levy-Cohen as "partner and president of the management" and as an individual with "single signature" authority. (*See* Allenspach Supp. Decl. Ex. 21.) Despite several later updates to the Commercial Register, the Company never made any further alterations to Levy-Cohen's position or signature authority. (*Id.*)

Finally, LeBeau's own actions in connection with the Hack belie his newfound objections to Levy-Cohen's status as a Board member. The alleged purpose of LeBeau's payment of

8

Company tokens to the hacker—whom LeBeau claims to have believed was Levy-Cohen himself—was to "effect Levy-Cohen's *resignation from the Company's Board of Directors* and the surrender of Levy-Cohen's shares in the Company." (*Id.* Ex. 20.) LeBeau received (and presumably read) this agreement before paying US $2 million worth of Company property in exchange for it. (*Id.*) LeBeau's attempt to consummate this agreement in May 2021, along with his decision to transfer US $2 million worth of Company property as consideration for Levy-Cohen's resignation, is utterly inconsistent with a genuine belief that Levy-Cohen resigned from the Board in February 2019.[3]

LeBeau and Jackson finally argue that the Motion cannot be granted because "[t]here has been no judicial determination that [Jackson is] no longer the COO or that LeBeau is no longer the CEO of the Company." (Jackson Decl. ¶ 28.) They have the burden completely backwards, attempting to bootstrap their purported authority to the mere fact that they filed this case. LeBeau and Jackson brought this case on behalf of the Company and have failed to justify that action, much less their ongoing acts on behalf of the company.

### III. SingularDTV's Interest in This Action Is Not Adequately Protected By Morrison Tenenbaum or the Rogue Former Officers Who Purported to Retain Them on the Company's Behalf.

The Opposition also claims that "there is no harm to [SingularDTV] in allowing current counsel to continue [the] representation" until separate litigation confirms what is already clear from the face of SingularDTV's corporate records: that LeBeau and Jackson have no authority to instruct outside counsel on the Company's behalf. (*See* Opp. at 18.) This breezy reassurance presumes that LeBeau and Jackson are conducting this litigation in good faith, making it all the

---

[3] Indeed, Jackson's declaration submitted in support of the Opposition references the "negotiation" of this alleged Settlement Agreement, showing that she too believed that Levy-Cohen was a continued member of the Board of Directors. (Jackson Decl. ¶¶ 11-13.)

more notable that the Opposition is utterly silent about the evidence SingularDTV has presented showing that LeBeau and/or Jackson may have been involved in the very Hack this action purports to investigate. (*See* Br. at 2–3, 7–8; Sauter Decl. ¶¶ 4–6, Exs. 1–5, 7.) This evidence has only become more damning since the Motion was filed. As set forth in the accompanying declaration of Kevin Madura, a blockchain forensics expert, there are multiple reasons to believe that LeBeau is connected with one or both of the wallets to which he transferred Company tokens during the Hack. The Opposition's assurance that any "recovery from the John Doe defendant . . . would benefit all of the existing Shareholders" is highly doubtful.

Instead of addressing this evidence, the Opposition casts a handful of vague aspersions at Lubin and Levy-Cohen—some of which, like the suggestion that Levy-Cohen's actual e-mail address was used to perpetrate the Hack (*see* Opp. at 13), are not even consistent with Morrison Tenenbaum's prior filings in this case (*compare* Compl. (Dkt. No. 1) ¶¶ 12–13). SingularDTV has carried its burden to demonstrate that its interests are not adequately protected, and it is therefore entitled to intervene under Federal Rule of Civil Procedure 24(a).

**IV.   In the Alternative, the Court Should Replace Morrison Tenenbaum with Kobre & Kim as Counsel of Record for SingularDTV Under Local Civil Rule 1.4.**

As discussed in Section II, *supra*, Morrison Tenenbaum is not and never has been authorized to act on behalf of SingularDTV. This is a more than "satisfactory reason[]" to replace Morrison Tenenbaum as counsel of record under Local Civil Rule 1.4. As a result, the Court can grant the Motion on that separate and independent basis.

## CONCLUSION

For these reasons and those in the Opening Brief, SingularDTV respectfully requests that the Court grant the Motion.

Dated: New York, New York
December 23, 2021

Respectfully submitted,

/s/ Benjamin J. A. Sauter
Benjamin J. A. Sauter
Christopher S. Cogburn
Alexa R. Perlman
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

*Attorneys for Plaintiff SingularDTV GmbH*