# EXHIBIT 20

| | |
|---|---|
| **From:** | Carl Volz |
| **To:** | Zach LeBeau; Kim Jackson |
| **Cc:** | Patrik Allenspach |
| **Subject:** | FW: DRAFT Agreement |
| **Date:** | Thursday, May 6, 2021 11:46:18 AM |
| **Attachments:** | Resignation letter.pdf |
| | Assignment to Joe.pdf |
| | assignment to Zac.pdf |
| | ALC Settlement Agreement EXECUTION .pdf |

Zach and Kim,

Attached please find signed documents from Arie. Zach, we'll need you to countersign the ALC Settlement Agreement Document as soon as possible and Patrik and I will follow up with a document indicating that you acknowledge and accept the transfer of Arie's shares to you.

Would you guys like to send this to Joe and team, or shall Patrik or I?

**Carl Volz**
General Counsel

708 601 0261 / www.Breaker.io
40 Fulton St. 5th Fl. New York, NY  10038
New York / Zug / Los Angeles / Hong Kong

---

**From:** Arie Y LEVY COHEN <arielevyycohen@gmail.com>
**Date:** Thursday, May 6, 2021 at 6:39 AM
**To:** Carl Volz <cvolz@breaker.io>
**Subject:** Re: DRAFT Agreement

Hi Carl,

Attached are the signed documents as requested. I also include my SNGLS and SNGJ wallets below.

SNGLS
0xfea5ec99b2b55412655985c9333137fe5e487f23

SNGJ
0x2fdD1A203082f8dF9A93CE6A85d55610Ca049388

Regards

Arie
--

CRYPTOGRAPHIC SECURITY  |  IDENTITY  |  LEGAL&COMPLIANCE

**ARIE Y. LEVY-COHEN**

BLOCKCHAIN | BANKING | ECONOMICS | FINANCE

On Wed, 5 May 2021 at 21:00, Carl Volz <cvolz@breaker.io> wrote:

> Arie – the following documents are attached for your signature:  (a) execution copy of the settlement agreement; (b) letter resigning you from the board of directors; (c) assignment of half your shares to Zach; and (d) assignment of the other half of your shares to Joe.
>
> I think each of the documents will require you to write in a couple things (location, dates, etc.); your handwritten additions won't impact the legality of the documents at all.  If you can return scans of the signed documents with your wallet address we will send the SNGLS and SNGJ tokens immediately.  Once you've received the tokens, please drop me a line letting me know that you've received them and that all is well.  We may have a few other docs to sign, including but not limited to a release with Codex, but we can manage that stuff after we've gotten the main documents signed.
>
> As always, if you have any questions or would like to discuss, please feel free to call me on my cell (below) at your convenience.

Best,

**Carl Volz**
General Counsel

708 601 0261 / [www.Breaker.io](www.Breaker.io)
40 Fulton St. 5th Fl. New York, NY  10038
New York / Zug / Los Angeles / Hong Kong

---

**From:** Arie Y LEVY COHEN <[arielevyycohen@gmail.com](arielevyycohen@gmail.com)>
**Date:** Wednesday, May 5, 2021 at 9:31 AM
**To:** Carl Volz <[cvolz@breaker.io](cvolz@breaker.io)>
**Subject:** Re: DRAFT Agreement

Hi Carl,

Thanks for getting back to me, can you send me the relevant documents to sign. I'll also send my SNGLS wallet  to receive my  tokens.

Regards

Arie


--

CRYPTOGRAPHIC SECURITY  |  IDENTITY  |  LEGAL&COMPLIANCE

**ARIE Y. LEVY-COHEN**

BLOCKCHAIN | BANKING | ECONOMICS | FINANCE

On Tue, 4 May 2021 at 23:20, Carl Volz <[cvolz@breaker.io](cvolz@breaker.io)> wrote:

> Quick as a wink.  You'll get your SNGLS and SNGJ/Gaze tokens immediately upon signing, we'll provide you form doc for resigning from the board and another for assigning your shares in equal amounts to Zach and Joe.  The only thing which may cause a slight delay is that Zach and Joe will have to sign docs saying they acknowledge and accept the shares you're giving them.  They should both race to sign that last document but neither of them is hyper-diligent about stuff like that – though you didn't hear that from me.
>
> Two things to note:  first, I worked hard to get them to agree to increase your upside on the Centrality shares and for personal/political reasons I'm not going back and reversing myself on that point.  In other words, if you sign what I sent you and we execute now, you'll get the richer earnout on the Centrality stuff that I had previously offered you as a "limited time deal".  Second, I don't think signing this or executing the resignation/assignment will excuse you from having to sign off on the 2019 balances Patrik emailed you about last week.
>
> If you have any questions or would like to discuss further, please feel free to call or email at your convenience.
>
> Best,
>
> **Carl Volz**
> General Counsel
>
> 708 601 0261 / [www.Breaker.io](www.Breaker.io)
> 40 Fulton St. 5th Fl. New York, NY  10038
> New York / Zug / Los Angeles / Hong Kong
>
> ---
>
> **From:** Arie Y LEVY COHEN <[arielevyycohen@gmail.com](arielevyycohen@gmail.com)>
> **Date:** Tuesday, May 4, 2021 at 8:13 AM
> **To:** Carl Volz <[cvolz@breaker.io](cvolz@breaker.io)>
> **Subject:** Re: FW: DRAFT Agreement
>
> Hi Carl,

Just wondering if I decide to sign these, how long will it take to finalize?

Regards

Arie

--

CRYPTOGRAPHIC SECURITY  |  IDENTITY  |  LEGAL&COMPLIANCE

**ARIE Y. LEVY-COHEN**

BLOCKCHAIN | BANKING | ECONOMICS | FINANCE

On Wed, 31 Mar 2021 at 04:55, Arie Y LEVY COHEN <arielevyycohen@gmail.com> wrote:

> Hey Carl,
>
> Sorry I'm unable to move as fast as I would like here... there are matters that had to take first place which made this rather generous offer and most important decision for me, somewhat challenging at the moment.
>
> Joe has my proxy .. Matt Corva had sent one over.
>
> Will aim at coming back as soon as possible.
>
> Thanks for being patient here.
>
> Cheers,
> Arie
>
> On Tue, 30 Mar 2021 at 20:19, Carl Volz <cvolz@breaker.io> wrote:
>
>> And as further inducement, I've now attached your official notice of resignation and assignments of shares to Joe and Zach.  Once you sign the settlement agreement and these docs, you're a free man and no longer have legal responsibility for the decisions of Zach, Kim or Joe.
>>
>> If you do sign, please scan and return to me but keep the originals; we'll send a fedex package so you can send the originals back to us.  As you may recall, the Swiss are very particular about their ink signatures…
>>
>> Thanks again.
>>
>> **Carl Volz**
>> General Counsel
>>
>> 708 601 0261 / www.Breaker.io
>> 40 Fulton St. 5th Fl. New York, NY  10038
>> New York / Zug / Los Angeles / Hong Kong
>>
>> ---
>>
>>> **From:** Carl Volz <cvolz@breaker.io>
>>> **Date:** Tuesday, March 30, 2021 at 1:50 PM
>>> **To:** Arie Y LEVY COHEN <arielevyycohen@gmail.com>
>>> **Subject:** Re: DRAFT Agreement
>>>
>>> Arie,
>>>
>>> As part of my ongoing effort to encourage you to sign the agreement before the end of the month, I have attached an execution copy of the agreement with the 2-year extension on the earn-out from the Centrality shares; i.e. if you sign by close of business (6:00 p.m. EST) tomorrow you will be entitled to 10% of the GROSS proceeds from any monetization of the Centrality shares until the end of calendar year 2023. I think I said net in a previous email but the language clearly says gross.  You'll also get the benefit of immediate delivery of your SNGLS which are currently trading at more than .03. Is there anything at all I can do to help you along in this process?  If you don't sign by tomorrow, the Centrality earn-out will revert back to calendar 2021, though you will still enjoy

timely delivery of your SNGLS.

Also FYI, the agreement now states that you served as resident director until April 9, 2020 because that's the date reflected on the commercial register.  I believe you resigned before then but since that's what's on the register, that's the date I used.  If you want me to use an earlier date I will revise and resend.  Let me know.

Thanks again.

**Carl Volz**
General Counsel

708 601 0261 / [www.Breaker.io](http://www.Breaker.io)
40 Fulton St. 5th Fl. New York, NY  10038
New York / Zug / Los Angeles / Hong Kong

---

**From:** Carl Volz <cvolz@breaker.io>
**Date:** Tuesday, March 30, 2021 at 9:07 AM
**To:** Arie Y LEVY COHEN <arielevyycohen@gmail.com>
**Subject:** Re: DRAFT Agreement

Thanks, Arie.  As you can imagine, I'm getting intense pressure from Zach to get this done.  For what it's worth, if we can get this signed by close of business **tomorrow  (3/31/2021**) I can offer to increase the "earn-out" on the Centrality shares from this calendar year (2021) to three calendar years; i.e. you will get 10% of the net of any revenue earned from the monetization of the Centrality shares up to the end of calendar year 2023.  This should significantly increase the probability and substantially increase the size of potential payment(s) to you under this provision.   If we can't get it done by tomorrow, it'll revert back to calendar 2021.

Is there anything I can provide to you that might help facilitate the process?

**Carl Volz**
General Counsel

708 601 0261 / [www.Breaker.io](http://www.Breaker.io)
40 Fulton St. 5th Fl. New York, NY  10038
New York / Zug / Los Angeles / Hong Kong

---

**From:** Arie Y LEVY COHEN <arielevyycohen@gmail.com>
**Date:** Tuesday, March 30, 2021 at 8:48 AM
**To:** Carl Volz <cvolz@breaker.io>
**Subject:** Re: DRAFT Agreement

Thank you Carl.

Did not realize that Proxy had expired — will try to take a look but I'm not close to my files on systems.

Maybe I can find it in my phone.

Will revert soon.

Arie

--

CRYPTOGRAPHIC SECURITY  |  IDENTITY  |  LEGAL&COMPLIANCE

**ARIE Y. LEVY-COHEN**

BLOCKCHAIN | BANKING | ECONOMICS | FINANCE

On Mon, 29 Mar 2021 at 16:28, Carl Volz <cvolz@breaker.io> wrote:
> Thanks, Arie.  For what it's worth, the Swiss are saying the proxy expired at least a year ago and that it can't be used for

shareholder votes, anyway. So if we can get this signed before the meeting, it'll take care of all outstanding issues. Please let me know if there's anything I can do to help the process along.

Best,

**Carl Volz**
General Counsel

708 601 0261 / www.Breaker.io
40 Fulton St. 5th Fl. New York, NY  10038
New York / Zug / Los Angeles / Hong Kong

---

**From:** Arie Y LEVY COHEN <arielevyycohen@gmail.com>
**Date:** Thursday, March 25, 2021 at 10:34 AM
**To:** Carl Volz <cvolz@breaker.io>
**Subject:** Re: DRAFT Agreement

Thank you Carl - will aim to provide feedback ASAP but have a ton on my plate. Joe had my Board seat proxy in case that matters (I cannot show up). Thanks again

--

CRYPTOGRAPHIC SECURITY  |  IDENTITY  |  LEGAL&COMPLIANCE

**ARIE Y. LEVY-COHEN**

BLOCKCHAIN | BANKING | ECONOMICS | FINANCE

On Thu, 25 Mar 2021 at 03:55, Carl Volz <cvolz@breaker.io> wrote:
> Arie – I don't want to rush you but wanted to let you know that we have a board/shareholder meeting next week and if we execute the agreement by the 31st we can probably absolve you of any responsibility for the board meeting and for having to review/approve the previous year's financials.
>
> If you have any questions or would like to discuss anything, please let me know.
>
> Best,
>
> **Carl Volz**
> General Counsel
>
> 708 601 0261 / www.Breaker.io
> 40 Fulton St. 5th Fl. New York, NY  10038
> New York / Zug / Los Angeles / Hong Kong
>
> ---
>
> **From:** Arie Y LEVY COHEN <arielevyycohen@gmail.com>
> **Date:** Friday, March 19, 2021 at 8:52 AM
> **To:** Carl Volz <cvolz@breaker.io>
> **Subject:** Re: DRAFT Agreement
>
> Received - I'm juggling right now with my kids. Will come back to you next week.
>
> I'm also happy to receive the settlement in SNGLS.
>
> Thank.
>
> --

CRYPTOGRAPHIC SECURITY  |  IDENTITY  |  LEGAL&COMPLIANCE

**ARIE Y. LEVY-COHEN**

BLOCKCHAIN | BANKING | ECONOMICS | FINANCE

On Thu, 18 Mar 2021 at 20:34, Carl Volz <cvolz@breaker.io> wrote:

-- Privileged and Confidential Attorney Client Communication –
DO NOT COPY OR DISSEMINATE

Hi Arie, I think I was imprecise in my previous email(s).  Apologies for the long email below but I want to eliminate any mistaken impressions I may have helped create.  Since you are still a shareholder and a board member I'm going to provide you what I believe is material non-public information but please note the "Attorney-Client" message above and keep the contents of this email confidential.

The DDP was shut down permanently in December for various business and technical reasons.  Here are some of the communications we sent to users and partners at the time, if you're interested:

Email to customers: https://docs.google.com/document/d/1-S0Qf3MbFKdD2ZiCtvUb8_JNfITmpE6kfd0DqWkQrEc/edit?usp=sharing

Breaker Pro FAQ for content owners: https://docs.google.com/document/d/1BSZvYq-zv4oropm8oWBjyravYSVzqqP4NN81rC0yO8A/edit?usp=sharing

Breaker FAQ for consumers: https://docs.google.com/document/d/1lqFbOx0TxYidMelZCS36fT6Lox62q50InKsf7knae2c/edit?usp=sharing

Candidly, the business issues arose from a plan based on the assumption that we could land and distribute high-quality independent content to users who would choose us because they appreciated that we treated artists much better than the rest of the VOD/streaming industry.  Consumers didn't care and we could never spend enough on marketing to compete with big players -- especially when ETH was tanking.  On the technical side, the product was not…great.  Digital Mob/ConsenSys really sold us a pig in a poke, as they say.  We had technical issues almost from the start and things became hopelessly complicated when ConsenSys severed ties with DMob.  With regard to Tokit, the project was strangled by Swiss financial laws and the uncertain regulatory landscape in the US, which made it practically impossible to run campaigns over here.  Tokit is still functional but mostly because parts of the system are tied to the company's new project, a business-to-business, "software as a service" tool that will permit moviemakers at every level to track the licensing/sale of their content and pay all the relevant players automatically using smart contracts and the blockchain.  Some information about the project can be gleaned from the current website:  https://www.singulardtv.com/  When I mentioned that we are making good progress, this is the project I was talking about.  Since it's really a more enterprise-based product, I'm not sure it would do you much good helping distribute the type of content you're envisioning.  I'm sorry.

With regard to paying out your SNGLS in ETH or BTC, I'm afraid that's not going to be possible.  The company's remaining ETH is locked up and subject to an agreement with Joe/ConsenSys pursuant to which we can only convert for budgeted expenses.  During the recent runup in ETH we converted enough to last us for the next couple years so the ETH will be off-limits for the foreseeable future.  I have inquired whether we can just convert the SNGLS into ETH but that won't work, either, as our corporate Binance account was frozen when they figured out we were trading from the US.  I'm afraid we'll have to give you the SNGLS as SNGLS and you'll have to do the conversions yourself.  Again, I'm sorry.  What I can do is agree that any payout you receive from our efforts to monetize the Centrality stock will be paid out in ETH or BTC – if/when we get cash from that stock we can convert your 10% share into ETH or BTC, since we can buy that anywhere and don't need to rely on Binance.  Totally your call, though.  If you want that in the agreement, I can revise and remit to you asap.

If any of the foregoing is unclear or you would like to discuss in more detail, please let me know and we can get on the phone.  I know it's a lot but if we can get this thing wrapped up and the agreement signed you will be able to work on converting those SNGLS while the price is still fairly high – almost 2.5 cents last time I checked.

Best,

**Carl Volz**
General Counsel

708 601 0261 / [www.Breaker.io](www.Breaker.io)
40 Fulton St. 5th Fl. New York, NY  10038
New York / Zug / Los Angeles / Hong Kong

---

**From:** Arie Y LEVY COHEN <[arielevyycohen@gmail.com](arielevyycohen@gmail.com)>
**Date:** Monday, March 15, 2021 at 2:42 PM
**To:** Carl Volz <[cvolz@breaker.io](cvolz@breaker.io)>
**Subject:** Re: DRAFT Agreement

Hello Carl,

You had mentioned there was good progress made on being able to track and manage on-chain "rights, revenues and royalty-streams" — if I understood you correctly. This was a prime deliverable promise we envisioned as possible for creators and it's a powerful one.

It's my understanding that the streaming app developed is also quite nifty and cool — again if I have understood correctly from what little I know.

So, whilst I don't imagine I would have anything in the immediate future ready, I do have a personal dram of doing something with music one day (focused on frequency tunes for healing) and also a possible short series of animated films like the Nikelodeon's Avatar — again w a spiritual focus... so both mainly in the spiritual space.

With those personal projects in mind, I imagine it would be nice to use a Blockchain based Rights-Revenue-Royalty tracking & management tool as well as a Streaming App: that is, if it's cool for me to use these two tech tools for these personal projects.

Lastly, yes I will like the cash equivalent of my SNGLS payout in ETH or BTC.

Arie

On Mon, 15 Mar 2021 at 15:58, Carl Volz <[cvolz@breaker.io](cvolz@breaker.io)> wrote:

> Arie,
>
> Thanks for your response.  Apologies for the late response, I was out of the office for a couple days.  What tech are you talking about and how would you envision using it?  As you know there have been significant changes to the DDP and Tokit and neither really has a real consumer-facing function these days.  And with regard to the settlement funds, are you talking about the potential Centrality upside payment? You're not saying you want the cash equivalent of your SNGLS payout in ETH or BTC, are you?
>
> Thanks,
>
> **Carl Volz**
> General Counsel
>
> 708 601 0261 / [www.Breaker.io](www.Breaker.io)
> 40 Fulton St. 5th Fl. New York, NY  10038
> New York / Zug / Los Angeles / Hong Kong
>
> ---
>
> **From:** Arie Y LEVY COHEN <[arielevyycohen@gmail.com](arielevyycohen@gmail.com)>
> **Date:** Thursday, March 11, 2021 at 5:40 PM
> **To:** Carl Volz <[cvolz@breaker.io](cvolz@breaker.io)>
> **Subject:** Re: Fw: DRAFT Agreement
>
> Thanks — received and have given it a quick read ... will have it reviewed this coming week.
>
> My only question, in addition to the terms we have discussed, would be if I could be given the right to use the technology, so long as it was only for personal projects —!so not as a service or to sell (or compete), but if I had personal projects.
>
> I guess if I ever made a movie or created an NFT, or comic book series etc..., would you all be ok for me to be granted the rights to use the tech? Kinda like a "personal right or license to use the tech for free in perpetuity" so long as it was for

my own projects???

That's been the only question bouncing in my head — all else seems to be as we discussed and ok — but this idea keep popping into my head and I thought to ask.

Lastly, I'll like the settlement funds to be settled either by Bitcoin or Ethereum.

Thanks,
A

On Thu, 11 Mar 2021 at 23:34, Carl Volz <cvolz@breaker.io> wrote:

> Hello, Arie, just resending and checking to see if you had any questions about our proposed settlement agreement. Please let me know that you've received it and advise whether you have any questions or concerns that I can address. Thank you very much.
>
> Best,
>
> **Carl Volz**
> General Counsel
>
> 708 601 0261 / www.Breaker.io
> 40 Fulton St. 5th Fl. New York, NY  10038
> New York / Zug / Los Angeles / Hong Kong
>
> ---
>
> **From:** Carl Volz <cvolz@breaker.io>
> **Date:** Monday, March 8, 2021 at 12:04 PM
> **To:** Arie Y LEVY COHEN <arielevycohen@gmail.com>
> **Subject:** DRAFT Agreement
>
> Arie,
>
> Following up on our conversation, attached please find a draft agreement/release documenting the agreement between you and the company.  A couple notes.
>
>> First, in response to your statement that you wouldn't be averse to getting a little upside from the company's current activities, Zach has proposed that you receive 10% of the proceeds of our efforts to monetize the 4.76% stake we hold in Centrality.  As we discussed, Centrality is seeding a fund in the Caymans with its investments in about 20 companies and I've been advised the current value of their holdings in these companies is north of about $30MM USD.  As Centrality shareholders we will receive a pro rata share of the fund (we will be a limited partner holding approximately 4.76% stake) and we can sell that stake to other partners or willing third parties.  The fund should be functioning by the end of 2Q and we'll be investigating the possibility of liquidating our stake immediately thereafter.  Full disclosure – we may not find a willing buyer or the board may decide not to sell the stake, though I think the former is much more likely than the latter.  Joe has no interest in an ongoing relationship with Centrality and Zach has said from the start that he wants to sell anything and everything Centrality-related as soon as we're able.  In any case, if we sell or receive dividends from the fund  (or from our underlying Centrality shares) you will receive 10% of the net proceeds.  Is that ok with you?
>>
>> Second,  I relayed everything to Joe/Matt and they are still ok proceeding as we have agreed.
>
> Please review at your convenience and/or have your lawyer review and let me know what you think.  If you or your lawyer have any questions or would like to discuss further, please let me know and I'll make myself available at any time.
>
> Best,
>
> **Carl Volz**
> General Counsel
>
> 708 601 0261 / www.Breaker.io
> 40 Fulton St. 5th Fl. New York, NY  10038
> New York / Zug / Los Angeles / Hong Kong



EXECUTION COPY

# SETTLEMENT AGREEEMENT
# and
# MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into between Arie Levy-Cohen ("Levy-Cohen") and SingularDTV GmbH (the "Company" and, together with Levy-Cohen, the "Parties");

WHEREAS Levy-Cohen was one of the founders of the Company, served as the Company's Resident Director until May 6, 2021 and remains a shareholder and member of the Company's Board of Directors; and

WHEREAS Levy-Cohen has left his post as Resident Director effective as of May 6, 2021; and

WHEREAS Levy-Cohen has been apprised of the current financial condition of the Company and advised of the Company's plans for the foreseeable future, including but not limited to plans which have the potential to substantially increase the Company's value; and

WHEREAS the Parties wish to effect Levy-Cohen's resignation from the Company's Board of Directors and the surrender of Levy-Cohen's shares in the Company;

NOW THEREFORE, for good and valuable consideration, the receipt, adequacy and sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

    **1.**     **Recitals.** The foregoing Recitals are expressly incorporated as part of this Agreement, and the Parties confirm and represent to one another that said Recitals are true and correct to the best of their knowledge, information and belief.

    **2.**     **No Admission of Liability.** It is expressly understood that this Agreement and the settlement it represents are entered into solely for the purpose of allowing the Parties to avoid further disagreement and potential litigation. This Agreement does not constitute an admission by either Party of any wrongdoing, contractual obligation or any duty whatsoever, whether based in statute, regulation, common law, or otherwise, and each Party expressly denies that any liability or any such violation has occurred.

    **3.**     **Terms of Settlement.** In exchange for Levy-Cohen's resignation from the Company's Board of Directors, his surrender of his Company stock and his agreement to forever relinquish any right to or interest in the Company, any revenue the Company may earn in the future, and any proceeds that may arise from the Company's dissolution or sale, or from any equity or liquidity event involving the Company (excluding payments specifically described in this paragraph), the Company hereby agrees to immediately undertake the following actions for the benefit of Levy-Cohen: (a) forgiveness of any and all debts owed to the Company by Codex Execution GmbH, a Swiss limited liability company in which Levy-Cohen owns a majority interest; (b) delivery of approximately 76,800,000 SNGLS tokens being held by the Company for the benefit of Levy-Cohen; (c) delivery of any other tokens or other digital currencies being held by the Company in the name of and/or for the benefit of Levy-Cohen; and (d) execution of the mutual releases set forth herein. Further if, before the end of calendar year (2023), the Company sells or otherwise monetizes the 765,096 shares it holds in Centrality, a New Zealand Limited Company, it shall promptly pay to Levy-Cohen an amount equal to ten percent (10%) of the gross proceeds of such sale(s) or monetization(s).

EXECUTION COPY

4. **Tax Consequences.** The Parties make no representations regarding any potential tax consequences arising from this Agreement. Each Party agrees that it will not assert a claim against the other Party for the payment of any taxes resulting from the provision of any consideration or forgiveness of any debt effected pursuant to this Settlement Agreement.

5. **Termination of all Previous Offers and Agreements.** The Parties hereby agree that, effective as the execution of this Agreement, any prior agreements or understandings which may have existed between the Parties, whether oral or written and of whatever nature, will terminate in all respects and be of no further force or effect.

6. **Certain Acknowledgements.** The Parties hereby acknowledge and agree that, except as expressly set forth herein or as required by law, Levy-Cohen will not be entitled to make a claim for any other compensation or benefits from the Company and, further, that Levy-Cohen hereby agrees that, except as expressly set forth herein or as required by law, he will have no further interest, rights or benefits in respect of his employment by or ownership of the Company.

    a. **General Release.**

        i. **Release of Claims.** The Parties, on behalf of themselves and their families, agents, representatives, heirs, executors, trustees, administrators, attorneys, successors and assigns, predecessors, stockholders, partners, members, directors, managers, officers, employees, agents or other representatives, hereby irrevocably and unconditionally release, settle, cancel, acquit and discharge, waive any and all rights that he, she, it or they may have against, and covenant not to sue each other with regard to any and all claims, contractual or otherwise, demands, costs, rights, causes of action, charges, debts, liens, promises, obligations, complaints, losses, damages and all liability of whatever kind and nature, whether known or unknown from the beginning of time up to and including the time of signing this Agreement, or that otherwise may exist or may arise in respect of the Parties' relationship to each other; provided, that such released claims shall not include any claims to enforce the Parties' rights under this Agreement. Thus, for the purpose of implementing a full and complete release and discharge of the Parties' rights and obligations, the Parties expressly acknowledge that this Agreement is intended to include in its effect, without limitation, all released claims that the Parties do not know or suspect to exist in their favor at the time of execution hereof, and that this Agreement contemplates the extinguishment of any released claims.

        ii. **Covenant Not to Sue; Certain Proceedings.** The Parties agree not to bring any action, suit or proceeding whatsoever (including the initiation of governmental proceedings or investigations of any type) against each other for any matter or circumstance covered under the foregoing paragraph. Further, the Parties agree not to encourage or suggest to any other person or entity that he, she or it institute any legal action against the other Party. Notwithstanding the foregoing, this release is not intended to interfere with a Party's right to file a charge with the Equal Employment Opportunity Commission (EEOC) in connection with any claim.

        iii. **Extent of Release.** This release is valid whether any claim arises under any federal, state or local statute or regulation (including, without limitation, Title VII of the

2

Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, as amended by the Older Workers Benefits Protection Act of 1990, the Equal Pay Act, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Family and Medical Leave Act, the New York State Constitution, the New York Human Rights Law (Executive Law §§ 290 *et seq.*), the New York City Human Rights Law (N.Y. City Administrative Code §8-101 *et seq.*), New York Labor Law §§740, *et seq.* as amended, the Hawaii Constitution, Hawaii Employment Practices Law; Hawaii Wage and Hour Law; Hawaii Wages and Other Compensation Law, the laws of Puerto Rico, the California Constitution, the California Fair Employment and Housing Act, the California Minimum Wage Law; the Equal Pay Law for California, California Family Rights Act, the California Labor Code (except the provisions relating to workers' compensation and as further described below), the California Business & Professions Code §§ 17200, et seq, and all other federal, state, city or local statutes regulating the terms and conditions of employment), regulation or ordinance, under the common law or in equity (including any claims in tort or under contract for wrongful discharge or otherwise), or under any policy, agreement, understanding or promise, written or oral, formal or informal, between the Parties. Levy-Cohen acknowledges and agrees that he has received all salary, wages, bonuses, or other such sums due to him other than amounts to be paid pursuant to this Agreement. In light of the payment by the Company of all wages due, the Parties further acknowledge and agree that California Labor Code Section 206.5 is not applicable to the Parties. The Parties also understand and agree that this Agreement extends to all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, past or present, and all rights under Section 1542 of the California Civil Code are hereby expressly waived. Section 1542 of the California Civil Code reads as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR". Thus, notwithstanding the provisions of section 1542, and for the purpose of implementing a full and complete release and discharge of the Releasees, the Parties expressly acknowledge that this Agreement is intended to include in its effect, without limitation, all released claims that the Parties do not know or suspect to exist in their favor at the time of execution hereof, and that this Agreement contemplates the extinguishment of any released claims. Notwithstanding any provision of this Agreement, Levy-Cohen is not releasing the Company from any obligation it may have to him in the future under California Labor Code Section 2802 to the extent provided therein.

        **iv.** **Claims that Cannot be Waived.** However, this general release excludes, and Levy-Cohen does not waive, release, or discharge (A) claims that cannot be waived by law, such as claims for workers' compensation or unemployment benefits; (B) indemnification rights Levy-Cohen may have against the Company; and (C) any right to file an unfair labor practice charge under the National Labor Relations Act.

    **b.** **Restrictive Covenants.**

        **i.** **Confidentiality.** Levy-Cohen acknowledges and agrees that at all times, without the prior written consent of the Company and except as required in performance of his duties hereunder, he shall not use or disclose any confidential or proprietary trade secrets, customer lists, drawings, designs, marketing plans, management organization information

3

(including, but not limited to, data and other information relating to members of the boards of directors of the Company or to the management of the Company), operating policies or manuals, business plans, financial records, or other financial, commercial, business or technical information relating to the Company (collectively, "Confidential Information") to any third Person (as defined below) unless such Confidential Information has been previously disclosed to the public generally, is in the public domain, or has been rightfully received by Levy-Cohen from a third party who is authorized to make such disclosure, in each case, other than by reason of Levy-Cohen's breach of this paragraph, or the disclosure of which Levy-Cohen may be required by law; *provided*, *however*, Levy-Cohen will provide the Company with prompt notice of any requirement or proceeding which would compel him to disclose the Confidential Information (including, without limitation, a judicial or administrative proceeding or by interrogatories, civil investigative demand, subpoena or other legal process) so that the Company may seek an appropriate protective order or other appropriate remedy, and Levy-Cohen will cooperate (at the Company's sole expense) with the Company's efforts in connection therewith. For purposes of this Agreement, "Person" shall mean any natural person, partnership, limited liability company, association, corporation, company, trust, business trust, governmental authority or other entity. Nothing in this Agreement prohibits or restricts Levy-Cohen (or his attorney) from initiating communications directly with, responding to an inquiry from, or providing testimony before any federal or state regulatory authority regarding this Agreement or the operations of the Company.

        **ii.**     **Non-Solicitation of Employees.** Beginning on the date hereof and ending the 6-month anniversary of the date hereof (the "Restricted Solicitation Period"), Levy-Cohen shall not, directly or indirectly, for himself or on behalf of or in conjunction with any other person, (A) attempt to hire any person that is an employee of the Company or was within six (6) months prior to the execution of this Agreement; provided, however, that the foregoing shall not be breached by a solicitation to the general public or through general advertising; or (B) solicit, advise or encourage any person, firm, government agency or corporation to withdraw, curtail or cancel its business with the Company.

        **iii.**     **Non-Disparagement.** The Parties mutually acknowledge and agree that neither Party shall directly or indirectly engage in any conduct or make any statement disparaging or criticizing in any way of the other Party including, in the case of the Company, its employees or personnel, or directly or indirectly engage in any other conduct or make any other statement that could be reasonably expected to impair the goodwill or reputation of the other party, except to the extent required by law, and then only after consultation with the other party to the extent possible, or to enforce the terms of this Agreement. However, these non-disparagement obligations do not limit either Party's ability to truthfully communicate with the EEOC, the National Labor Relations Board (NLRB), the SEC and comparable state and local agencies whether such communication is initiated by the Party or in response to the government.

        **iv.**     **Return of Documents.** Levy-Cohen acknowledges and agrees that he shall deliver to the Company all property of the Company in his possession, including but not limited to all Company documents and data of any nature, in whatever medium.

        **v.**     **Remedies.** The Parties acknowledge and agree that the covenants, obligations and agreements contained in this paragraph relate to special, unique and extraordinary

matters and that a violation of any of the terms of such covenants, obligations or agreements will cause the other Party irreparable injury for which adequate remedies are not available at law. Therefore, the Parties agree that in the event of a breach of the foregoing covenants, obligations or agreements, the other Party shall be entitled to an injunction, restraining order or such other equitable relief (without the requirement to post bond) to restrain the other Party from committing any violation of such covenants, obligations or agreements. These injunctive remedies are cumulative and in addition to any other rights and remedies the Parties may have.

7. **Confidentiality of this Agreement; No Admission.** The Parties will keep confidential and will not release or divulge, either orally or in writing to any person, except as may be required by law or regulation or by order of any court, this Agreement or any provision hereof or any information with respect thereto; *provided*, that nothing contained herein will prohibit the Parties from disclosing the terms of this Agreement to their spouse, attorneys, accountants, financial advisors or members of their immediate family. Nothing in this Agreement or any other policy or agreement between the Parties restricts or impedes the exercise of protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order. This Agreement does not constitute an admission by the Parties or the Releasees of any violation of any contract or law, and the Parties and the Releasees expressly deny any such liability. This Agreement may not be introduced in any action or proceeding by anyone for any purpose except to evidence or enforce its terms.

8. **Consideration; Legal Advice, Reliance.** The consideration provided hereunder by the Parties is not required under the Company's standard policies and there are no other circumstances other than the Parties' assent to the terms of this Agreement that would require the Parties to provide such consideration. The Parties represent and acknowledge that (a) they have been given adequate time to consider this Agreement and have been given the opportunity to discuss all aspects of this Agreement with their private attorney; (b) they have carefully read and fully understand all the provisions of this Agreement; (c) they voluntarily entered into this Agreement, without duress or coercion; and (d) they have not heretofore assigned or transferred or purported to assign or transfer, to any person or entity, any of the claims described in this Agreement or any portion thereof or any interest therein.

9. **General Provisions.**

    a. **Cooperation.** The Parties agree to timely execute and deliver, or cause to be timely executed or delivered, such additional or further transfers, assignments, resolutions, endorsements, powers of attorney or other instruments or documents as may reasonably be requested by the other for the purpose of carrying out the intentions of the Parties hereto. Any reasonable out-of-pocket expenses associated with preparing or obtaining the requested material shall be borne by the requesting Party. Each Party agrees to cooperate with the other in effecting the transactions contemplated hereunder.

    b. **Third Party Beneficiaries.** All Releasees under this Agreement who are not signatories to this Agreement shall be deemed to be third party beneficiaries of this Agreement to the same extent as if they were signatories hereto.

5

<u>EXECUTION COPY</u>

    **c.**  **Withholding.**  The Company shall withhold from any amounts payable under this Agreement such federal, state and local taxes as may be required or permitted to be withheld pursuant to any applicable law or regulation.

    **d.**  **Entire Agreement.**  This Agreement constitutes the sole and complete understanding of the Parties with respect to the subject matter hereof.  The Parties represent to each other that in executing this Agreement, they do not rely and have not relied upon any representation or statement not set forth herein made by any other person with regard to the subject matter, basis or effect of this Agreement.

    **e.**  **Amendment; Waiver; Successors.**  No amendment, modification or alteration of the terms and provisions of this Agreement shall be binding unless the same shall be in writing and duly executed by the Parties.  No waiver of any of the provisions of this Agreement shall be deemed to or shall constitute a waiver of any other provision hereof.  No delay on the part of any Party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof.  This Agreement shall be binding upon the parties hereto and their respective successors, trustees, administrators, transferees and assigns.

    **f.**  **Governing Law; Severability; Blue Pencil.**  This Agreement will be governed by the laws of New Jersey, without regard to its conflict of laws rules.  In the event that any one or more of the provisions of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby.  The Parties agree that the covenants contained in paragraph 6 are reasonable covenants under the circumstances, and further agree that if, in the opinion of any court of competent jurisdiction such covenants are not reasonable in any respect, such court shall have the right, power and authority to excise or modify such provision or provisions and enforce the remainder of such covenants as so amended.

    **g.**  **Counterparts.**  This Agreement may be executed in counterparts, each of which shall for all purposes be deemed to be an original, and all of which shall constitute the same instrument.  The Parties hereto agree to accept a signed facsimile (or "PDF") copy of this Agreement as a fully binding original.

*   *   *   *

<u>EXECUTION COPY</u>

**IN WITNESS WHEREOF**, the Parties have hereto set their hand as of the date and year first indicated above.

**AGREED TO AND ACCEPTED BY:**

| **SingularDTV GmbH** | **Arie Levy-Cohen** |
|---|---|
| | _____ |
| _____ | |
| By: Zach LeBeau | |
| Chief Executive Officer | 5/6/2021 |
| | Date |
| _____ | |
| Date | |

7