**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SINGULARDTV, GMBH,

                Plaintiff,

    v.

JOHN DOE,

                Defendant.

Case No. 1:21-cv-06000 (VEC)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH RULE 45 SUBPOENA

KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

Josef M. Klazen
Benjamin J. Sauter
Calvin K. Koo
Victor S. Leung
*Attorneys for Non-Party Kobre & Kim*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ............................................................................................................................. 6

I.    The Instructing Party Cannot Justify Expedited Discovery ......................................... 6

    A.    The Instructing Party Fails to Demonstrate Good Cause for Expedited
    Discovery Because It Is Not Reasonable Under the Circumstances ............................ 7

    B.    The Instructing Party Fails All Four Factors Set Forth In *Notaro* .............................. 10

II.   The Subpoenas Should Be Quashed Because They Impermissibly Seek Privileged
    Information and Work Product ......................................................................................... 14

    A.    The Third-Party Subpoenas Attempt to Pierce the Privilege of Adverse Parties
    in Related Litigation ..................................................................................................... 15

    B.    The Third-Party Subpoenas Impermissibly Seek Work Product, for Which the
    Instructing Party Cannot Demonstrate a Substantial Need ......................................... 16

    C.    Kobre & Kim, AlixPartners and ConsenSys are Engaged in a Common Legal
    Enterprise on Behalf of SingularDTV ......................................................................... 17

    D.    Privilege and Work Product Protections are Not Lost When a Case or Claim
    Ends .............................................................................................................................. 19

CONCLUSION ........................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Citizens Union of City of New York v. Attorney General of New York*,
    269 F. Supp. 3d 124 (S.D.N.Y. 2017) ................................................................ 14

*Fitzpatrick v. American Int'l Grp., Inc.*,
    272 F.R.D. 100 (S.D.N.Y. 2010) ........................................................................ 15

*Horn & Hardart Co. v. Pillsbury Co.*,
    888 F.2d 8 (2d Cir. 1989) .................................................................................... 16

*In re Grand Jury Subpoena Dated Oct. 22, 2001*,
    282 F.3d 156 (2d Cir. 2002) ............................................................................... 16

*In re New York City Mun. Securities Litigation*,
    No. MDL 314 M–21–22 (RO), 1980 WL 324464 (S.D.N.Y. June 30, 1980) ...................... 12

*In re World Trade Center Lower Manhattan Disaster Site Litigation*,
    304 F.R.D. 379 (S.D.N.Y. 2015) ........................................................................ 12

*JDS Therapeutics, LCC v. CVS Pharmacy*,
    No. 15-CV-4365 JSR , 2015 WL 6459092 (S.D.N.Y. Oct. 2, 2015) .................................. 16

*KWG Partners, LLC v. Sigel*,
    No. 11-CV-2890 NGG JMA, 2011 WL 2837437 (E.D.N.Y. July 14, 2011) ...................... 11

*Levy v. Young Adult Institute, Inc.*,
    No. 13-CV-2861 JPO, 2015 WL 170442 (S.D.N.Y. Jan. 13, 2015) .................................. 6, 7

*Litwin v. OceanFreight, Inc.*,
    865 F. Supp. 2d 385 (S.D.N.Y. 2011) .......................................................... 8, 9, 11

*N. Atl. Operating Co. v. Evergreen Distributors, LLC*,
    293 F.R.D. 363 (E.D.N.Y. 2013) .................................................................. 7, 8, 11

*Notaro v. Koch*,
    95 F.R.D. 403 (S.D.N.Y. 1982) ....................................................................... 7, 11

*Radovic v. City of New York*,
    168 Misc. 2d 58 (Sup. Ct. N.Y. 1996) ................................................................ 19

*Schaeffler v. U.S.*,
    806 F.3d 34 (2d Cir. 2015) .......................................................................... 17, 18

*Sokol v. Wyeth*,
   No. 07 CIV. 8442 SHS KNF, 2008 WL 3166662 (S.D.N.Y. Aug. 4, 2008)........................ 17

*Strike 3 Holdings, LLC v. Doe*,
   329 F.R.D. 518 (S.D.N.Y. 2019) .................................................................................. 6, 7, 11

*Swinder & Berlin v. U.S.*,
   524 U.S. 399 (1998) ........................................................................................................... 19

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ........................................................................................................... 19

**Statutes**

Fed. R. Civ. P. 45(d)(3) .................................................................................................... 12, 14

**Other Authorities**

8 Wigmore, Evidence § 2323 (McNaughton rev. 1961) ................................................... 19

Non-party Kobre & Kim LLP ("Kobre & Kim"), counsel to SingularDTV GmbH ("SingularDTV" or the "Company") in connection with litigation proceeding before this Court,[1] respectfully submits this memorandum of law in support of its motion (the "Motion") to quash the Information Subpoena served on Kobre & Kim on May 16, 2022 (the "Subpoena").  The Motion is supported by the Declaration of Josef M. Klazen ("Klazen Decl."), filed concurrently herewith.

## PRELIMINARY STATEMENT

The Subpoena, and two other subpoenas identified below, appear to be a ploy by Zachary LeBeau and Kimberly Jackson, who are instructing Morrison Tenenbaum PLLC[2] (together, the "Instructing Party") to access confidential information of the Company that is privileged and constitutes work product.  In 2021, the Company terminated LeBeau as chief executive officer and Jackson as chief operating officer (Dkt. 15 at 2-3), and it subsequently removed LeBeau as managing director as well (Dkt. 14.9 at 4).  Notwithstanding their terminations and LeBeau's removal, the pair continue to illegitimately pursue legal proceedings in the name of the Company.  They now seek the Company's documents through their counsel, Morrison Tenenbaum, who (inaccurately) claims to represent the Company in this matter.

Although the Company maintains that Morrison Tenenbaum *does not* have authority to represent the Company, the Court does not need to decide this issue to quash the Subpoena, which is improper for two independent reasons.

---

[1] *SingularDTV GmbH v. LeBeau, et al.,* No. 1:21-cv-10130 (VEC) (the "LeBeau Action").

[2] Jackson confirmed she engaged Morrison Tenenbaum PLLC for this matter.  (Dkt. 21 at 4.) Morrison Tenenbaum is also counsel to LeBeau in a New York state court action (#655673/2021) captioned *Zach LeBeau, both individually and derivatively on behalf of SingularDTV GmbH v. Joseph Lubin, Arie Levy Cohen, Consensys AG, Consensys Inc., and SingualrDTV GmbH* (the "New York State Action").  (Dkt. 14.3.)

*First,* the Instructing Party's counsel, Morrison Tenenbaum, cannot justify why they need to subpoena documents already in the possession or control of their supposed client, the Company.[3] The Company is instructing Kobre & Kim as its counsel, and, accordingly, the Company has access to Kobre & Kim's case file.  Presumably, the reason for seeking discovery from Kobre & Kim is to benefit LeBeau and Jackson, who are not parties to this action.  Further, while the Instructing Party attempts to justify the Subpoena by claiming that Kobre & Kim conducted an extensive investigation into the hack and must know who perpetrated it, that is simply not the case.  Kobre & Kim analyzed, through an expert, certain transactions that are recorded on a public ledger (the blockchain).  The results of that review have been filed publicly in this action (Dkt. 26) and they do not identify the perpetrator of the hack, although they do reveal how LeBeau appears to have personally benefited from it.  Further, because the transactions are publicly viewable on the blockchain, the Instructing Party can conduct its own forensic analysis of those transactions instead of burdening third parties with discovery requests for privileged and protected information.

*Second,* Morrison Tenenbaum cannot justify why they and the persons instructing them are entitled to privileged and protected documents from their litigation adversaries: as detailed below, LeBeau and Jackson are adverse to the Company and/or its current directors in other ongoing

---

[3] The Instructing Party claims that by withdrawing its motion to intervene in this action, SingularDTV has implicitly acknowledged that Morrison Tenenbaum represents the Company. (Dkt. 55 at 4.)  That is absurd.  As SingularDTV has informed the Court, it withdrew the motion to intervene because "the Company is concerned that the *Doe* Action will produce no relief at all, and certainly none that would justify the expense of conducting discovery, motion practice, and an evidentiary hearing to resolve the Intervention Motion" (Dkt. 36 at 1)—but that does not mean that SingularDTV acknowledges Morrison Tenenbaum as its counsel (which he is not).  To the contrary, as noted in a letter to the Court at the time of the withdrawal, "Morrison-Tenenbaum lacks authority to continue purporting to represent the Company in the *Doe* Action.  The Company does not consent to Morrison-Tenenbaum's purported representation . . . ." (Dkt. 36 at 2.)  On the same day, Kobre & Kim separately wrote to Morrison Tenenbaum to reiterate that "the Company does not agree and expressly denies that Morrison-Tenenbaum has authority to act on its behalf in the John Doe Action or otherwise."  (Klazen Decl. ¶ 10, Ex. 1.)

litigation.  Morrison Tenenbaum tries to have it both ways: they admit to seeking the Company's privileged information (Dkt. 42 at 2 (referring to "the likely privileged nature of some disclosures")), which presumably they would justify by claiming they represent the Company, while at the same time they acknowledge seeking discovery from an "opposing faction" (*id.* at 2-3) and the existence of a "factional battlefront" (*id.* at 3).  Plainly, the Instructing Party is seeking to abuse the expedited-discovery process in this case to access the documents of admitted adversaries (Dkt. 42 at 1–3) in related litigation, including the New York State Action and the LeBeau Action.[4]

As a result, the Subpoena, in addition to two concurrently issued subpoenas directed at Patrik Allenspach, the Company representative and Resident Signatory, and AlixPartners [5] (respectively the "Allenspach Subpoena" and "AlixPartners Subpoena," and collectively with the Subpoena, the "Third-Party Subpoenas"), are a wasteful exercise at best (given that the Company already has its own documents), and an abuse of the expedited discovery process and invasion of attorney-client privilege at worst.  For these reasons and those set forth below, Kobre & Kim respectfully requests that that the Court quash the Subpoena.

## FACTUAL BACKGROUND

SingularDTV previously summarized relevant background in its motion to intervene in this matter.[6]  (Dkt. 12.)  For convenience, and relevant to this Motion, Kobre & Kim reiterates a few

---

[4] For example, LeBeau raises the issue of a purported computer hack in the New York State Action Complaint (Dkt. 14.3 at 19-20), and in an action he filed in Switzerland to dissolve SingularDTV GmbH) (Dkt. 15.8 at 8).

[5] The subpoena issued against AlixPartners was served on May 31, 2022, after Morrison Tenenbaum withdrew a prior subpoena directed at AlixPartners' Kevin Madura.

[6] As noted, SingularDTV withdrew its motion to intervene on March 17, 2022 in light of the disproportionate economic costs that conducting discovery, motion practice, and an evidentiary hearing on that motion would entail.  (Dkts. 35, 36, 38, 39.)  However, SingularDTV continues to

particularly salient facts.  The Company's board terminated LeBeau as the chief executive officer of SingularDTV on May 27, 2021 (including revoking his signatory powers for the Company), shortly after LeBeau's lax financial controls enabled the multimillion-dollar fraud against the company that is the subject of this case.  (Dkt. 15 at 2.)  On June 8, 2021, the board resolved to terminate Jackson's position as chief operating officer after her failure to respond to SingularDTV's request to surrender the Company's intellectual property and financial assets.  (Dkt. 15 at 3.)  On September 24, 2021, SingularDTV also removed LeBeau from the Board (Dkt. 15 at 4.)—this fact was recorded on the Swiss Commercial Register for the canton of Zug on October 15, 2021 (Dkt. 15 at 4).  Following their terminations, neither LeBeau nor Jackson possessed any right to engage or instruct counsel on the Company's behalf, and SingularDTV expressly disavows Morrison Tenenbaum's unsanctioned representation of the Company in this or any other matter.  (Dkt. 36; Dkt. 38; Dkt. 57 at 1; and Klazen Decl. at ¶ 10, Ex. 1.)

As detailed in the Instructing Party's May 6, 2022 letter to the Court (Dkt. 42) seeking permission to issue the Third-Party Subpoenas, the Instructing Party seeks broad discovery of information relating to an alleged hacking incident that occurred in May 2021, resulting in LeBeau authorizing the Company's payment of $2,000,000 in cryptocurrency to an illegitimate recipient.  (Dkt. No. 42.)  (In fact, not only did LeBeau authorize the payment, but as the person with sole control over that cryptocurrency, he personally made the transfer without even discussing it with the other Company directors or the supposed intended recipient, Arie Levy-Cohen (Dkt. 14 at 5-6).)  As that May 6 letter acknowledges, the purported hacking incident "began an onslaught of litigation between opposing factions" and "Kobre & Kim has maintained its opposition to

---

deny that Morrison Tenenbaum has authority to act in this John Doe action or in any other matter. (Dkt. 36 and Klazen Decl. at ¶ 10, Ex. 1.)

[Morrison Tenenbaum's] representation of Plaintiff in this matter." (Dkt. 42 at 1-2.) The letter goes on to claim that the Third-Party Subpoenas are necessary to obtain information about the "investigations into the hacking incident being pursued by the opposing faction . . . ." (*Id*. at 2.)

To be clear, Kobre & Kim does not know the identity of the John Doe defendant. (Klazen Decl. ¶ 7.) Kobre & Kim is not a percipient witness to the alleged hack, which predated its engagement by the Company. (Klazen Decl. ¶ 5.) Unlike Google or Binance, whom the Instructing Party previously subpoenaed for information (Dkt. 7), Kobre & Kim does not have customer account holder information about the John Doe defendant. (Klazen Decl. ¶ 7.) As reflected in the previously filed Madura Declaration, Kobre & Kim, with the assistance of its retained expert consultant, simply reviewed and analyzed certain transactions on the public ledger (i.e., the blockchain) and other associated information to test assertions the Instructing Party had made about the hack. As it turns out, circumstantial evidence suggests potential involvement of LeBeau himself. (Dkt. 26.) Notably the Instructing Party neglects to focus on LeBeau, the one person that might have contemporaneous knowledge about certain relevant transfers following the hack that are reviewable on the public blockchain.

Further, as noted previously, Kobre & Kim does not have information to which the Company does not also have access (even if the Instructing Party's counsel lacks such access). The Subpoena identifies categories of communications, documents, and related information about the "Cyber Incident" and "Alleged Hack," which the Subpoena defines by circular reference to this captioned action. In its letter seeking authorization for the Third-Party Subpoenas, the Instructing Party clarifies that this action is about "a hacking incident that occurred in early May of 2021" (Dkt. 42 at 1). To the extent Kobre & Kim possess any communications, documents, and related information about the May 2021 hacking incident, as alleged in the Complaint (Dkt. 1),

such records necessarily arise out of the Company's engagement of Kobre & Kim (Klazen Decl. ¶ 4), and therefore the Company already controls these documents through its counsel Kobre & Kim (and counsel's engaged expert, AlixPartners).  In addition, the Instructing Party acknowledges that it seeks information that is privileged.  (Dkt. 42 at 2.)

## ARGUMENT

The Subpoena is improper for two independent reasons.  As a procedural gatekeeping matter, the Instructing Party fails to meet the relevant thresholds required for expedited discovery.  That alone is sufficient reason to quash.  Moreover, even assuming the Instructing Party could meet those thresholds, which it cannot, the Subpoena unjustifiably seeks the privileged communications and work product of admitted adversaries in other ongoing litigation, which is a perverse and inappropriate use of subpoena powers in a John Doe action.  For these reasons, the Court should quash the Subpoena.

## I.    THE INSTRUCTING PARTY CANNOT JUSTIFY EXPEDITED DISCOVERY

"Generally, Federal Rule of Civil Procedure 26(d)(1) forbids a party from seeking discovery from any source before the parties have conferred as required by Rule 26(f)."  *Strike 3 Holdings, LLC v. Doe*, 329 F.R.D. 518, 520 (S.D.N.Y. 2019) (citations and internal quotation marks omitted).  In evaluating a request for expedited discovery prior to a Rule 26(f)[7] conference, including in *Doe* actions like the present case, "Courts in this Circuit employ two tests to determine whether to grant expedited discovery."  *Levy v. Young Adult Institute, Inc.*, No. 13-CV-2861 JPO, 2015 WL 170442, at *6 (S.D.N.Y. Jan. 13, 2015) (citations omitted) (finding plaintiffs failed to meet their burden under either test).  The first is a standard of "reasonableness and good cause" which requires that the party seeking discovery "prove that the requests are reasonable under the

---

[7] Unless otherwise noted, references to any "Rule" are to the Federal Rules of Civil Procedure.

circumstances." *Id.* (citing *N. Atl. Operating Co. v. Evergreen Distributors, LLC*, 293 F.R.D. 363, 367 (E.D.N.Y. 2013)).

The second test, under *Notaro v. Koch*,  95 F.R.D. 403, 405 (S.D.N.Y. 1982), requires a showing of "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Levy*, 2015 WL 170442, at *6, citing *Notaro v. Koch* (seeking expedited discovery from defendant).  This is a tacit recognition that, at least in certain circumstances, allowing expedited discovery is akin to preliminary injunctive relief.  Courts often blend the *Notaro* factors with the reasonableness and good cause standard.  *See N. Atl. Operating Co.*, 293 F.R.D. at 368.

The Instructing Party fails to meet its burden under either test for expedited discovery, whether taken separately or as a blended analysis.

**A.    The Instructing Party Fails to Demonstrate Good Cause for Expedited Discovery Because It Is Not Reasonable Under the Circumstances**

As this Court noted with respect to the Instructing Party's subpoenas directed to other third parties (Dkt. 7), the reasonableness standard applies in many typical John Doe cases where it is "reasonable under the circumstances" to conduct limited discovery regarding the name and address of a John Doe defendant to effectuate service.  *See e.g.*, *Strike 3 Holdings, LLC*, 329 F.R.D. at 522 (directing third party to serve subpoena upon John Doe defendant; and allowing discovery of name and address, but *not* of email address or telephone number, only if John Doe defendant failed to respond).  Such expedited discovery is necessarily limited in scope and is only appropriate where "the need for expedited discovery, in consideration of the administration of justice, outweighs the

prejudice to the responding party." *N. Atl. Operating Co.*, 293 F.R.D. at 367 (citation and internal quotation marks omitted).

However, the subpoenas here do not seek readily available customer information from a third party such as a telecom or internet service provider in possession of the name and address of a John Doe defendant.  Instead, the Subpoena seeks broad and sweeping discovery from counsel, such as "All Communications with SingularDTV GmbH" and "All internal Communications of Kobre & Kim concerning any investigation," (Klazen Decl. ¶ 11, Ex. 2), completely ignoring the fact that SingularDTV already has communications between itself and Kobre & Kim.  Moreover, the Instructing Party fails to articulate how any of the requested records will help to identify the John Doe defendant (other than through groundless speculation) and does not point to any association between Kobre & Kim (or the Company's other professional advisors) and the John Doe defendant.  Indeed, Courts have denied expected discovery in such circumstances where the "sheer volume and breadth" of expedited discovery requests "render[ed] them unreasonable" and where "plaintiff has offered no concrete basis whatsoever to justify expedited discovery." *See Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 402 (S.D.N.Y. 2011) (denying expedited discovery where the "sheer volume and breadth" of discovery requests was unreasonable).  It is affirmatively *not* reasonable under these circumstances to seek broad and sweeping discovery from Kobre & Kim and the Company's other retained professionals regarding analysis that is already publicly disclosed and *did not* identify the John Doe defendant.  (Klazen Decl. ¶ 6.)

Furthermore, to the extent the Company (including through its professional advisors) has documents responsive to the Third-Party Subpoenas, the Company, by definition, is already in possession, custody or control of such documents.  So, the Third-Party Subpoenas are facially unreasonable and lack good cause because they seek the production of documents (purportedly to

the Company) that the Company already has (and does not want to produce to Morrison
Tenenbaum and the parties directing that firm).

Not only has the Instructing Party not offered a "concrete basis" to justify expedited
discovery, but the Instructing Party has in fact offered only an illegitimate basis: their letters
acknowledge that the requested documents relate to a dispute between "opposing factions" of the
Company, which underscores how expedited discovery is an inappropriate mechanism in these
circumstances.  *See Litwin*, 865 F. Supp. 2d at 402 ("plaintiff has offered no concrete basis
whatsoever to justify expedited discovery").  The narrow exception in Rule 26(d)(1), which allows
courts to order expedited discovery when warranted, is not meant to provide a vehicle for discovery
of alleged co-counsel, particularly when there is an obvious adversarial posture between those
counsel in related litigations.  As discussed further below, allowing expedited discovery here
would allow the Instructing Party to abuse this John Doe action to wrongfully obtain work product
and privileged documents from adversaries.  Matters implicated by the expedited discovery sought
by the Third-Party Subpoenas are the subject of ongoing litigation between the Company and
LeBeau.  As a result, there are reasons to disbelieve that the Third-Party Subpoenas seek to
discover the identity of the defendant at all, not least of which is that some of the misappropriated
funds appear to have personally benefited LeBeau, through a reduction of a personal loan balance
and a transfer to a company (GazeTV Foundation) with which he has been associated.  (Dkt. 26 at
12).

Indeed, the Instructing Party nakedly admits it is trying to deflect attention from LeBeau.
Its letter seeking authorization for the Third-Party Subpoenas assumes, without explanation, that
Kobre & Kim and Madura of AlixPartners have information that points to someone other than
LeBeau as the "perpetrator" and so the Instructing Party seeks "access to all such documents and

communications" between SingularDTV and AlixPartners, as well as Kobre & Kim's documents, to identify some other perpetrator.  (Dkt. 42 at 3.)

In any case, the Instructing Party already has the benefit of the conclusions set forth in the Madura Declaration and can conduct its own expert assessment of the underlying facts to arrive at its own conclusions; no less so, if it believes there are facts to exculpate LeBeau.  As noted in the Madura Declaration, the blockchain is public and traceable, with anyone able to access that information and trace the flow of cryptocurrencies based on the blockchain themselves.  (Dkt. 26 at 2-3.).  An expedited third-party subpoena against an "opposing faction's" counsel and expert in a John Doe case is simply not an appropriate avenue to try to obtain discovery that they may use to their advantage in adversary actions being litigated elsewhere.[8]

The Instructing Party proffers no reasonable basis or good cause for why it seeks this information.  Even in the best of circumstances (which these are not), the Third-Party Subpoenas are unreasonable, duplicative and unduly burdensome requests for documents and information already in the Company's possession.   In reality, the Third-Party Subpoenas amount to an inappropriate attempt to obtain an adverse party's privileged communications, analysis and work product relevant to other ongoing litigation.

Because the Instructing Party fails to show good cause or reasonableness under the circumstances, expedited discovery is unwarranted and the Subpoena should be quashed.

### B.      The Instructing Party Fails All Four Factors Set Forth In *Notaro*

Not only does the Instructing Party fail to demonstrate good cause, thus failing to meet its burden even under a standard of reasonableness, but the Third-Party Subpoenas here also implicate, among other things, attorney-client privilege and judicial economy—to say nothing of

---

[8] *See e.g.,* the LeBeau Action, New York State Action and various Swiss proceedings.

the dubious authority of the Instructing Party to commence an action on behalf of the Company. As such, application of the test set forth under *Notaro* is appropriate to prevent abuse of discovery procedures.   A number of courts in this Circuit apply this more stringent test to expedited discovery, and Kobre & Kim submits that application of this test is particularly appropriate when, as here, the circumstances suggest that the potential for abuse of expedited discovery is high.   *See Notaro*,  95 F.R.D. at 406; *see e.g., Litwin*, 865 F. Supp. 2d at 402; *KWG Partners, LLC v. Sigel*, No. 11-CV-2890 NGG JMA, 2011 WL 2837437 (E.D.N.Y. July 14, 2011); *N. Atl. Operating Co.*, 293 F.R.D. at 363.

### 1. *The Instructing Party Cannot Identify Any Irreparable Harm that Discovery Pursuant to the Subpoenas Would Remedy*

Under the first and third *Notaro* factors, a party seeking expedited discovery must show an irreparable harm and that the expedited discovery would aid in remedying that harm.  *See Notaro*, 95 F.R.D. at 406.   Here, the Instructing Party has shown neither.   Inappositely, the Instructing Party asserts that it is unable to obtain Kobre & Kim's documents due to an internal corporate governance dispute but has failed to demonstrate—or even credibly suggest—that any documents or communications in the possession, custody or control of Kobre & Kim will identify the John Doe defendant.  *Cf. Strike 3 Holdings, LLC*, 329 F.R.D. at 522 (allowing expedited discovery *only* of John Doe defendant's name and address).

At bottom, the Instructing Party cannot connect the Subpoena to the amelioration of any harm.   To the extent any of the subpoenaed documents would be helpful at all, the Company continues to instruct Kobre & Kim in connection with its representation of the Company with respect to various matters.   (Klazen Decl. ¶ 8.)   As a result, the Company continues to maintain possession or control of the documents requested under the Subpoena.   Whether or not Morrison Tenenbaum themselves have access to those records is of no moment.

Moreover, the Instructing Party does not need the requested Company documents to identify the John Doe defendant.  As set forth above, Kobre & Kim does not know the identity of the John Doe defendant, and its communications and work product produced with AlixPartners do not identify the John Doe defendant.  Further, as noted in the Madura Declaration, the blockchain is public and traceable, with anyone able to access information about the asset flows themselves. (Dkt. 26 at 2-3.)  In this case, the Instructing Party has the added benefit of the previously filed Madura Declaration.  Rather than inappropriately seeking to compel Kobre & Kim to produce its privileged communications with the Company's expert (or to compel AlixPartners to provide expert discovery and analysis in this matter, which the Instructing Party cannot do[9]), the Instructing Party is able perform its own blockchain analysis and related investigation to arrive at the requested information.  The Instructing Party offers no credible explanation why it now needs Company documents held by Kobre & Kim and AlixPartners to pursue an investigation and avoid some unnamed irreparable injury.

---

[9] Madura and AlixPartners are not experts retained by any party in the John Doe Action.  Madura merely provided a declaration in connection with an intervention motion that has since been withdrawn.  His expert analysis is not at issue in the case.  It is, however, at issue in the LeBeau Action.  (*See* LeBeau Action, Dkt. 52.)  The Instructing Party's non-party subpoena to obtain discovery from AlixPartners here is a transparent attempt to end-run both this Court's expert discovery schedule in the LeBeau Action (LeBeau Action, Dkt. 83) and the comprehensive expert disclosure requirements and limitations under Rule 26(a)(2), (b)(3), and (b)(4).

Even were that not the case, however, the Instructing Party still would have no right to elicit information from an expert it did not retain in this case without showing a substantial need and reasonable compensation.  *In re World Trade Center Lower Manhattan Disaster Site Litigation*, 304 F.R.D. 379, 382 (S.D.N.Y. 2015) (citing Fed. R. Civ. P. 45(d)(3)(C)).  There is no such substantial need here:  neither Madura nor AlixPartners is a percipient witness of the facts of the case; they are not unique experts in the field of blockchain tracing; and there are comparable witnesses available for such tracing analysis.  *Id.*  Moreover, given the potential for future dissipation of the stolen digital assets at issue, there is a risk that they may be oppressed by having to continuously provide updated expert opinions—this is a further reason to quash the AlixPartners Subpoena.  *In re New York City Mun. Securities Litigation*, No. MDL 314 M–21–22 (RO), 1980 WL 324464 at *1 (S.D.N.Y. June 30, 1980).

### 2. *The Instructing Party Concedes a Low Probability of Success on the Merits*

Second, under *Notaro*, the Instructing Party must establish a probability of success on the merits. By its own admission, the Instructing Party's reports to the Court concede that there are inherent difficulties of recovering assets, which indicates a low probability of success. (*See* Dkt. 8-10, 44-46.) This is particularly the case where the Instructing Party seems to intentionally ignore critical investigation targets who are concurrently represented by counsel for the Instructing Party, including LeBeau, and GazeTV Foundation—an entity with which the Instructing Party is affiliated, with demonstrable connections to the hack at issue. (Dkt. No. 12 at 10). Curiously, in its first letter to the Court seeking these subpoenas, the Instructing Party sought leave to issue a subpoena on LeBeau (despite representing LeBeau)—the individual with the most contemporaneous information—but in its second letter withdrew that request without explanation. (Dkt. 40 & 42.) The Instructing Party has not, because it cannot, establish any reasonable likelihood of success of recovering assets, or information leading to it, in this matter.

### 3. *Kobre & Kim and the Company Would Be Unduly Prejudiced if Required to Comply With the Subpoenas*

Lastly under the *Notaro* standard, the balance of harms weighs heavily in favor of quashing the Subpoena because it is Kobre & Kim—and its client, SingularDTV—that will suffer the greater, and only, harm as a result of the Subpoena.

As discussed above, no harm results to the Company from being denied expedited discovery from Kobre & Kim because the Company already possesses or controls all the records sought under the Subpoena. If instead the supposed harm is that *counsel* (Morrison Tenenbaum) lacks access to these records, that just underscores that it is not the Company that wants these records, but rather LeBeau and Jackson (who are adverse to the Company in other litigation).

Consequently, the only harm in this scenario is to Kobre & Kim and the Company because through the Subpoena, LeBeau and Jackson seek discovery against an adversary including work product and documents subject to attorney-client privilege.[10]   For example, the Subpoena expressly defines "Kobre & Kim" in terms of its work as counsel for SingularDTV in the LeBeau Action.  (Klazen Decl. ¶ 11, Ex. 2 at 9.)  Thus, it would appear that the Instructing Party seeks to abuse the expedited discovery allowed in this action to gain (privileged) information about the Company's claims against LeBeau in another litigation.  When one party abuses discovery requests to force an opposing party to disclose documents prejudicial to other active litigation between them, the party forced to disclose is indisputably suffering great harm.

The Instructing Party therefore fails to meet any of the four factors set forth under *Notaro*.

## II.      THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEY IMPERMISSIBLY SEEK PRIVILEGED INFORMATION AND WORK PRODUCT

Rule 45(d)(3) of the Federal Rules of Civil Procedure provides that the Court "must modify or quash" a subpoena, upon a party's timely motion when the subpoena "requires disclosure of privileged or other protected" information.  Fed. R. Civ. P. 45(d)(3); *see Citizens Union of City of New York v. Attorney General of New York*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017).  Here, the Subpoena specifically targets privileged information and work product, and thus, the Subpoena (and the Third-Party Subpoenas) should be quashed in its entirety for this independent reason.

---

[10] By claiming to be acting on behalf of the Company, Morrison Tenenbaum undoubtedly will argue that Kobre & Kim cannot withhold documents on the basis of attorney-client privilege or attorney work production.  For the reasons discussed in this Motion, the Company does not recognize Morrison Tenenbaum's purported representation of it.  Moreover, their clients LeBeau and Jackson are adverse to the Company.

### A.  The Third-Party Subpoenas Attempt to Pierce the Privilege of Adverse Parties in Related Litigation

In addition to the potential for abuse of expedited discovery discussed above, there would be "perverse implications" for allowing the Instructing Party to access privileged documents when in an adversarial relationship to the potential disclosing party. *Fitzpatrick v. American Int'l Grp., Inc.*, 272 F.R.D. 100, 108 (S.D.N.Y. 2010).  In *Fitzpatrick*, an ex-director of a company sought access to privileged corporate documents.  The *Fitzpatrick* court denied plaintiff's attempt to pierce attorney-client privilege of an adversary based on the plaintiff's former role as director of the adverse company.  Here, too, LeBeau is a *former* director of SingularDTV (Dkt. 15 at 4) seeking privileged documents from the Company to which he is adverse in other proceedings, or at minimum, as suggested in the Instructing Party's letters to the Court, an "opposing faction" of that company.  (Dkt. 42 at 2.)  Similarly, Jackson has no present role or position at SingularDTV and lacks the authority to act on behalf of the Company (Dkt. 14 at 3, Dkt. 15 at 3.)  Although the pair purport to pursue this action (and the Third-Party Subpoenas) on behalf of the Company, they have no such authority and so the reasoning behind *Fitzpatrick* holds: a former director and officer retain no control over the corporation's privilege.  *Fitzpatrick¸* 272 F.R.D. at 108.  To allow such protections to be pierced "would have seemingly perverse implications where, as here, the former director assumes an adversarial relationship with the corporation." *Id.*

It would twist the purpose of expedited discovery to require production of one opposing faction's privileged documents to the other through this end-run technique the Instructing Party is attempting in this John Doe Action.  To do so would invite tactical abuse of the John Doe discovery process to overcome the fundamental protections of attorney-client privilege in this and other matters.

15

**B.    The Third-Party Subpoenas Impermissibly Seek Work Product, for Which the Instructing Party Cannot Demonstrate a Substantial Need**

Similar protections are afforded to work product.  *In re Grand Jury Subpoena Dated Oct. 22, 2001,* 282 F.3d 156, 161 (2d Cir. 2002); *JDS Therapeutics, LCC v. CVS Pharmacy*, No. 15-CV-4365 JSR , 2015 WL 6459092 at *1 (S.D.N.Y. Oct. 22, 2015).  "The work product privilege establishes a zone of privacy for an attorney's preparation to represent a client in anticipation of litigation."  *In re Grand Jury Subpoena,* 282 F.3d at 160 (citations omitted).  Work product can encompass facts as well as an attorney's opinions and strategies, and "applies to preparation not only by lawyers but also by other types of party representatives including, for example, investigators seeking factual information." *Id.* at 161*; JDS Therapeutics, LCC*, 2015 WL 6459092, at *1.

Moreover, when the Instructing Party can perform its own analysis, such as by engaging an expert to perform its tracing analysis, there is no substantial need to pierce work product protections.  *Id.* at *1-2 ("The appropriate form of relief is certainly not the evisceration of [party's] work-product privilege" where opposing party was "perfectly capable of testing its own products."); *see also Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 12 (2d Cir. 1989) (declining to pierce work product protection over notes when "satisfactory alternative" was available).  Not only can the Instructing Party explore the matter itself and pursue alternative sources of information, as described above, they concede that "the only means [it] has for discovering the identity of the [John Doe] Defendant" is its subpoena to Binance.  (Dkt. 45 at 10.)  In a recent status update to the Court, the Instructing Party says it has withdrawn that subpoena, saying it expects Binance will be a "valuable partner" to "root out the perpetrator."  (Dkt. 55 at 2.)  That being the case, there is no substantial need for documents from the Third-Party Subpoena targets.

The Instructing Party's letters seeking permission to issue the Third-Party Subpoenas, as well as the language of those subpoenas themselves, make clear that the requested documents are categorically about the Company's review and analysis of the alleged hack through Kobre & Kim and AlixPartners, which occurred after the John Doe Action was filed.  (Dkt. 42 and Klazen Decl. ¶ 5.)  But the Instructing Party has not explained why it can justifiably demand production of such work product created in anticipation of litigation, particularly where issues about the hack turned into claims in the LeBeau Action (some of which were later resolved as a practical matter) and remain at issue in the New York State Action.  (Dkt. 14.3 at 19-20.)

As with privileged communications, it would be just as perverse and harmful to SingularDTV for the Court to require the Third-Party Subpoena recipients to produce work product to the Instructing Party represented by counsel who is adverse to the Company and its directors in other litigation.

### C.    Kobre & Kim, AlixPartners and ConsenSys are Engaged in a Common Legal Enterprise on Behalf of SingularDTV

These protections also extend to any common interest communications Kobre & Kim, AlixPartners and/or Allenspach had with others on "their side" of the opposing factions (items (a) through (f) in the Subpoena) (Klazen Decl. ¶ 11, Ex. 2 at 11) because such communications arose during an ongoing common legal enterprise and are intended to further that enterprise.  *Schaeffler v. U.S.*, 806 F.3d 34, 40 (2d Cir. 2015); *Sokol v. Wyeth*, No. 07 CIV. 8442 SHS KNF, 2008 WL 3166662 at *10 (S.D.N.Y. Aug. 4, 2008) (applying common interest protections to work product). Specifically, SingularDTV, acting through its representative Allenspach and directors Levy-Cohen and Joseph Lubin, engaged Kobre & Kim, and by extension, Alix Partners, to analyze certain transaction information related to the Company and associated entities.  (Dkt. 14 at 1, Dkt. 14.2.)

That analysis informed the LeBeau Action, as evidenced by the allegations and claims of the initial Complaint in that matter.  (LeBeau Action, Dkt. 1.)

So Kobre & Kim's communications with its client, SingularDTV, regarding its analysis of relevant transactions are protected both by attorney-client privilege and the work product doctrine. As companies must act through appropriate officers and directors, so too, then, would Kobre & Kim's communications about it with individuals Allenspach, Lubin and/or Levy-Cohen, if any, also be protected.

Moreover, SingularDTV, Kobre & Kim and AlixPartners share a common legal interest in relation to the alleged hacking incident with Lubin, Levy-Cohen and two ConsenSys entities, whom LeBeau sued in the New York State Action.  (Dkt. 14.3.)  As the New York State Action makes allegations about the hacking incident (Dkt. 14.3 at 19-20), Lubin, Levy-Cohen and ConsenSys share a common legal interest in the defense of that matter.  Moreover, that common legal interest is shared across litigations to SingularDTV—which made allegations about the same hacking incident in the LeBeau Action—and its advisors engaged for those proceedings, Kobre & Kim and AlixPartners.

Thus, there is a clear alignment of legal interest among the persons and entities listed as items (a) through (f) in the Subpoena to jointly and cooperatively assess any harm to the Company, explore and pursue claims against LeBeau in the LeBeau Action, and litigate other issues in the New York State Action (and in various Swiss proceedings) (Dkt. 15 at 4-5) under a consistent and common legal strategy.   In these circumstances, common interest pervades the privileged communications and work product of these persons and entities sharing these common legal interests, and communications and work product shared amongst them do not waive privilege or work product protections.  *Schaeffler*, 806 F.3d 34, 40 (2d Cir. 2015).

**D.     Privilege and Work Product Protections are Not Lost When a Case or Claim Ends**

The Instructing Party seems to take the bizarre view, without citation to authority, that privilege and work product protections can be lost when that advice and analysis are "no longer useful to [the adverse party] in the factional battlefront…." (Dkt. 42 p. 3.)  This is wrong both as a matter of law, and as a matter of factual reality in this case.

As a matter of law, privilege is not waived simply because a case ends, or a claim in a case is withdrawn.[11]  *See Swindler & Berlin v U.S.*, 524 U.S. 399, 406 (1998) ("the general rule is that the attorney-client privilege continues after death") (citing 8 Wigmore, Evidence § 2323 (McNaughton rev. 1961); *Radovic v. City of New York*, 168 Misc. 2d 58, 60 (Sup. Ct. N.Y. 1996) (holding that "[o]nce the attorney-client privilege attaches, it 'shall remain forever inviolable,'" and that privilege "forever protects the client").  If that were not the case, then it would undercut the very purpose of the privilege by intruding upon the "full and frank communication between attorneys and their clients" which in turn "promote[s] the broader public interests in the observance of law and the administration of justice."  *Swindler & Berlin v. U.S.*, 524 U.S. 399, 403 (1998) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)) (quotation marks omitted).

In any event, in this matter, there is ongoing litigation in the LeBeau Action, the New York State Action and in Switzerland.  The privileged communications and work product targeted in the Third-Party Subpoenas could potentially be used against the Company in those others matters, and

---

[11] SingularDTV no longer asserted claims for replevin, trespass to chattels, constructive trust, restitution, and conversion in its Amended Complaint in the LeBeau Action (though it continues to assert other claims) because they were largely mooted by LeBeau's return of certain—but not all—requested assets in or around February 2022.  (Klazen Decl. ¶ 9.)  The fact that prior to that return, SingularDTV had claims against LeBeau based on its analysis of key Company transactions underscores that any documents or communications subject to the attorney-client privilege or that constitute work product regarding that analysis should be protected pursuant to those privileges.

as such, to disclose them in this unfair way would give the opposing party tremendous litigation advantage through a window into their adversaries' minds and strategies.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Kobre & Kim respectfully requests that the Court grant its Motion to Quash.


Dated: Paris, France
      June 15, 2022

           Respectfully submitted,

           /s/ Josef M. Klazen
           Josef M. Klazen
           Benjamin J. Sauter
           Calvin K. Koo
           Victor S. Leung
           KOBRE & KIM LLP
           800 Third Avenue
           New York, NY 10022
           Telephone: (212) 488-1200
           Facsimile: (212) 488-1220