**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SINGULARDTV, GMBH,

Plaintiff,

v.

JOHN DOE,

Defendant.

Case No. 1:21-cv-06000 (VEC)

## MEMORANDUM OF LAW IN OPPOSITION OF THIRD PARTY KOBRE & KIM'S MOTION TO QUASH RULE 45 SUBPOENA

**Morrison Tenenbaum PLLC**

Jerald M. Tenenbaum, Esq.
87 Walker Street, Floor 2
New York, NY 10013
Tel: (212) 620-0938
Fax: (646) 390-5095
*Attorney for Plaintiff*

i

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

FACTUAL BACKGROUND..................................................................................4

ARGUMENT ........................................................................................................5

I.    Expedited Discovery Is Justified Under All Applicable Legal Standards..................7

    A.  Plaintiff Has Justified Expedited Discovery Under the Flexible Standard of Reasonableness and Good Cause ..........................................................9

II.   The Demand on Kobre & Kim Does Not Seek Information That Would Be Actionable in Other Matters Pending Between Plaintiff's Founders ........................13

III.  Plaintiff Has Overcome the Claim of Privilege ...........................................15

    A.  Plaintiff Has a Substantial Need for The Documents claimed as Work-Product ............16

    B.  Obtaining the Substantial Equivalent of the Requested Information by Other Means Would Cause Undue Hardship.................................................18

IV.   Movant Should Be Compelled to Produce a Privilege Log .........................................19

V.    The Parties Can Enter into a Confidentiality Agreement to Prevent the Misuse of Allegedly Privileged Document .........................................................21

VI.   Movant Should Be Compelled to Produce All Requested Documents and Information.................................................................................21

CONCLUSION ..............................................................................................22

## **TABLE OF AUTHORITIES**

Page(s)

Cases

*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*,
   2000 WL 1538003 (S.D.N.Y. Oct. 17, 2000)........................................................ 23

*AdMarketplace, Inc. v. Tee Support, Inc.*,
   2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013) ..................................................... 14

*Arista Records LLC v. Doe*,
   604 F.3d 110 (2d Cir. 2010) ............................................................................... 14

*Ayyash v. Bank Al-Madina*,
   233 F.R.D. 325 (S.D.N.Y. 2005)................................................................... 11, 12

*Chevron Corp. v. Donziger*,
   2013 WL 1087236, 28 (S.D.N.Y. Mar. 15, 2013) ......................................... 20, 21

*Citizens Union of City of N.Y. v. Attorney General of N.Y.*,
   269 F. Supp. 3d 124 (S.D.N.Y. 2017) ................................................................ 25

*Cornelius v. Consol. Rail Corp.*,
   169 F.R.D. 250 (N.D.N.Y. 1996) .................................................................. 20, 22

*Digital Sin, Inc. v. Does 1–176*,
   279 F.R.D. 239 (S.D.N.Y. 2012).................................................................. 11, 12

*Fitzpatrick v. American Int'l Grp., Inc.*,
   272 F.R.D. 100 (S.D.N.Y. 2010) ....................................................................... 17

*Grand River Enters. v. King*,
   2009 WL 63461 (S.D.N.Y. Jan.12, 2009) ......................................................... 23

*Gucci Am., Inc. v. Guess?, Inc.*,
   271 F.R.D. 58 (S.D.N.Y. 2010) .................................................................... 21, 22

*In re Grand Jury Subpoena Dated Oct. 22, 2001*,
   282 F.3d 156 (2d Cir.2002) ................................................................................ 20

*In re Namenda Direct Purchaser Antitrust Litig.*,
   2017 WL 3822883 (S.D.N.Y. Aug. 30, 2017)..................................................... 25

*Kingsway Fin. Services, Inc. v. Pricewaterhouse-Coopers LLP*,
   2006 WL 1295409 (S.D.N.Y. May 10, 2006) ..................................................... 23

*Litwin v. OceanFreight, Inc.*,
   865 F. Supp. 2d 385 (S.D.N.Y. 2011) ............................................................... 14

*Loeb*,
   2019 WL 2428704 .............................................................................................. 25

*Lorber v. Winston*,
   2012 WL 5989464 (E.D.N.Y. Nov. 29, 2012) .................................................... 10

*Malibu Media, LLC v. Doe*,
   2016 WL 4574677 (E.D.N.Y. Sept. 1, 2016) ..................................................... 15

*Mirza v. Doe*,
   2021 WL 4596597 (S.D.N.Y. Oct. 6, 2021)....................................................... 12

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
   2013 WL 238176 (S.D.N.Y. Jan. 18, 2013) ...................................................... 23

*Natl. Cong. for Puerto Rican Rights v. City of New York*,
   194 F.R.D. 105 (S.D.N.Y. 2000)........................................................... 20, 21, 22

*New York v. Mt. Tobacco Co.*,
  953 F. Supp. 2d 385 (E.D.N.Y. 2013) ............................................................ 14
*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y. 1982) ............................................................... 10, 11
*Pine Top Ins. Co., Ltd., v. Alexander & Alexander Services, Inc.*,
  1991 WL 221061 (S.D.N.Y. Oct. 7, 1991) ......................................................... 22
*Sheikhan v. Lenox Hill Hosp.*,
  1999 WL 386714 (S.D.N.Y. June 11, 1999) ...................................................... 23
*Sony Music Ent. Inc. v. Does 1-40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004) ............................................................ 16
*Stand. Inv. Chartered, Inc. v. Natl. Ass'n of Securities Dealers, Inc.*,
  2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007) ..................................................... 11
*Stern v. Cosby*,
  246 F.R.D. 453 (S.D.N.Y. 2007) .......................................................... 11, 12, 13
Strike 3 Holdings, LLC v. Doe,
  964 F.3d 1203 (D.C. Cir. 2020) ................................................................. 14
*Strike 3 Holdings, LLC v. Doe*,
  2019 WL 5459693 ............................................................................... 15
*United States v. Adlman*,
  134 F.3d 1194 (2d Cir.1998) .................................................................... 20
*United States v. Constr. Prods. Research*,
  73 F.3d 464 (2d Cir.1996) ...................................................................... 23
*Weiss v. Nat'l Westminster Bank*, PLC,
  242 F.R.D. 33 (E.D.N.Y.2007) .................................................................. 22

Rules

Fed. R. Civ. P. 26(d)(1) .................................................................. 11, 12, 14
Fed. R. Civ. P. 26(d)(l) ........................................................................ 11
Fed. R. Civ. P 26(b)(5) .......................................................................... 23
Fed.R.Civ.P. 26(b)(3) ............................................................................ 20
Fed R. Civ. P. 26(b)(5)(A) ....................................................................... 23
Federal Rule of Civil Procedure 26 ............................................................... 25
Federal Rule of Civil Procedure 26(b)(1) ......................................................... 25
Rule 26(a)(1)(B) ................................................................................. 12
Rule 26(d) .................................................................................. 12, 13
Rule 26(f) .................................................................................. 11, 12

Other Authorities

8A Charles Alan Wright & Arthur R. Miller, *FEDERAL PRACTICE AND PROCEDURE* §
  2046.1 (3d ed. 2011) ....................................................................... 12, 13
*In re Novartis & Par Antitrust Litig.*,
  2020 US Dist. LEXIS 106863, at *11-12 (SDNY June 18, 2020) ..................................... 25

Morrison Tenenbaum PLLC ("Morrison Tenenbaum"), counsel to SingularDTV GmbH ("SingularDTV" or the "Plaintiff"), respectfully submits this memorandum of law in opposition to the Motion to Quash Rule 45 Subpoena (the "Motion") filed by Kobre & Kim LLP ("Movant") on June 15, 2022, pro se, (this "Opposition"). The Opposition is supported by the Declaration of Jerald Tenenbaum ("Tenenbaum Decl."), filed concurrently herewith.

## PRELIMINARY STATEMENT

Plaintiff commenced this action against Defendant John Doe who is alleged to have unlawfully hacked a computer system on Plaintiff's network in order to fraudulently obtain SNGLS cryptocurrency tokens (the "Tokens"). (ECF No. 1).[1] Despite having conducted its own investigation on behalf of Plaintiff and for Plaintiff's sole benefit, Movant now contends that it should not be obligated to share the fruits of its investigation with Plaintiff. When viewed in light of the facts of this case, it is clear that the information Morrison Tenenbaum seeks to obtain through its May 16, 2022, subpoena on Movant (the "Subpoena") is narrowly tailored, relevant to the case at bar and necessary for identifying the John Doe defendant.

Movant asserts that Morrison Tenenbaum is not counsel for Plaintiff, an argument that it urged upon this Court in its *Motion to Intervene or, in the Alternative, Substitute Counsel*, filed on November 29, 2021 (Dkt. 11.) (the "Motion to Intervene"). Movant abandoned that effort in March of 2022 when it withdrew the Motion to Intervene to avoid discovery and a hearing, claiming that it would be too costly for its client. When Movant withdrew its Motion to Intervene, it did so with full knowledge that such action left the prosecution of this matter on behalf of Plaintiff squarely in the hands of Morrison Tenenbaum.[2] By obstructing Plaintiff's

---

[1] Plaintiff commenced this action with the filing of its Complaint on July 13, 2021. (ECF No. 1).
[2] SingularDTV withdrew its motion to intervene on March 17, 2022. (Dkts. 35, 36, 38, 39.) It is acknowledged that, in its letter to the Court withdrawing the Motion to Intervene, Movant reiterated that the withdrawal was not an admission of consent to Morrison-Tenenbaum PLLC's representation of SingularDTV GmbH. However, that

discovery efforts both behind the scenes in coordination with SingularDTV personnel in Switzerland and AlixPartners in the United States, and by overtly refusing to turn over information gathered in its hack investigation, Movant asks this Court to grant Movant the relief it sought in its withdrawn Motion to Intervene without discovery or a hearing.[3]

Movant also argues that the documents Morrison Tenenbaum seeks in its Subpoena are privileged and covered under the work-product doctrine. (Dkt. 60 at 6.) However, Movant fails to provide any specific basis for asserting privilege with respect to the limited production sought by SingularDTV in the Subpoena.

Lastly, Movant contends that Morrison Tenenbaum is already in possession of the documents it would be able to provide, and that Morrison Tenenbaum should conduct its own costly investigation.

To be clear, Morrison Tenenbaum is not in possession of the information. The information sought may be in the possession of SingularDTV personnel who have either not yet been issued subpoenas (in the case of Ari Levy Cohen and Joseph Lubin) or who have likewise refused to comply with our Subpoena on the advice of Movant (i.e. Patrik Allenspach). Obtaining documents and information from these parties would certainly be more invasive and burdensome than obtaining the same documents and information from the Movant, who recently compiled all relevant documents, hired a specialist (AlixPartners), and reached conclusions following a thorough investigation.

---

'reservation of rights' has no binding legal effect on the current status of Morrison Tenenbaum's representation of SingularDTV in this matter. (Dkt. 35.)

[3] Kobre & Kim claims that their forensic analysis did not identify the John Doe. Other than that single conclusion, Kobre & Kim has not provided any other information regarding its investigation into the hacking incident or the movement of Tokens following the hacking incident. (Dkt. 60 at 2.)

Morrison Tenenbaum has demonstrated a substantial need for the requested information and documents; to develop its substantial equivalent would be not only a flagrant waste of resources, but it would also be an undue hardship on the Plaintiff. Movant's self-serving conclusion that the results of its investigation will not further our investigation cannot be relied upon for purposes of the Court's analysis.

For these reasons and those set forth below, Morrison Tenenbaum respectfully requests that the Court dismiss the Motion to Quash and compel Movant to produce the documents and information demanded in the Subpoena.

## **FACTUAL BACKGROUND**

The long and tortured history of this case is more fully laid out in the companion state action, *LeBeau derivatively on behalf of SingularDTV v. Lubin et ano*, Index No. 655673/2021, and in the companion federal action, *SingularDTV GmbH*, Case No. 1:21-cv-10130, presently before your Honor[4] We will limit the statement of facts and procedural history to date to the facts and circumstances relevant to the motion presently before the Court.

The company presently known as SINGULARDTV was initially formed in or around October 2014 as Evotion Media LLC by Zachary LeBeau ("LeBeau") and his wife, Kimberly Jackson. The business was first conceptualized by its founders as a blockchain platform for content creators to track and monetize their intellectual property rights and to fund and create television and film assets related to blockchain and cryptocurrency.[5]

In or around October 2016, SingularDTV GmbH (Switzerland), Plaintiff in this matter, was formed by Zachary LeBeau and Kim Jackson together with Joe Lubin ("Lubin") and Arie

---

[4] *See* Dkt. 21 Exhibits '3' and '4' (copies of Complaints in companion actions).
[5] Declaration of Kimberly Jackson Dkt. 21, p. 2 paragraph 4.

Levy Cohen ("Cohen"). Lubin and Cohen were invited to participate and given shares in the business in exchange for their services as CFO and CTO.[6]

The purpose of the Company was to raise capital through an initial coin offering (ICO) in Switzerland. In the ensuing years, the cryptocurrency raised by SingularDTV appreciated dramatically.[7]

From the inception of the Company Zachary LeBeau served as its Chief Executive Officer (CEO) while Jackson served as Chief Operating Officer (COO) handling human resources, finance and operations functions for Plaintiff. Jackson also attended each and every Board Meeting of Plaintiff, where her voice was coequal with the other founders.[8]

Zachary LeBeau was purportedly terminated as the CEO and removed from the Board by Lubin and Cohen. Likewise, Jackson was later terminated and stripped of her stake in the business. The efforts of Lubin and Cohen to seize control over the SingularDTV business and its assets purportedly stemmed from the hacking incident that is the subject of the suit against John Doe presently before this Court.[9]

On July 13, 2021, Singular DTV filed a complaint against John Doe in connection with the hacking incident for violations of the computer fraud and abuse act (18 U.S.C. § 1030); violation of racketeer influenced, and corrupt organizations act ("RICO") (18 U.S.C. § 1962(a)); conversion; fraud in the inducement; unjust enrichment.[10]

On November 21, 2021, Movant filed a Motion to Intervene,[11] and on March 17, 2021, withdrew the motion following the Court's order for an evidentiary hearing.[12] By withdrawing

---

[6] Id.
[7] *See* Dkt. 21, p. 2 paragraph 5.
[8] Id., p 2 paragraph 6.
[9] *See* Dkt. 21, Exhibit '1' Complaint in John Doe Action.
[10] Dkt. 1
[11] Dkt. 11.
[12] Dkt. 35.

its Motion to Intervene, Movant tacitly acknowledged (despite its protestations) that Morrison Tenenbaum represents the Plaintiff for purposes of this action.

On May 14, 2022, following leave from this Court,[13] Morrison Tenenbaum served its first subpoena on Movant.[14] The Subpoena sought fourteen items, each specifically related to the May 2021, hacking incident and the transfer of SingularDTV assets to a yet unknown third-party.[15]

On May 31, 2022, Movant submitted Responses and Objections to the Subpoena and filed the Motion to Quash on June 15, 2022. As of the date of this Opposition, Movant has refused to turn over any of the documents or information requested in the Subpoena.

## **ARGUMENT**

It appears that Movant is in the irreconcilable position of simultaneously abdicating control over this litigation to Morrison Tenenbaum (having abandoned its Motion to Intervene) and claiming that Morrison Tenenbaum, as interloper, is not entitled to the fruits of Kobre & Kim's investigation on behalf of our mutual client.[16] This position ignores that the abandonment of the Motion to Intervene, despite Movant's reservation of rights, left Morrison Tenenbaum as legal counsel for Plaintiff, SingularDTV, at least for purposes of this case. Kobre & Kim has made its opinion on this matter clear, but they have provided no legal basis for refusing to share

---

[13] Dkt. 48 ("ORDER: IT IS HEREBY ORDERED that Plaintiff may immediately serve Rule 45 subpoenas on Kevin Madura, Patrik Allenspach, and Kobre & Kim for the documents described in its letter request.")
[14] *See* Kobre & Kim Subpoena, Tenenbaum Decl. Exhibit '1'.
[15] Id.
[16] It is ironic (if not hypocritical) that Movant is continuing to aggressively pursue advance discovery against Mr. LeBeau in related matter *SingularDTV GmbH v. LeBeau, et al.*, No. 1:21-cv-10130; yet in this matter, where there appears to be an alignment of interests, they refuse to provide a shred of relevant material unless compelled to do so through costly and time-consuming motion practice.

the information gathered and evaluated, and the documents it produced, for and on behalf of our

client, SingularDTV.[17]

Movant's argument that Plaintiff is already in possession of the requested documents

(Dkt. 60 at 2) is disingenuous. As counsel for SingularDTV in the related matter before this

Court, Movant is coordinating the efforts of AlixPartners (the vendor who conducted the

technical investigation into the hacking incident and transfer of misappropriated funds) and

SingularDTV personnel to obstruct Plaintiff from receiving the documents and information that

Movant claims are already in our possession.[18] Further, by abandoning its Motion to Intervene,

Movant has ceded all authority to serve as counsel for Plaintiff and must thusly turn over any

information in its possession and control that relates to the investigation of this matter.[19]

The Subpoena served on Movant is proper, justified, and supported by the necessity of

identifying the John Doe Defendant. First, expedited discovery is justified according to the

standards prevailing in this district. Movant's reliance on the widely rejected standard set forth in

*Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) is misplaced. However, even under this

rejected standard, Plaintiff has sufficiently demonstrated the need for expedited discovery in this

case. Movant's claims of privilege can be overcome through a showing of *substantial need* for

the requested information; for the Plaintiff to obtain or recreate the same investigation already

commissioned by SingularDTV would be an undue hardship for Plaintiff in terms of time,

money and the replication of efforts. Movant has also raised its privilege objections without

---

[17] There has been no determination by this Court that SingularDTV's interest is not well represented by Morrison Tenenbaum. Movant's arguments in opposition to the representation of SingularDTV by Morrison Tenenbaum must be disregarded in their entirety, as they are not the subject of any motion or action presently before this court.
[18] Both AlixPartners and Mr. Allenspach have opposed our subpoenas and have refused to provide documents in their possession and control. Tenenbaum Decl. p. 10-11.
[19] *See Lorber v. Winston,* 2012 WL 5989464 (E.D.N.Y. Nov. 29, 2012) (finding that denying the successor counsel access to the specified materials at issue would greatly harm plaintiff's success, effectively causing the plaintiff to start over).

having produced a privilege log specifically detailing and indexing the documents and information in its possession and explicitly stating why privilege should be attached.[20] Even if the claims of privilege cannot be overcome, there are protections that can put in place, such as a confidentiality agreement or a protective order that will protect sensitive information from misuse in another proceeding as well as the inadvertent waiver of privilege.

## I.     EXPEDITED DISCOVERY IS JUSTIFIED UNDER ALL APPLICABLE LEGAL STANDARDS

Generally, parties may not seek discovery until the parties have conferred as required by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(d)(1). However, there is a carveout in the Rule that empowers courts to permit limited, expedited discovery before a Rule 26(f) conference.[21] Here, Plaintiff seeks only information related to the underlying hacking incident in order to ultimately identify the Defendant and the location of assets that were fraudulently misappropriated by the yet unknown 'John Doe' Defendant. The only mechanism for gathering information at this stage of the litigation is through third-party subpoenas. When determining if expedited discovery is justified, Courts in this Circuit primarily rely on the *flexible* standard of *reasonableness and good cause*. *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 26 (S.D.N.Y. 2005) (finding this standard is proper when analyzing requests for expedited discovery); *See generally Digital Sin, Inc. v. Does 1–176,* 279 F.R.D. 239, 241 (S.D.N.Y. 2012); *Stern v. Cosby,* 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (aligning with the *Ayyash* court's determination to rely on the flexible standard of reasonableness and good cause for requests of expedited discovery).

---

[20] *See* May 14, 2022 Subpoena at 9 paragraph 7 ("If you withhold or redact any Document responsive to this Subpoena on ground of privilege or other legal doctrine, you shall submit with the Documents produced a statement in writing under oath stating: (a) the document control number(s) of the Document withheld or redacted; (b) the type of Document; (c) the date of the Document; (d) the author(s) and recipients of the Document; (e) the general subject matter of the Document; and (f) the legal ground for withholding or redacting the Document"). Tenenbaum Decl. Exhibit '1'.

[21] Fed. R. Civ. P. 26(d)(l) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized ... by court order.").

There is a second standard, the test relied on by Movant, which is a factor test laid out under *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). Courts in this Circuit have continually rejected the *Notaro* test in favor of the *flexible* good cause and reasonableness standard. *See e.g., Stand. Inv. Chartered, Inc. v. Natl. Ass'n of Securities Dealers, Inc.*, 07 CIV. 2014 (SWK), 2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005)[22]; *Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). Most recently, in October of 2021 the Southern District Court of New York again applied the flexible standard of good cause and reasonableness, holding that Courts should continue to use this standard., *Mirza v. Doe #1*, 20CIV9877PGGSLC, 2021 WL 4596597 (S.D.N.Y. Oct. 6, 2021) at 5. According to the *Mizra* Court:

> "Although generally under Rule 26(d)(1), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," an exception may be made for "a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Pursuant to that exception, "[c]ourts in this district have applied a 'flexible standard of reasonableness and good cause' in determining whether to grant a party's expedited discovery request." *Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (citing *Ayyash v. Bank Al–Madina*, 233 F.R.D. 325, 326–27 (S.D.N.Y. 2005); Stern v. Cosby, 246 F.R.D. 453, 457 (S.D.N.Y. 2007); see 8A Charles Alan Wright & Arthur R. Miller, *FEDERAL PRACTICE AND PROCEDURE* § 2046.1 (3d ed. 2011) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.")."

---

[22] Movant cites to *Notaro*, but specifically leave out *Ayyash v Bank Al-Madina* to obscure the fact that the *Notaro* test has been summarily rejected. A cursory analysis of the *Notaro* holding turns up dozens of cases that reject this test in favor of the flexible standard of reasonableness and good cause. *See e.g.*, *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y.2005*); Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007); *Stand. Inv. Chartered, Inc. v. Natl. Ass'n of Securities Dealers, Inc*., 07 CIV. 2014 (SWK), 2007 WL 1121734 (S.D.N.Y. Apr. 11, 2007).

As an initial matter, the *Notaro* test, while well-suited to the circumstances of that case and sometimes used in this District in situations similar to *Notaro*, it is not the controlling authority in this case. *See Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326-27 (S.D.N.Y.2005) (rejecting the Notaro test in favor of "a more flexible 'good cause' test"). The *Ayyash* Court went on to hold that "it seems that the intention of the rule-maker was to confide the matter to the Court's discretion, rather than to impose a specific and rather stringent test." *Id.* at 326. It is clear that this Circuit will continue to use the flexible standard of reasonableness and good cause.

Additionally, Movant erroneously compares a request for expedited discovery to the far more stringent standard for preliminary injunctive relief.[23] That position was specifically rejected in *Ayyash*, where Judge Lynch wrote, "employing a preliminary-injunction type analysis to determine entitlement to expedited discovery makes little sense." *Id.* The prevailing flexible standard is controlling and clearly favors disclosure.

### A. Plaintiff Has Justified Expedited Discovery Under the Flexible Standard of Reasonableness and Good Cause

Plaintiff has made a *prima facie* case for expedited discovery:  the John Doe defendant intentionally and knowingly engaged in tortious conduct designed to fraudulently induce Plaintiff to obtain assets that they were not entitled to receive; Plaintiff is unable to identify Defendant without court ordered subpoenas; and Defendant's unlawful conduct gives rise to several federal statutory and common law causes of action which Plaintiff concretely alleges in its Complaint with sufficient detail to satisfy the flexible standard of reasonableness and good cause.

---

[23] "This is a tacit recognition that, at least in certain circumstances, allowing expedited discovery is akin to preliminary injunctive relief" (Dkt. 60 at 7).

In *Stern v. Cosby*, Judge Chin held that this District's flexible standard of reasonableness and good cause allows for expedited discovery under what "is reasonable in light of all the circumstances." 246 F.R.D. 453, 457 (S.D.N.Y. 2007); *see also* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2046.1 (3d ed. 2011) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard"). It is well established that this standard should be *flexibly* applied. While Movant refers to the prevailing standard, by obscuring that the test is to be flexibly applied, they intentionally understate the discretion courts are permitted to exercise when determining whether expedited discovery should be allowed.

The instant action poses a compelling case for expedited discovery. The Second Circuit has routinely found that in John Doe proceedings such as this one, "identification of the alleged infringers [is] indispensable for the vindication of plaintiff's [claims]" and that the information sought through expedited means is not available "through alternative means." *Arista Records LLC v. Doe*, 604 F.3d 110,115 (2d Cir. 2010);[24] *see also AdMarketplace, Inc. v. Tee Support, Inc.*, No. 13-cv-5635 (LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) ("Courts in this district have found 'good cause' for expedited discovery to determine the identity of John Doe defendants where the plaintiff has stated a prima facie case and is unable to identify the defendants without a court-ordered subpoena").

---

[24] *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C. Cir. 2020) ("In cases involving as-yet-known defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, 'the only potential avenue for discovery is a [court order under] Rule 26(d)(1).") (citation omitted)

Movant's Motion to Quash also relies heavily on *Litwin v. OceanFreight, Inc*., 865 F. Supp. 2d 385, 402 (S.D.N.Y. 2011) and its progeny. (Dkt 60 at 8), which limits overly broad discovery requests. By way of example, Movant takes up the unsuccessful arguments asserted by King Mountain in *New York v. Mt. Tobacco Co.*, 953 F. Supp. 2d 385 (E.D.N.Y. 2013). In that case, the defendant, King Mountain, also argued (unsuccessfully relying on *Litwin*) against expedited discovery on the grounds that the discovery request received was overly broad, ignoring that the request was narrowly tailored to specific acts that took place within specific dates. The court in *New York v. Mt. Tobacco Co.* allowed expedited discovery, finding that King Mountain's reliance on Litwin was misplaced. Id. at 393.

Like King Mountain, Movant claims that the sheer volume and breadth of the discovery request renders the entire demand unreasonable. (Dkt 60 at 8). However, in *New York v. Mt. Tobacco Co.* the court found that since the discovery request went directly to the issue of the case, volume and breadth did not preclude expedited discovery. In this action, the request for expedited discovery specifically relates to the hacking incident: it is limited to gathering information that may be useful to identify the John Doe and locate the wrongfully misappropriated assets. The Subpoena demands, here, are not at all broad. Rather, they are specific and narrowly tailored, and they stay within the guidelines established by this Court in its May 9, 2022, Oder. (Dkt. 48).

The Subpoena itself is quite clear in this respect. The information demanded by Plaintiff in its third-party subpoenas is carefully limited to information that pertains to the "alleged hack" and the "cyber incident".[25] None of the information requested has any relevance to any other

---

[25] The Subpoena specifically defined the terms "Alleged Hack" and "Cyber Incident.": ""ALLEGED HACK" means the CYBER INCIDENT that is the subject of the action captioned *SingularDTV v. John Doe*, Case No. 1:21-cv-6000-VEC, filed in the Southern District Court of New York on July 13, 2021."; ""CYBER INCIDENT" means the ALLEGED HACK and any other event occurring on or conducted through a computer network that actually or

proceedings between the parties before this court or in other forums. Plaintiff's demands cannot possibly be construed as a fishing expedition; rather they are narrowly tailored to gather only information that is (i) "highly specific," *Malibu Media*, No. CV 14- 4808 (JS) (SIL), 2016 WL 4574677 at *6, (ii) "only needed to advance Plaintiff to the service of process stage, and (iii) is sufficiently specific to accomplish that end." *Strike 3 Holdings, LLC v. Doe*, No. CV 19-5818 (AT) (JLC), 2019 WL 5459693 at *3 (citation omitted) (emphasis removed). In fact, by Movant's own admission, all of the information sought specifically relates to the hacking incident and nothing more.[26]

Plaintiff will not be able to successfully prosecute this case unless it is able to identify the perpetrator of the hacking incident; the third-party subpoena served on Kobre & Kim seeks the fruits of its investigations into the hacking incident and information in its possession that is likely to be useful for establishing leads and/or eliminating parties as suspects. In *Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004), the Southern District Court analyzed whether the information requested in that case was necessary to advance a Plaintiff's claim. In that case, the Court held that "[a]scertaining the identities and residences of the Doe Defendants is critical to plaintiffs' ability to pursue litigation, for without this information plaintiffs will be unable to serve process." *Sony Music Entm't Inc.*, 326 F. Supp. 2d, at 566. Accordingly, this factor weighs in favor of Plaintiff. The subpoena served on Kobre & Kim is not only critical to

---

imminently jeopardized the integrity, confidentiality, or availability of information or communications systems, or information resident thereon, utilized by PLAINTIFF. "CYBER INCIDENT" includes a vulnerability in information or communication systems, system security procedures, internal controls, or implementations that could be exploited by a threat source that affect or control infrastructure or communications networks utilized by PLAINTIFF.";
"PLAINTIFF" as used herein means and includes Plaintiff, SINGULARDTV GMBH, and its employees, independent contractors, agents, representatives, subsidiaries and affiliates and/or ANY PERSON on their behalf" May 14, 2022 Subpoena Appendix A at 3 ¶3, 4, 8. Tenenbaum Decl. p. 7.

[26] *See* Dkt 60 at 2, 4, 5, 17, 18. (Discussing the information requested relating directly to the hacking incident). "The Subpoena identifies categories of communications, documents, and related information about the "Cyber Incident" and "Alleged Hack" at 5; "the requested documents are categorically about the Company's review and analysis of the alleged hack" at 17.

furthering Plaintiff's case, but it is also necessary to uncover the full extent of the unlawful conduct.

This Court should allow Plaintiff to continue to pursue this matter with the benefit of the documents and information gathered by Kobre & Kim in its parallel investigation into the hacking incident. Plaintiff has satisfied the flexible standard of reasonableness and good cause, and therefore, the expedited discovery is justified.

## II.      THE DEMAND ON KOBRE & KIM DOES NOT SEEK INFORMATION THAT WOULD BE ACTIONABLE IN OTHER MATTERS PENDING BETWEEN PLAINTIFF'S FOUNDERS

The Subpoena does not seek information other than related to the hacking incident. (Dkt 60 at 15).[27] In the case *SingularDTV v. Zach LeBeau and Kimberly Jackson*, also before this Court (No. 1:21-cv-10130 (VEC)), the Plaintiff, also SingularDTV, represented by Kobre & Kim, initially suggested that Zach LeBeau was responsible for the hacking incident. In its amended complaint, filed on March 4, 2022, Kobre & Kim jettisoned that theory just as it abandoned its Motion to Intervene in this case. In both instances, Kobre & Kim argues that despite the withdrawal or abandonment of an action or motion, as the case may be, the underlying arguments should survive.

In fact, the First Amended Complaint in the related SDNY matter does not assert any causes of action related to the hacking incident against Zack LeBeau. Thus, that theory, asserted in its initial Compliant, is mooted in the Amended Complaint. Further, the derivative action does not seek recovery against the yet unnamed hacker who tricked SingularDTV's general counsel into authorizing a redemption payment to an unverified wallet address.

---

[27] Movants argue that the documents and information requested by Plaintiff could be used in the adversary proceedings among the founders, including in *Zach LeBeau, both individually and derivatively on behalf of SingularDTV GmbH v. Joseph Lubin, Arie Levy Cohen, Consensys AG, Consensys Inc., and SingualrDTV GmbH*, and *SingularDTV GmbH v. LeBeau, et al*. (Dkt. 14.3.)

Movant cites *Fitzpatrick v. American Int'l Grp., Inc.*, 272 F.R.D. 100, 108 (S.D.N.Y. 2010). In *Fitzpatrick*, the former president of real estate investment corporation, who had also served on corporation's board of directors, filed suit against its corporate parent and moved to compel production of corporate documents allegedly protected by attorney-client privilege. Fizpatrick, the former president, argued that he was entitled, as a litigant asserting claims in his personal capacity against the corporate entities, to see any documents covered by the privilege. The *Fitzpatrick* Court denied plaintiff's demand for privileged documents, since the documents demanded related to that litigation; thus expedited discovery was not warranted. The *Fitzpatrick* court, however, does not address the potential misuse of discovery in a separate matter, as is the case here. Movant's hypothesis that the Subpoena should be denied due to the parallel litigations among the founders of SingularDTV is simply not supported by the *Fitzpatrick* court's holding.[28] The Subpoena in question here seeks information related only to the hacking incident, which is not material to any other case among these parties.

Movant acknowledges in its Memorandum that its investigation has not established LeBeau as the hacker (*See* Dkt. 60 at 5 ("Kobre & Kim does not know the identity of the John Doe Defendant"), and they all but acknowledge that there is no factual basis for establishing that LeBeau was involved in the hacking incident (*See* Id. (".... as it turns out, *circumstantial* evidence *suggests potential* involvement of LeBeau...." (emphasis added))). Yet, Movant goes on to *suggest* that LeBeau could *potentially* misuse information turned over by Kobre & Kim for his personal benefit (Dkt. 60 at 1).

Movant's avoidance of a protective order or a confidentiality agreement to resolve *Fitzpatrick*-type concerns reveals Movant's strategy: to stymie the investigation of Morrison

---

[28] *See* Dkt. 60 at 15.

Tenenbaum, even at the expense of a potential recovery by Plaintiff. Movant's concern that LeBeau or Jackson could realize an unfair benefit in separate litigations could be expeditiously remedied by a protective order or a confidentiality agreement setting forth procedures for the disclosure of sensitive information. Their reliance on *Fitzpatrick* and the argument that expedited discovery is trumped by privilege do not justify their refusal to provide information vital to this case. Refusing production due to a mere *potentiality* of misuse is insufficient grounds for withholding access to company work product directly related to the issues raised in the initial complaint,[29] especially when a protective order or confidentiality agreement would resolve these concerns.

The narrow scope of the Subpoena to documents related to the hacking incident ensures that the situation about which Kobre & Kim speculates is not likely to occur. The Subpoena does not request communications related to the wrongful removal of Zach LeBeau as the CEO of SingularDTV or his removal from its Board. It does not seek information related to the claims asserted in the Amended Complaint or allegations raised in the Derivative Action. The Subpoena is carefully limited only to information that relates to the hack and subsequent investigations overseen and conducted by Kobre & Kim. This is useful information that should be shared with the Plaintiff to further its investigation.

## III.    PLAINTIFF HAS OVERCOME THE CLAIM OF PRIVILEGE

Morrison Tenenbaum has been charged with identifying the source of the hacking incident and tracking down Plaintiff's misappropriated assets. Morrison Tenenbaum alone is pursuing this action against the John Doe Defendant(s). SingularDTV has conducted an extensive investigation into the hacking incident at Plaintiff's cost and expense. Regardless of

---

[29] Dkt. 1.

who signed the checks, the raw information and conclusions of that investigation should be turned over to Morrison Tenenbaum as demanded in the Subpoena for our use and evaluation. When Movant abandoned its Motion to Intervene on March 17, 2022, Morrison Tenenbaum retained authority to act on Plaintiff's behalf, and Movant forfeited any right to manage or control this case.

Rule 26(b)(3) provides in relevant part: "a party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has *substantial need* of the materials in the preparation of the party's case and that the party is *unable without undue hardship* to obtain the substantial equivalent of the materials by other means." (Emphasis added.) In this case, Plaintiff has unequivocally demonstrated that it has a substantial need for the claimed work product documents and obtaining the substantial equivalent of the requested information would cause undue hardship.

### A. Plaintiff Has a Substantial Need for The Documents claimed as Work-Product

As opposed to material that is "opinion" work product[30], "[i]f the material is "fact" work product,[31] it must be determined whether the requesting party has shown substantial need for its production and the inability to obtain equivalent information from other sources." *See United States v. Adlman*, 134 F.3d 1194, 1197, 1204 (2d Cir. 1998). Further, "[a] substantial need for work product materials exists where the information sought is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged or

---

[30] *See United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir.1998) (quoting Fed.R.Civ.P. 26(b)(3)). "Opinion work product reveals the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative," and is entitled to greater protection than fact work product."

[31] *See In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156, 161 (2d Cir.2002) "Fact work product may encompass factual material, including the result of a factual investigation."

carries great probative value on contested issues." *See Cornelius v. Consol. Rail Corp.,* 169 F.R.D. 250 (N.D.N.Y. 1996); *See e.g.*, *Natl. Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105 (S.D.N.Y. 2000); *Chevron Corp. v. Donziger*, 11 CIV. 0691 LAK, 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013). Where there is substantial need, as in this case, both opinion work product and fact work product are fair game for expedited discovery.

In *Natl. Cong. For Puerto Rican Rights*, Plaintiffs were able to demonstrate a substantial need for the documents withheld where the requested compiled data specifically related to issues in the action and were directly relevant to plaintiffs' claims. *Natl. Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000). In *Chevron Corp*, Chevron was able to show that it had a substantial need for the documents requested because the documents directly related to the stated causes of action and were vital to understanding "the whole story." *Chevron Corp. v. Donziger*, 11 CIV. 0691 LAK, 2013 WL 1087236, 28 (S.D.N.Y. Mar. 15, 2013).

Like in *Natl. Congress* and *Chevron*, Plaintiff has a clear need for the documents, and the discovery demand relates specifically to Kobre & Kim's investigation into the misconduct complained of in the Complaint. The information that Plaintiff seeks from Movant relates to Movant's investigation of the hacking incident; this information is likely to contain conclusions and analysis regarding the hacking incident, where there is evidence of insider involvement (i.e. whether there is evidence of involvement by the former general counsel who was allegedly hacked), the movement of Tokens following the hacking incident, and theories regarding the identity and location of the hacker. Like *Chevron Corp.*, this information is vital to understanding the whole story.

If that is not enough, the information sought in the Subpoena rightfully belongs to Plaintiff, whom Morrison Tenenbaum represents in this action. While the fruits of its investigation are no longer useful to Movant in the battlefield over control of SingularDTV, it is invaluable to Plaintiff's pursuit of the John Doe in this case. Plaintiff has demonstrated that the requested documents are in Movant's possession, are directly related to the causes of action in this case and are vital to understand the whole story. Further, there is a demonstrable and substantial need for the information that Kobre & Kim has gathered in the course of its investigation.

### B. Obtaining the Substantial Equivalent of the Requested Information by Other Means Would Cause Undue Hardship

Absent production of the requested documents, obtaining the substantial equivalent thereof by other means would cause undue hardship for the Plaintiff. Examples of undue hardship include, but are not limited to costly expenses, large burden, impossibility of tasks, or time to conduct similar investigations. *See e.g.*, *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58 (S.D.N.Y. 2010); *Natl. Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105 (S.D.N.Y. 2000); *Cornelius v. Consol. Rail Corp.*, 169 F.R.D. 250 (N.D.N.Y. 1996). The undue hardship test can be satisfied through a showing of a combination of the above listed examples. *See Pine Top Ins. Co., Ltd., v. Alexander & Alexander Services, Inc.*, 85 CIV. 9860, 1991 WL 221061 (S.D.N.Y. Oct. 7, 1991) (discussing how some additional expenses incurred alone would not satisfy the undue hardship analysis).

"While undue hardship does not require the party seeking discovery of work product to show that it is "absolutely impossible" to "obtain [] the information elsewhere," it must demonstrate "that it is likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source than from factual work product of the objecting

party." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58 (S.D.N.Y. 2010) (quoting *Weiss v. Nat'l Westminster Bank*, PLC, 242 F.R.D. 33, 67 (E.D.N.Y.2007) (citations omitted).

In *Natl. Cong for Puerto Rican Rights*, the Court agreed with the Plaintiffs that "[r]eplicating the data through other sources would be burdensome and costly." creating an undue hardship. *Id.* at 110. Here, Movant suggests that rather than produce the information it has already compiled and evaluated, Plaintiff should replicate its investigative efforts. While Morrison Tenenbaum is not privy to the bills of Kobre & Kim or the costs of its vendor AlixPartners (Dkt. 26), they are sure to be significant. By way of reference, Movant's fee for simply serving as escrow agent for Plaintiff's Ethereum holdings is $20,000 per month.

In addition to the cost of reproducing Movant's investigative efforts, it would take months of work to compel all of the information already gathered by Kobre & Kim, such as information provided by representatives of Plaintiff by electronic mail, the findings of SingularDTV's own internal investigation conducted by its Dissolution Committee (*see* Dkt. 42 Exhibit A), the communications between Movant and AlixPartners, and their collective findings. Both Movant and AlixPartners are highly sought-after experts in cryptocurrency and blockchain technology. The immense time and resources that have already gone into the hack investigation are wasted if not provided to Morrison Tenenbaum at this juncture. Certainly, obtaining the information from Movant is the more efficient option and avoids the undue hardship of duplicating the same effort though other experts, where our access to SingularDTV background information is being actively impeded due to the factional battle for control of SingularDTV.

## IV.   MOVANT SHOULD BE COMPELLED TO PRODUCE A PRIVILEGE LOG

Under the Federal Rules of Civil Procedure, when a party withholds otherwise discoverable information by claiming privilege, the party must "expressly make the claim" and

"describe the nature of the documents." Fed R. Civ. P. 26(b)(5)(A). This must be done in "sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *Grand River Enters. v. King*, 2009 WL 63461, at *3 (S.D.N.Y. Jan.12, 2009) (quoting *United States v. Constr. Prods. Research*, 73 F.3d 464, 473 (2d Cir.1996)). Local Rules 26.2(a)(2) give force to these requirements.[32]

 "Where a party seeks to assert a privilege as to certain documents, that party bears the burden of providing a privilege log to support its claim of privilege." *Sheikhan v. Lenox Hill Hosp.*, 1999 WL 386714 (S.D.N.Y. June 11, 1999) (citing Fed. R. Civ. P 26(b)(5); Local Civil Rule 26.2.) The failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege.[33] In *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc*., 2013 WL 238176 (S.D.N.Y. Jan. 18, 2013), the court held that a non-party's broad claim of privilege and refusal to produce documents must fail if they do not specify exactly how privilege is attached to each individual communication. The *Mitsui* court was unwilling to assume every document exchanged between parties was privileged. Id. at 3.

 In this case, Movant has not provided a privilege log. The Subpoena served on Movant on May 16, 2022, laid out fourteen specific requests for document production. In Movant's Memorandum of Law in Support of Motion to Quash Rule 45 Subpoena (Dkt 60.) Kobre & Kim

---

[32] Local Rules 26.2(a)(2) directs the party withholding a document to specify: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees and recipients to each other.

[33] *See Kingsway Fin. Services, Inc. v. Pricewaterhouse-Coopers LLP*, 2006 WL 1295409 (S.D.N.Y. May 10, 2006) (holding any applicable privilege has been waived as a result of plaintiffs failure to list the documents on a timely served index of documents withheld on the ground of privilege); *See also A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2000 WL 1538003 at *3 (S.D.N.Y. Oct. 17, 2000) (holding that any privilege waived because inadequate listing in privilege log is effectively no listing at all).

make no distinction between the fourteen requests for production. Movant generalizes "communications" and "transactions" without specific reference to particular items, indexing of information in Movant's possession or control, or a listing of each request and why privilege should be attached. Therefore, if Movant is not compelled to produce all of the information requested in the Subpoena, Movant should at least be compelled to produce a detailed privilege log specifically indexing each responsive document in its possession and/or control for further evaluation and review.

## V.   THE PARTIES CAN ENTER INTO A CONFIDENTIALITY AGREEMENT TO PREVENT THE MISUSE OF ALLEGEDLY PRIVILEGED DOCUMENTS

To the extent Movant is concerned about the potentiality that some of the document produced in response to the Subpoena could be used in one of the unrelated actions between the founders of SingularDTV,[34] the Court can compel the parties to enter into a reasonable confidentiality agreement restricting the use of the documents to the present litigation.

In *Valley v. Lynch,* Civil Action 19-CV-07998 (VEC), once the two parties entered a confidentiality agreement, the discovery process flowed more freely.[35] This case's procedural history relating to discovery mimics that seen in *Valley*. In both cases, there have been requests for production, responses, objections, etc. In that case, the parties entered into a detailed confidentiality agreement which successfully resolved similar concerns to those posed by Movant. With protections in place, Movant would be able to exchange information with SingularDTV without fears of misuse by Morrison Tenenbaum in another matter.

## VI.   MOVANT SHOULD BE COMPELLED TO PRODUCE ALL REQUESTED INFORMATION

---

[34] "The privileged communications and work product targeted in the Third-Party Subpoenas could potentially be used against the Company in those others matter." (Dkt 60, at 19).

[35] *See Valelly v. Lynch*, Civil Action 19-CV-07998 (VEC), Dkts 70-77 (Joint letters between parties providing updated on the exchange of information post confidentiality agreement).

"The relevance standards set out in Federal Rule of Civil Procedure 26(b)(1) apply to discovery sought from non-parties." *Loeb*, 2019 WL 2428704, at *4 (citing *Citizens Union of City of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017)). Motions to compel discovery are subject to a "two-step analytical framework": First, the moving party must demonstrate that the information sought is "discoverable"; second, once discoverability has been shown, "it is up to the responding party to justify curtailing discovery." *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488, 2017 U.S. Dist. LEXIS 139983, 2017 WL 3822883, at *4 (S.D.N.Y. Aug. 30, 2017) (quotation marks and alterations omitted) (*In re Novartis & Par Antitrust Litig.*, 2020 US Dist. LEXIS 106863, at *11-12 (SDNY June 18, 2020)). The scope of what is properly discoverable is affixed by Federal Rule of Civil Procedure 26.[36]

As discussed above, the information Plaintiff seeks is highly relevant, and there is a substantial need to obtain the information. Plaintiff has demonstrated that this information is discoverable. While the Movant attempts to justify its refusal to produce any documentation or information whatsoever, Plaintiff has convincingly demonstrated that its demands are justified, and Movant's objections are without merit or legal basis.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court dismiss Movant's Motion to Quash and compel production of requested information or compel Movant to product a privilege log before proceeding further.

Respectfully submitted,

---

[36] FRCP 26 provides in pertinent part that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

MORRISON TENENBAUM PLLC

By: /s/ Jerald Tenenbaum
     Jerald M. Tenenbaum, Esq.

87 Walker Street, Floor 2
New York, NY 10013
Tel: (212) 620-0938
jerald@m-t-law.com

*Attorney for Plaintiff*