UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SINGULARDTV, GMBH,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN DOE,<br><br>    Defendant. | Case No. 1:21-cv-06000 (VEC) |

<u>**MEMORANDUM OF LAW IN**</u>
<u>**OPPOSITION TO THIRD PARTY ALIXPARTNERS'**</u>
<u>**MOTION TO QUASH RULE 45 SUBPOENA**</u>

                **Morrison Tenenbaum PLLC**

                Jerald M. Tenenbaum, Esq.
                87 Walker Street, Second Flr.
                New York, NY 10013
                Tel: (212) 620-0938
                E-mail: jerald@m-t-law.com

                *Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT .............................................................................................................................. 4

    I.    Plaintiff's John Doe Action is independent of the LeBeau Action ................................... 4

    II.   Neither the work product doctrine nor any privilege insulates
         Alix from Plaintiff's Subpoena ........................................................................................ 7

    III.  Alix is not excused from responding to Plaintiff's Subpoena just
         because it believes Plaintiff can seek the requested information elsewhere ................... 10

    IV.  Plaintiff's Subpoena does not warrant monetary sanctions under Rule 45(d)(1) ............. 13

CONCLUSION ........................................................................................................................ 14

# **TABLE OF AUTHORITIES**

Page(s)

Other Authorities

2016 WL 7165981 ................................................................................................................5, 6, 7
210 F.2d 665 (10th Cir. 1954) ...........................................................................................................5
337 F.R.D. 70 (S.D.N.Y. 2020) ...................................................................................................8, 11
561 F. Supp. 3d 343 (W.D.N.Y. 2021) ..............................................................................................8
*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*,
    171 F. Supp. 3d 136 (S.D.N.Y. 2016) .......................................................................................10
*Burrow v. Forjas Taurus S.A.*,
    334 F. Supp. 3d 1222 (S.D. Fla. 2018) ........................................................................................9
*Cohen v. City of New York*,
    255 F.R.D. 110 (S.D.N.Y. 2008) .................................................................................................8
*Copantitla v. Fiskardo Estiatorio, Inc.*,
    No. 09 Civ. 1608 (RJH) (JCF), 2010 WL 1327921 (S.D.N.Y. Apr. 5, 2010) ..........................13
*Favors v. Cuomo*,
    285 F.R.D. 187 (E.D.N.Y. 2012) ..............................................................................................10
*Gucci Am., Inc. v. Guess?, Inc.*,
    271 F.R.D. 58 (S.D.N.Y 2010) .................................................................................................10
No.,
    21 MISC. 194 (KPF), 2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021) .........................................13
*Trellian Pty, Ltd. v. adMarketplace, Inc.*,
    No. 19CIV5939JPCSLC, 2021 WL 363965 (S.D.N.Y. Feb. 3, 2021) .....................................13
*Walker v. Blitz USA, Inc.*,
    No. CIV.A. 5:08MC15, 2008 WL 5210660 (N.D.W. Va. Dec. 12, 2008) .................................9
*Weiss v. Nat'l Westminster Bank*, PLC,
    242 F.R.D. 33 (E.D.N.Y. 2007) ................................................................................................10

Regulations

18 U.S.C. § 1030 .................................................................................................................................4
18 U.S.C. § 1962(a) ............................................................................................................................4

9

FED. R. CIV. P. 1 ...............................................................................................................................15
Federal Rule of Civil Procedure 26(b)(3) ......................................................................................8, 9
Federal Rule of Civil Procedure 45 ..........................................................................................passim
Federal Rules 26 and 45 ...................................................................................................................15
Rule 45(d)(1) ....................................................................................................................................15

Morrison Tenenbaum PLLC ("Morrison Tenenbaum"), counsel to Plaintiff SingularDTV GmbH ("Plaintiff" or "SingularDTV"), pursuant to Federal Rule of Civil Procedure 45, hereby respectfully submits this Memorandum of Law in Opposition to the Motion to Quash Rule 45 Subpoena ("Motion to Quash") filed by AlixPartners LP ("Alix") on June 30, 2022 by Cohen & Gresser LLP (this "Opposition"). Plaintiff's Opposition is supported by the Declaration of Jerald Tenenbaum ("Tenenbaum Decl."), filed contemporaneously herewith.

## PRELIMINARY STATEMENT

In this action, a threshold issue Plaintiff must resolve is the identity of the hacker and thief who fraudulently induced Plaintiff to transfer approximately $2,000,000 in SNGLS tokens as part of a targeted and unlawful cyberattack (the "Hacking Incident" or "Cyber Theft"). As the party-in-interest in this action for compensatory damages, Plaintiff sought, and this Court granted, expedited discovery for the purposes of serving subpoenas on individuals and entities believed to have relevant knowledge that could be used to identify the perpetrator of the Hacking Incident. [Doc. No. 48]. Specifically, Plaintiff served subpoenas on numerous third parties, including Alix, which is a consulting cybersecurity expert hired on behalf of Plaintiff to investigate the hacking incident at the heart of this lawsuit.

Plaintiff's duly issued, Court-approved subpoena to Alix (the "Subpoena") seeks production of relevant documents regarding the investigation that Alix conducted into the Cyber Theft from which this lawsuit arises. The information sought in the Subpoena will assist Plaintiff in identifying the John Doe Defendant(s) who stole nearly $2,000,000 in cryptocurrency from Plaintiff and will provide Plaintiff with information vital to tracking down the misappropriated corporate assets. In response to the Subpoena, Alix contends that Plaintiff is attempting to gain expert disclosures out of sequence in order to defend parties in the related case before this Court

[*SingularDTV, Gmbh v. Zachary LeBeau and Kimberly Jackson*, Case No. 1:21-cv-10130-VEC] (the "*LeBeau* Action"). That logic is flawed since the *LeBeau* Action relates to alleged violations of Plaintiff's intellectual property rights and has nothing to do with the Hacking Incident at issue here.

In fact, the Subpoena is expressly limited to documents related to the Hacking Incident, and Plaintiff has narrowly tailored its demands to the subject of the Hacking Incident investigation; the Subpoena specifically avoids any request for documents that could potentially be exploited in the *LeBeau* Action. Alix also argues that Plaintiff's Subpoena demands documents that are protected by attorney-related privileges, despite that Plaintiff is the rightful beneficiary of the protections afforded by the very privilege Alix asserts. Even if Alix's assertion of privileges *against Plaintiff* is valid, Plaintiff has a substantial need for the information demanded in the Subpoena and obtaining it through other means would impose a substantial burden on Plaintiff.

Alix further contends that it should not be made to comply with Federal Rule 45 because Alix's evaluation of the Cyber Theft *on Plaintiff's behalf* relied upon publicly available information and that producing its investigation materials would impose an undue burden. The relevant factors for determining "undue burden" on subpoenaed non-parties, however, clearly favors disclosure. Finally, Alix's demand for payment for either responding to or opposing Plaintiff's Subpoena should not be entertained; nor does Alix explain why the cost of compliance prevents Alix from producing responsive documents.

For good cause detailed below, this Court should deny Alix's Motion to Quash and order Alix to make the requested production so that Plaintiff can make its best effort to identify the John Doe Defendant. Alix should be compelled respond to the subpoena that this Court granted Plaintiff leave to serve.

2

## FACTUAL BACKGROUND[1]

The company presently known as SINGULARDTV was initially formed in or around October 2014, as Evotion Media LLC by Zachary LeBeau ("LeBeau") and his wife, Kimberly Jackson ("Jackson"). The business was first conceptualized by its founders as a blockchain platform for content creators to track and monetize their intellectual property rights and to fund and create television and film assets related to blockchain and cryptocurrency. *See* Declaration of Kimberly Jackson [Doc. No. 21, at ¶ 4].

In or around October 2016, SingularDTV GmbH (Switzerland) (the "Company"), Plaintiff in this matter, was formed by LeBeau and Jackson together with Joe Lubin ("Lubin") and Arie Levy Cohen ("Cohen"). [*Id.*] Lubin and Cohen were invited to participate and given shares in the business. [*Id.*]

The purpose of the Company was to raise capital through an initial coin offering (ICO) in Switzerland. In the ensuing years, the cryptocurrency raised by SingularDTV appreciated dramatically. [*Id.* at ¶ 5].

From the Company's inception, LeBeau served as its Chief Executive Officer (CEO) while Jackson served as Chief Operating Officer (COO) handling human resources, finance and operations functions for Plaintiff. Jackson also attended each and every Board Meeting of Plaintiff, where her voice was coequal with the other founders. [*Id.* at ¶ 6.]

LeBeau was purportedly terminated as the CEO and removed from the Board by Lubin and Cohen. Likewise, Jackson was later terminated and stripped of her stake in the business. The efforts of Lubin and Cohen to seize control over the SingularDTV business and its assets purportedly

---

[1] This Factual Background substantially mirrors the Factual Background section of Plaintiff's Memorandum of Law in Opposition of Third Party Kobre & Kim's Motion to Quash Rule 45 Subpoena, [Doc. No. 64], which presents nearly identical issues as this Memorandum.

3

stemmed from the hacking incident that is the subject of the suit against John Doe presently before this Court. [Doc. No. 1].

On July 13, 2021, Morrison Tenenbaum, on behalf of SingularDTV, GmbH filed a complaint against John Doe in connection with the hacking incident for violations of the computer fraud and abuse act (18 U.S.C. § 1030); violation of racketeer influenced, and corrupt organizations act ("RICO") (18 U.S.C. § 1962(a)); conversion; fraud in the inducement; unjust enrichment. [*Id.*]

On November 21, 2021, Kobre & Kim filed a Motion to Intervene, [Doc. No. 11], and on March 17, 2021, withdrew the motion following the Court's order for an evidentiary hearing, [Doc. No. 35]. By withdrawing its Motion to Intervene, Kobre & Kim tacitly acknowledged (despite its protestations) that Morrison Tenenbaum continues to represent the Plaintiff in this action.

On May 31, 2022, following leave from this Court, [Doc. No. 48], Morrison Tenenbaum served its first subpoena on Kevin Madura, Senior Vice President of AlixPartners. [Doc. No. 76]. The Subpoena sought eleven items, each specifically related to the May 2021, hacking incident, the transfer of SingularDTV assets to a yet unknown third-party, and the investigation by SingularDTV that followed. [Doc. No. 70-1].

On June 21, 2022, Alix submitted Responses and Objections to the Subpoena, [Doc. No. 75-1], and filed the Motion to Quash on June 30, 2022, [Doc. No. 71]. As of the date of this Opposition, Alix has refused to turn over even a single document demanded in the Subpoena. [Doc. No. 75-1].

## **ARGUMENT**

Attempting to avoid a duly issued, Court-approved subpoena for highly relevant documents that contain information that is highly likely to aid the recovery of assets wrongfully

4

misappropriated from Plaintiff, Alix has asserted numerous overlapping objections. For the reasons set forth below, this Court should overrule each of those objections, deny Alix's Motion to Quash, and compel Alix to produce the relevant documents currently in its possession, as required by Plaintiff's Subpoena.

## I.   Plaintiff's *John Doe* Action is independent of the *LeBeau* Action.

As a threshold matter, the assertion that Plaintiff is adverse to Alix or to Kobre & Kim—that Plaintiff is not SingularDTV but rather LeBeau or Jackson—has been rendered moot by the withdrawal of the Kobre & Kim Motion to Intervene, which effectively waived any objection to Plaintiff continuing to prosecute this lawsuit with its current counsel of record. *Accord Kelley v. Summers*, 210 F.2d 665, 673–74 (10th Cir. 1954) ("For reasons satisfactory unto itself, the insurance company dismissed its intervention in each case and that amounted to an abandonment or waiver of its right further to proceed by intervention in the then pending actions."). The abandoned challenge from a non-party to Plaintiff's position as the party-in-interest in this case can no longer be given any credence. The plaintiff in this case is inarguably SingularDTV, and this Court should disregard any residual rumination to the contrary.

Alix's first objection to Plaintiff's subpoena is that it seeks materials that unfairly reveal the legal strategy of SingularDTV in the *LeBeau* Action. Alix cites only one legal authority in defense of this proposition: *Natixis Fin. Prod. LLC v. Bank of Am., N.A.,* No. 10 CIV. 3656, 2016 WL 7165981 (S.D.N.Y. Dec. 7, 2016). The *Natixis* decision involved two lawsuits against Bank of America (BoA)—one by Natixis and one by Deutsche Bank. *Id.* at *1. Both suits related to the collapse of Ocala Funding, LLC, which was a mortgage-backed securitization trust; both Natixis and Deutsche Bank asserted claims against BOA for breach of contract and breach of fiduciary duty. *Id.* The Court aligned the two cases for discovery, specifically setting "mirrored" deadlines

5

in the Deutsche Bank scheduling order that were approximately two months prior to the deadlines in the Natixis scheduling order and granting Natixis leave to participate in discovery proceedings in the Deutsche Bank case. *Id.* Therefore, BoA's expert disclosure deadline in the Deutsche Bank action was set to be two months prior to its expert disclosure deadline in the Natixis action. *Id.* After BoA disclosed its experts in the Deutsche Bank lawsuit and before its deadline to do so in the Natixis lawsuit, counsel for Natixis requested and ultimately moved to compel the production of BoA's expert reports from the Deutsche Bank lawsuit. *Id.* at *2. Thereafter, the Deutsche Bank case settled while the Natixis case was stayed. Natixis however renewed its motion to compel for BoA's expert reports to be produced prior to Natixis's expert disclosure deadline. *Id.* The Court denied the Natixis motion, reasoning that compelling Natixis's opponent to produce expert reports from a parallel case would confer an "unfair advantage" upon Natixis by disrupting the "usual course" in which a plaintiff discloses its expert opinions prior to a defendant. *Id.* at *4. More specifically, the Court found that Natixis was trying "to obtain advance copies of BoA's expert reports before committing to an expert position on its own claims on the grounds that BoA has had the advantage of expert discovery in the [Deutsche Bank] Actions." *Id.*

      Where in *Natixis*, the two cases were nearly identical and following parallel paths through discovery, here there is no procedural or substantive overlap between the instant *John Doe* lawsuit and the *LeBeau* Action. Both cases were brought by the same Plaintiff, but the similarities end there. No aspect of the materials sought in the Subpoena relates to any adverse position held by any litigant opposite Plaintiff in the *LeBeau* Action. The Defendant in this action is a yet unknown "John Doe," while the defendants in the *LeBeau* Action (alleging trademark infringement and violations of federal statutes having nothing to do with the facts of this case) are LeBeau and Jackson. The false equivalence that Alix peddles in its Motion to Quash is undermined by the

6

dockets in each case, which have been down vastly different paths. It also ignores the simple fact that SingularDTV, the Plaintiff in this case, is requesting information from its own consultant.

Even if the Court were to entertain Alix's narrative that Plaintiff is adverse to its own consultant, the claims asserted in the *John Doe* and *LeBeau* actions distinguish this case from *Natixis*. Whereas Natixis's and Deutsche Bank's interests were aligned against BoA such that BoA's disclosure against Deutsche Bank would have revealed BoA's legal strategy against Natixis, no such threat exists here. Plaintiff's cause of action in this suit (i.e. compensatory damages against John Doe for fraud, theft, and conversion of Plaintiff's SNGLS tokens), [Doc. No. 1], is entirely independent from the *LeBeau* Action, which seeks damages from LeBeau and Jackson for alleged infringement of intellectual property rights and breaches of a services agreement - completely unrelated to this matter, [Case No. 1:21-cv-10130-VEC, Docs. No. 1, 78]. Alix fails to demonstrate how disclosure of the subpoenaed materials in this action would prejudice Plaintiff in the *LeBeau* Action; whereas, as detailed below, restricting Plaintiff's access to the subpoenaed materials highly prejudices the Plaintiff's ability to identify the John Doe defendant and recover the misappropriated assets, the very purpose of pursuing expedited discovery in this case. Accordingly, the *Natixis* case is distinguishable, and Alix's objection to Plaintiff's subpoena is not supported by the law of that isolated case on which its entire argument relies. Given the absence of any applicable law on this point, Alix's first argument must be dismissed.

**II.     Neither the work product doctrine nor any privilege insulates Alix from Plaintiff's subpoena.**

Alix's second objection to Plaintiff's subpoena is that it seeks communications and materials protected by the work product doctrine or applicable privileges between attorneys, clients, and expert witnesses. This argument misses the mark for a few, independent reasons.

7

First, Alix fails to differentiate between <u>opinion</u> work product and <u>fact</u> work product, the latter of which enjoys far fewer and less stringent protections and for which Plaintiff has demonstrated a substantial need. Alix should not be permitted to misrepresent the intentionally narrow scope of the subpoena, only to lob an unbased objection that it is overly broad. As the United States District Court for the Western District of New York observed:

> There are two types of work product, ordinary or fact … and opinion. As we have stated previously, fact work product may encompass factual material, ***including the result of a factual investigation***. In contrast, opinion work product reveals the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative, and is entitled to greater protection than fact work product. When evaluating whether to order disclosure of work product, courts have consistently distinguished between primarily factual work product and core opinion work product, and although ***factual work product is subject to disclosure once the required showings are made***, core work product is entitled to more stringent protection, protection described by some courts as absolute or near absolute.

*See Klosin v. E.I. du Pont de Nemours & Co.*, 561 F. Supp. 3d 343, 348–49 (W.D.N.Y. 2021) (emphasis added) (citations omitted). Therefore, investigation findings and conclusions constitute fact, not opinion, work product and enjoy less protection.

Federal Rule of Civil Procedure 26(b)(3) codifies the work product doctrine in part, providing that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," except when "the party shows that it has substantial need for the materials . . . and cannot, without undue hardship, obtain their substantial equivalent by other means." *See United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 337 F.R.D. 70, 74 (S.D.N.Y. 2020), *objections overruled*, No. 19 CIV. 4355 (VM), 2021 WL 391298 (S.D.N.Y. Feb. 4, 2021); *Cohen v. City of New York*, 255 F.R.D. 110, 125 (S.D.N.Y. 2008) ("[I]f the material is fact work product, it must be determined whether

the requesting party has shown substantial need for its production and the inability to obtain equivalent information from other sources."); *see also* FED R. CIV. P. 26(b)(3).

Tellingly, Alix has not argued (or even attempted to argue) that Plaintiff does not have a substantial need for the materials subpoenaed. Alix has argued though (without providing any support) that "the requested materials are of limited value to the matter at hand," [Doc. No. 71, at 11], a position that is indefensible given that (a) the "matter at hand" is discovering the identity of the thief and following the flow of misappropriated funds, and (b) Alix was the outfit retained (and presumably compensated handsomely) for the sole purpose of investigating those very same questions.

To be clear, Plaintiff has, and has demonstrated, a substantial need for the subpoenaed materials. The entire purpose of Plaintiff's Subpoena is to ultimately recover assets belonging to SingularDTV. On Plaintiff's behalf, and for its benefit, Alix investigated the Hacking Incident, relying on its own unique expertise in cryptocurrency and blockchain, which Plaintiff would be hard pressed to duplicate in a time and cost-effective manner. *See, e.g.*, *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1232 (S.D. Fla. 2018) (rejecting work product objection when a plaintiff showed substantial need because it lacked, among other things, "expertise to replicate Defendant's testing and analysis"); *Walker v. Blitz USA, Inc.*, No. CIV.A. 5:08MC15, 2008 WL 5210660, at *5 (N.D.W. Va. Dec. 12, 2008) (finding a plaintiff demonstrated substantial need and undue hardship in replicating work product from an "expert on a subject about which it is not likely that others are going have knowledge, or at least the same degree of knowledge, or expertise").

Alix attempts to argue that Plaintiff does not have a substantial need for the subpoenaed materials because "[n]othing prevents Plaintiff from hiring its own expert to conduct its own investigation using the same information and tools applied by AlixPartners." [Doc. No. 71, at 6].

9

This argument falls short because Plaintiff (SingularDTV) did in fact hire Alix to gather the information and generate the conclusions that Plaintiff's Subpoena seeks. Even if Alix's contention were factually accurate, and if Plaintiff could reasonably hire another expert, Alix cannot simply refuse to respond to the Subpoena by too narrowly applying the work product rule, which by design considers whether Plaintiff will suffer "undue hardship" to obtain the requested information from another source. To re-compile the already-compiled information and recreate the already-found findings constitutes sufficient undue hardship to support Plaintiff's demand for disclosure under applicable law. The burden on Plaintiff's agent should be minimal since it has only recently collected and evaluated the information requested and produced its findings to representatives of the Company mere months ago. *See Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 81 (S.D.N.Y 2010) ("While undue hardship does not require the party seeking discovery of work product to show that it is 'absolutely impossible' to 'obtain the information elsewhere,' it must demonstrate 'that it is likely to be significantly more difficult, time-consuming **or** expensive to obtain the information from another source than from factual work product of the objecting party.") (quoting *Weiss v. Nat'l Westminster Bank*, PLC, 242 F.R.D. 33, 67 (E.D.N.Y. 2007)) (emphasis added).

      Second, Alix has not properly made the threshold showing that the work product doctrine applies or the extent to which a responsive production would implicate the work product doctrine. *See Favors v. Cuomo*, 285 F.R.D. 187, 199 (E.D.N.Y. 2012) ("The proponent of the [work product] privilege bears the 'heavy burden' to establish its existence."); *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 171 F. Supp. 3d 136, 147 (S.D.N.Y. 2016) ("[T]he Town Defendants have not undertaken the work necessary to show which, if any, particular documents may be entitled to the work-product privilege. . . . Resolution of the privilege must be made on a document-by-document basis in light of the particular contents of each document.")

To wit, Alix has not conducted a reasonable search (or any search) for responsive, non-protected materials, opting instead to categorically denounce the Court-approved subpoena served on it by Plaintiff. "Due to the nature of the relationship between AlixPartners, Kobre & Kim, and SingularDTV***, most if not all*** documents responsive to the Subpoena ***are likely to be*** privileged or work product." [Doc. No. 71, at 9] (emphasis added). "Requiring Alix to conduct a broad search at great expense . . . ." [*Id.*]. Nor has Alix (or anyone with knowledge of Alix's files) produced a privilege log with sufficient information to lay a foundation for the privilege. *See Collector's Coffee Inc.*, 337 F.R.D. at 74 ("The party asserting work-product protection must demonstrate that the material at issue (1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative."). Due to its failure to conduct even a cursory analysis of the documentation and information in its possession, Alix's continuing objections should be considered void *ab initio*.

Third, Alix contradicts its work product / privilege objections by arguing that the information the Subpoena seeks is already publicly available. Alix filed a Declaration from Mr. Kevin Madura, an employee of Alix, in this very action detailing some of the information Alix has acquired related to the cyber incident. [Doc. No. 26]. That information should be turned over. Further, Alix maintains that Mr. Madura's "analysis and the information he relied on have all been made available to Plaintiff and to the public." [Doc. No. 71, at 12]. If that is the case, then all of its analysis related to the Hacking Incident can be handed over without objection. Alix has argued itself into a corner: it cannot simultaneously, in good faith, declare that Plaintiff should simply recreate Alix's analysis, which is publicly available, while also maintaining a categorical objection on the basis that Plaintiff's subpoena seeks specialized work product or privileged materials that would cause prejudice if revealed.

Finally, given that Plaintiff is SingularDTV, and Alix admits it was retained on behalf of SingularDTV, [Doc. No. 71, at 9], there is no way to reconcile how Alix responding to Plaintiff's narrowly tailored subpoena would breach any applicable privilege or protection—when such legal protection exists for the benefit of that Plaintiff.  Frankly, Plaintiff should not have had to resort to Rule 45 to procure materials from an investigation conducted on its behalf by a vendor retained for its benefit. Alix concedes "[s]ome of the documents sought by the Subpoena are already in the possession of SingularDTV."  [Doc. No. 71, at 11]. In any event, Alix should be compelled to produce both source materials and its findings to Plaintiff in this action, as demanded in the Subpoena.

Accordingly, this Court should find Alix's work product and privilege objections to Plaintiff's subpoena inapposite and order Alix to comply with Rule 45.

### III.     Alix is not excused from responding to Plaintiff's subpoena because it believes Plaintiff can seek the requested information elsewhere.

Alix's third objection to Plaintiff's subpoena is that Alix, as a non-party, should not be required to respond because Plaintiff could, allegedly, potentially obtain the same information from other sources, thereby reducing the "undue burden" on Alix. This route, Alix maintains, would relieve it from producing more information than an expert would need to disclose under Rule 26(b)(2)(C), which Alix exalts as the ceiling on materials capable of being subpoenaed. As explained above, strained claims of 'overlap' between the subpoenaed documents and expert disclosures in another lawsuit does not empower Alix to rebuke Plaintiff's duly issued subpoena. Alix's Rule 26(b)(2)(C) contention is a red herring.

"Whether a subpoena imposes an 'undue burden' depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."

12

*Breaking Media, Inc. v. Jowers*, No. 21 MISC. 194 (KPF), 2021 WL 1299108, at *5 (S.D.N.Y. Apr. 7, 2021) (quoting *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 Civ. 1608 (RJH) (JCF), 2010 WL 1327921, at *10 (S.D.N.Y. Apr. 5, 2010)).

The fact that Alix is not a party to the *John Doe* action is neither dispositive nor particularly relevant to the inquiry at hand. It is specifically because Alix is *not* a party to this action that Plaintiff issued the Subpoena; Alix is not a party and is thus not subject to Rule 34 requests for documents. As Plaintiff has noted, serving Rule 45 subpoenas on non-parties is the only mechanism available to Plaintiff at this stage of the litigation. Despite arguing that expedited discovery is not the proper procedural mechanism for Plaintiff to pursue identification and recovery, Alix does not even acknowledge that quashing Plaintiff's Subpoena leaves Plaintiff without any recourse for pursuing discovery at this stage of the lawsuit, further exacerbating the waste of time and resources created by Alix's needless opposition.

Although Alix correctly notes that courts afford "special weight to the burden on non-parties" in responding to subpoenas and "must be particularly sensitive to weighing the probative value of the information sought against the burden of production on a nonparty," *Trellian Pty, Ltd. v. adMarketplace, Inc.*, No. 19CIV5939JPCSLC, 2021 WL 363965, at *2 (S.D.N.Y. Feb. 3, 2021), Alix has mistakenly concluded that its status as a non-party insulates it from Plaintiff's Subpoena entirely.

The applicable factors for determining whether a subpoena is unduly burdensome on non-party weighs heavily in favor of compelling production in this case.  First, the information sought in the Subpoena is highly relevant for identifying the cyber thief and the movement of cryptocurrency following the theft. Second, Plaintiff has a clear need for the subpoenaed documents, as the investigation materials were produced for the very purpose of uncovering

information that could be used to identify the hacker who stole Plaintiff's property. Third, while the scope of the documents requested admittedly falls into eleven subcategories, the definitions clearly specify that each subcategory is limited to only those documents that arise from Alix's investigation into the Hacking Incident. Alix argues that the subpoena is overly broad because it "amount[s] to a request for AlixPartner's entire case file related to its engagement with Kobre & Kim." [Doc. No. 71, at 11]. In fact, Alix's reading of the Subpoena intentionally broadens its scope in order for Alix to make this argument.

Alix is also not being completely honest about the scope of its engagement with SingularDTV. The declaration of Kevin Madura, a Senior Vice President of Alix (the "Madura Declaration") details an investigation into far more than the hacking incident. [Doc. No. 26]. The Madura Declaration dug into transfers of cryptocurrency which appear to have nothing to do with the Hacking Incident, including many 2020 transfers by LeBeau. Unless those materials relate to the Hacking Incident, they would not fall within the scope of the Subpoena. If they do, the material would certainly be germane to Plaintiff's investigation. The Subpoena has been careful crafted to seek out only information and materials related to Alix's work on the subject Hacking Incident— not all of the materials produced or reviewed by Alix for Kobre & Kim or on behalf of Joe Lubin.

Fourth, the time period covered by the subpoena, like its scope, is also limited to a single investigation into a single hacking incident and does not include other, earlier cryptocurrency transfers that Alix investigated. Fifth, aside from the intentionally misinterpreted scope addressed above, and the limited time period, there appears to be no dispute as to the particular documents described in and sought by the subpoena, which favors production.

Finally, the burden on Alix of producing the requested documents is not so great as to justify depriving Plaintiff of this potentially valuable information at this stage of the case.

14

Specifically, Alix seems to concede that it will need to produce the requested information anyway. Alix notes, "[s]ome of the documents sought by the Subpoenas are already in possession of SingularDTV," [Doc. No. 71, at 11], indicating that Alix has already gathered and transmitted some of the information. Alix goes on to argue that "other information is potentially the subject of expert discovery in the *LeBeau* Action," which will need to be gathered and produced in due court. [*Id.*]. By contrast, the extraordinary burden on and prejudice to Plaintiff by being denied access to information that its own agent gathered and/or generated deprives Plaintiff of a timely and meaningful opportunity to identify the party responsible for misappropriating approximately $2,000,000 through the Hacking Incident.

Alix ask this Court interpret Federal Rules 26 and 45 as requiring Plaintiff in this case to retain yet another blockchain/cryptocurrency "expert" to recreate some of the analysis conducted by Alix in the course of its engagement. But, such a blatant waste of resources and time does not constitute the "just, speedy, and inexpensive determination" that best serves all concerned parties in this case. FED. R. CIV. P. 1.

Plaintiff has taken care to request from Alix only those materials that might lead to identifying the John Doe defendant while the information is still relatively fresh. Even as a non-party, Alix should be ordered to provide the information requested in the Subpoena so that Plaintiff may advance its case. To the extent this Court finds any of Alix's arguments compelling, the most prudent and fairest resolution is not to quash the Subpoena, but to modify the subpoena as needed to mitigate whatever undue burden this Court determines Alix might suffer, while still giving Plaintiff the opportunity to review this vital research expediently and inexpensively.

### IV. Plaintiff's Subpoena does not warrant monetary sanctions under Rule 45(d)(1).

15

Alix's fourth and final objection to Plaintiff's subpoena is not really an objection at all; it is a cash grab that simply reiterates prior objections. Alix contends that this Court has but two options it "must" choose between to resolve Alix's Motion to Quash: (1) order Plaintiff to pay Alix's attorneys' fees for filing the Motion to Quash; or (2) order Plaintiff to pay Alix and its attorneys for complying with the subpoena. [Doc. No. 71, at 13]. In purporting to so limit the Court's options, Alix has neglected to specify the actual cost of its production. As described above, this is likely because Alix does not know what those costs are since it has not undertaken even a minimal effort to identify responsive materials in its possession—irrespective of whether producing such materials is objectionable or not, or if doing so would be expensive.

Further, to the extent this Court determines Alix might deserve compensation under Rule 45, such compensation should be offset by Alix's failure to mitigate (if not cause outright) the parties to incur expenses associated with its Motion to Quash and this opposition. Specifically, Alix's refusal to produce even a single document, or a privilege log, has increased the time and resources expended by Alix, Plaintiff, and the Court—all of which Alix necessitated. Alix's own strategic decisions have also forced Plaintiff to argue its Opposition without having even the vaguest understanding of the documents at issue, thus increasing the cost to Plaintiff. Therefore, Alix should not be entitled to compensation or sanctions arising out of the motion practice for which it is responsible.

Plaintiff's narrowly crafted subpoena requests information authorized by this Court, and it does not violate Rule 45. Awarding Alix sanctions or costs would be improper in these circumstances where Alix has already been paid by SingularDTV to gather and produce the very same materials.

## CONCLUSION

This lawsuit seeks compensation for a cyberattack on Plaintiff—a cyberattack that Kobre & Kim and AlixPartners investigated on behalf of SinularDTV. The information they possess is not only relevant, but it is likely critical to Plaintiff's identification of the *John Doe* defendant in this case. The *LeBeau* action stems from independent facts, seeks independent relief, and refers to independent causes of action. Overlap between the two lawsuits is minimal. Further those minimal commonalities do not insulate Alix from the requirements set forth in Rule 45 that it comply with the Subpoena. Plaintiff has demonstrated a substantial need for the responsive work product that Alix possesses (and generated for the use and benefit of Plaintiff). Even with preferential treatment that subpoenaed non-parties enjoy, Alix has failed to raise any legitimate objection to Plaintiff's Subpoena or any legal grounds adequate to justify depriving Plaintiff of highly relevant information.

For the foregoing reasons, this Court should deny Alix's Motion to Quash and compel production of relevant materials known to be in Alix's possession.

    Respectfully submitted,

    MORRISON TENENBAUM PLLC

    By: /s/ Jerald Tenenbaum
        Jerald M. Tenebaum, Esq.

    87 Walker Street, Floor 2
    New York, NY 10013
    Tel: (212) 620-0938
    jerald@m-t-law.com
    *Attorney for Plaintiff*