UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SINGULARDTV, GMBH,<br><br>                              Plaintiff,<br><br>     v.<br><br>JOHN DOE,<br><br>                              Defendant. | Case No. 1:21-cv-06000 (VEC) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO QUASH RULE 45 SUBPOENA

 

KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

Josef M. Klazen
Benjamin J. Sauter
Calvin K. Koo
Victor S. Leung
*Attorneys for Non-Party Kobre & Kim*

1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 4

I. THE REQUESTED EXPEDITED DISCOVERY FAILS THE RELEVANT STANDARDS ................................................................................................................ 4

    A. The Subpoena Seeks Documents Already in Plaintiff's Possession ............................ 5

    B. The Subpoena Seeks Unjustifiably Broad Discovery ..................................................... 6

II. THE OPPOSITION FAILS TO OVERCOME ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTIONS ............................................ 7

III. KOBRE & KIM SHOULD NOT BE COMPELLED TO PRODUCE DOCUMENTS ................................................................................................................ 10

IV. THE COURT SHOULD AWARD COSTS TO KOBRE & KIM ................................ 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Arista Records LLC v. Doe*,
  604 F.3d 110 (2d Cir. 2010) .................................................................................................. 6

*Ayyash v. Bank Al-Madina*,
  233 F.R.D. 325 (S.D.N.Y. 2005) ........................................................................................... 5

*Carte balance (Singapore) PTE., Ltd. v. Diners Club Int'l Inc.*,
  130 F.R.D. 28 (S.D.N.Y. 1990) ............................................................................................. 8

*Grand River Enterprises Six Nations, Ltd. v. King*,
  No. 02 CIV.5068(JFK), 2009 WL 63461 (S.D.N.Y. Jan. 12, 2009) ...................................... 9

*Levy v. Young Adult Institute, Inc.*,
  No. 13-CV-2861 JPO, 2015 WL 170442 (S.D.N.Y. Jan. 13, 2015) ...................................... 5

*Lorber v. Winston*,
  No. 12-CV-3571 ADS, 2012 WL 5989464 (E.D.N.Y. Nov. 29, 2012) ................................. 6

*Malibu Media, LLC v. Doe*,
  No. CV 14-4808 (JS)(SIL), 2016 WL 4574677 (E.D.N.Y. Sept. 1, 2016) ............................ 6

*N. Atl. Operating Co. v. Evergreen Distributors, LLC*,
  293 F.R.D. 363 (E.D.N.Y. 2013) ...................................................................................... 4, 5

*New York v. Mountain Tobacco Co.*,
  953 F. Supp. 2d 385 (E.D.N.Y. 2013) ................................................................................... 6

*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y. 1982) ............................................................................................. 1

*Sony Music Ent. Inc. v. Does 1-40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004) ................................................................................... 6

*Strike 3 Holdings, LLC v. Doe*,
  329 F.R.D. 518 (S.D.N.Y. 2019) ................................................................................. 6, 7, 10

*United States v. Philip Morris, Inc.*,
  347 F.3d 951 (D.C. Cir. 2003) ............................................................................................... 9

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ................................................................................................................ 8

*Wultz v. Bank of China Ltd.*,
    61 F. Supp. 3d 272 (S.D.N.Y. 2013) ........................................................................................ 8

Non-party Kobre & Kim LLP ("Kobre & Kim"), counsel to SingularDTV GmbH ("SingularDTV" or the "Company"), including in connection with other litigation before this Court,[1] respectfully submits this reply in further support of its motion to quash (the "Motion") (Dkt. 60, 64) the Information Subpoena served on Kobre & Kim on May 16, 2022 (the "Subpoena").[2]

## PRELIMINARY STATEMENT

Morrison Tenenbaum's Opposition ("Opposition") to Kobre & Kim's Motion confirms that the Subpoena is nothing more than an attempt by Zachary LeBeau and Kimberly Jackson (together the "Instructing Party") through their instructed lawyers Morrison Tenenbaum to impose costs on the Company from which they were removed and to forcibly extract through Kobre & Kim documents covered by attorney-client privilege and work product protections.

Rule 26(d)(1) of the Federal Rules of Civil Procedure prohibits discovery from any source before the parties to the action have conferred under Rule 26(f). Expedited discovery ahead of a Rule 26(f) conference is granted only upon a standard of good cause and reasonableness, or upon satisfaction of the four-factor test set forth in *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). Moreover, in the John Doe context, courts limit expedited discovery ahead of service to information necessary to effectuate service (e.g., the defendant's name and address), which Kobre & Kim does not have or know. Here, Morrison Tenenbaum fails to show good cause for expedited discovery and fails to satisfy the *Notaro* test. Morrison Tenenbaum does not even contend with the fact that the Subpoena expressly asks for information protected by the attorney-client privilege; nor does it come close to meeting the high standard for seeking discovery of attorney work product.

---

[1] *SingularDTV GmbH v. LeBeau, et al.,* No. 1:21-cv-10130 (VEC) (the "LeBeau Action").
[2] As explained in a Letter to the Court dated June 13, 2022 (Dkt. 58 at 2; Dkt. 58-2), Morrison Tenenbaum electronically served the Subpoena on Kobre & Kim on May 16, 2022.

1

The Subpoena is thus a wasteful exercise at best (as the Company already has its own documents), and an abuse of the expedited discovery process and invasion of attorney-client privilege at worst. The Subpoena should be quashed.[3]

Although Morrison Tenenbaum repeatedly concludes that the information sought from Kobre & Kim is "critical", "necessary," and "vital," such that there is a "substantial need" for it, Morrison Tenenbaum fails to identify any specific information that it believes Kobre & Kim has that would be critical, necessary, or vital to pursue the John Doe case. As Kobre & Kim has explained, the transactions that resulted from the alleged hack which the firm reviewed through its retained litigation consultant and expert are publicly viewable on the blockchain (Dkt. 60 at 2), and the results of that review have been publicly filed in this action in the declaration of Kevin Madura (Dkt. 26) (the "Madura Declaration"). Tellingly, Morrison Tenenbaum does not acknowledge the Madura Declaration let alone explain why it still needs information from Kobre & Kim to identify the John Doe defendant—especially since Kobre & Kim does not have any information identifying the John Doe defendant. (Dkt. 61 at ¶ 7.)

Also telling is the fact that the Opposition makes no mention of any investigative efforts having been directed at LeBeau himself, notwithstanding that the Madura Declaration suggests his potential involvement in the hack. (Dkt. 26 at 8-12.) While the Opposition tries to minimize this (Dkt. 64 at 14), Mr. Madura's analysis remarkably shows that the SNGJ tokens allegedly transferred out of the Cold Wallet as part of the same alleged hack as the SNGLS tokens (Dkt. 1

---

[3] To rule on this motion to quash, the Court does not have to decide whether Morrison Tenenbaum has authority to represent SingularDTV, although SingularDTV has made it clear that Morrison Tenenbaum does not have such authority. (Dkt. 14 at ¶¶ 7-8; Dkt. 36 at 2; Dkt. 61 at ¶ 10; Dkt. 61-1.) However, we again note our strong disagreement with Morrison Tenenbaum's repeated assertion that because Kobre & Kim, on behalf of SingularDTV, withdrew its motion to intervene in this action, SingularDTV somehow consented to Morrison Tenenbaum's representation of the Company—it did not. Nor would it be up to *Kobre & Kim* to consent to Morrison Tenenbaum's representation of the Company (*see* Dkt. 64 at 4-6), which in any event Kobre & Kim has not done.

at ¶ 9) ended up at an address belonging to a company (GazeTV Deployer) whose affiliate (GazeTV Foundation) was co-founded by LeBeau; and that an equivalent amount of SNGJ tokens was then returned to the Cold Wallet which, by his own admission, was under LeBeau's control at the time. (Dkt. 26, ¶¶ 22-24, 28). The Opposition and the Declaration of Jerald Tenenbaum ("Tenenbaum Declaration") never mention the SNGJ tokens (Dkt. 64 at 1; Dkt. 65 at ¶ 5) and say nothing about what investigation of LeBeau has been conducted—presumably because there has been none.[4]

The Opposition also cannot avoid and does not even attempt to address the fact that SingularDTV, whom Morrison Tenenbaum claims to represent, already has the documents requested by the Subpoena. This, of course, makes the Subpoena entirely unnecessary and improper. It is thus clear that Morrison Tenenbaum is seeking the documents for *its own* use. For example, at one point Morrison Tenenbaum writes in its Opposition:

> SingularDTV has conducted an extensive investigation into the hacking incident at Plaintiff's cost and expense. Regardless of who signed the checks, the raw information and conclusions of that investigation should be turned over to Morrison Tenenbaum as demanded in the Subpoena for *our* use and evaluation. (Dkt. 64 at 15-16 (emphasis added).)

In those two sentences, Morrison Tenenbaum confirms both that (i) SingularDTV already possesses the information and conclusions of its analysis of the hack, and (ii) Morrison Tenenbaum is demanding the information for *its own* use, i.e. not for the use of its purported client.[5] Indeed,

---

[4] Although Morrison Tenenbaum initially asked the Court for permission to subpoena LeBeau—its own client—it thereafter dropped that request. (Dkt. 40.)

[5] While Morrison Tenenbaum claims that Kobre & Kim conducted an "extensive investigation" into the alleged hack, in fact Kobre & Kim only analyzed certain transactions that are recorded on the blockchain and then publicly filed the results of that review. (*See* Dkt. 60 at 2.) The Opposition also refers to a purported internal investigation by the Company's Dissolution Committee, citing board minutes dated May 27, 2021 (Dkt. 64 at 19), but whatever work that Committee might have done (and Kobre & Kim is not aware of any) it was not part of Kobre & Kim's analysis, which commenced only in October 2021 when it retained the expert AlixPartners. Dkt. 61 ¶ 4.

3

elsewhere Morrison Tenenbaum writes that "***Morrison Tenenbaum*** has demonstrated a substantial need for the requested information and documents" and that it would be wrong to conclude that "the results of [Kobre & Kim's] investigation will not further ***our*** investigation." Dkt. 64 at 3 (emphasis added); *accord* Dkt. 64 at 14-15 (referring to "the investigation of Morrison Tenenbaum"). These statements underscore that the Subpoena was not issued for the benefit of Morrison Tenenbaum's purported client, SingularDTV—who, in any event, already has access to Kobre & Kim's documents—but solely for the improper use of Morrison Tenenbaum and presumably its Instructing Party (who are not parties to this case).

## ARGUMENT

As set out in the Motion, the Subpoena is improper for at least two independent reasons: the Instructing Party fails to meet the relevant thresholds for expedited discovery and, even assuming it could meet those requirements, it has not, because it cannot, justify overcoming attorney-client privilege and work product protections in this matter.

**I.     THE REQUESTED EXPEDITED DISCOVERY FAILS THE RELEVANT STANDARDS**

The Motion and Opposition agree that there are two (sometimes blended) standards for expedited discovery in this Circuit: one that refers to good cause and reasonableness, and another that applies *Notaro's* four factors. *N. Atl. Operating Co. v. Evergreen Distributors, LLC*, 293 F.R.D. 363, 368 (E.D.N.Y. 2013). As detailed in the Motion, under any of those approaches, the Instructing Party fails; but we respectfully submit that where, as here, concerns regarding potential abuse of the pre-service discovery process are present, *Notaro's* four factors are particularly apt for analyzing whether expedited discovery is appropriate.

Contrary to the Opposition's claim, courts in this Circuit have continued to apply *Notaro* even after *Ayyash v. Bank Al-Madina*, which is inapposite to this Motion because *Ayyash* involved

4

the imminent risk of foreign defendants hiding assets. *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 327 (S.D.N.Y. 2005); *Levy v. Young Adult Institute, Inc.*, No. 13-CV-2861 JPO, 2015 WL 170442, at *6 (S.D.N.Y. Jan. 13, 2015) (analyzing both standards); *N. Atl. Operating Co.*, 293 F.R.D. at 367 (blended analysis). This Court itself has applied the same four factors to a reasonableness and good cause assessment of the Company's expedited discovery motion in the LeBeau Action. (LeBeau Action, Dkt. 88.)

As demonstrated in Kobre & Kim's opening brief, the Instructing Party falls short under either standard, because it seeks documents already in SingularDTV's possession and seeks impermissibly broad discovery.

### A. The Subpoena Seeks Documents Already in Plaintiff's Possession

The Opposition fails to overcome the fact that the Plaintiff—SingularDTV—already has access to the requested documents, either by itself or through its counsel, Kobre & Kim. The Opposition therefore cannot explain what substantial need SingularDTV has for requesting expedited discovery. Although Morrison Tenenbaum provides some context for why it, LeBeau and Jackson may not have access to those documents and why they prefer not to conduct their own investigation of public blockchain information, this has no bearing on why SingularDTV, as the purported Plaintiff issuing the subpoena, needs to subpoena the requested documents.

To avoid this conclusion, Morrison Tenenbaum attempts to position itself as Kobre & Kim's co-counsel for SingularDTV and suggests that Kobre & Kim should be forced to turn over documents to Morrison Tenenbaum. But even if that were true, which it is not, they cite no authority that one co-counsel is entitled to subpoena documents from another co-counsel, particularly when the documents are privileged and/or work product and the client itself objects to the exchange of documents. As discussed in the Motion and above at footnote 3, SingularDTV denies Morrison Tenenbaum's purported representation, both now and at the time of the

withdrawal of the Motion to Intervene. The Opposition alleges that "by abandoning its Motion to Intervene, Movant has ceded all authority to serve as counsel for Plaintiff . . . ." (Dkt. 64 at 6). This confuses the issues and is nonsensical: first, Kobre & Kim did not withdraw the Motion to Intervene; SingularDTV did for economic reasons. Second, only SingularDTV can decide who its counsel is, and it has been unequivocal that it is not Morrison Tenenbaum. (Dkt. 36 at 2; Dkt. 61 at ¶ 10; Dkt. 61-1.) The lone authority the Instructing Party cites, *Lorber v. Winston*, No. 12-CV-3571 ADS, 2012 WL 5989464 (E.D.N.Y. Nov. 29, 2012), involves disqualified counsel turning documents over to successor counsel. Kobre & Kim remains SingularDTV's counsel and so *Lorber* is inapposite.

### B. The Subpoena Seeks Unjustifiably Broad Discovery

Moreover, under either standard, expedited discovery in John Doe actions does not allow broad requests that are not sufficiently specific to establish the identity of the John Doe defendant. (Dkt. 60 at 7-8.) The cases relied upon by the Opposition on this point are either inapposite to the present circumstances or support the Motion because they involve expedited discovery for jurisdictional purposes, or otherwise accord with the narrow discovery permitted in John Doe actions such as in *Strike 3 Holdings, LLC v. Doe*, 329 F.R.D. 518, 521 (S.D.N.Y. 2019) (limiting discovery to only the name and address of the John Doe defendant to effectuate service).[6]

---

[6] *See also* S*ony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004) ("Plaintiffs' discovery request is also *sufficiently specific* to establish a r*easonable likelihood* that the discovery request would lead to identifying information. . . . Plaintiffs seek identifying information about *particular Cablevision subscribers*, based on . . . *specific times and dates* . . . . Such information *will enable plaintiffs to serve process on defendants*.") (emphasis added) (citation omitted); *Arista Records LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010) ("identifying information was unavailable through alternative means"); *Malibu Media, LLC v. Doe*, No. CV 14-4808 (JS)(SIL), 2016 WL 4574677 (E.D.N.Y. Sept. 1, 2016) (request limited to customer information from internet service provider); *Sony Music Ent. Inc.*, 326 F. Supp. 2d 556 (same); *cf. New York v. Mountain Tobacco Co.*, 953 F. Supp. 2d 385 (E.D.N.Y. 2013) (allowing expedited discovery between parties on threshold personal jurisdiction issues ahead of imminent evidentiary hearing).

The Opposition recognizes, as it must, that to subpoena third party information in a John Doe action, the request must be "carefully limited." (Dkt. 64 at 15.) But the Subpoena, on its face, sweeps far more broadly than suggested in the Opposition. For example, paragraph 9 of the Tenenbaum Declaration (Dkt. 65) says "[e]ach Subpoena requests production of specific communications and documentation related to the hacking incident described in the Complaint." This is false. The Subpoena seeks "[a]ll Documents" and "[a]ll Communications" rather than identifying any specific document or communication. (Dkt. 61-2 at PDF p. 11.) Further, while the Subpoena seeks documents and communications relating to the "Alleged Hack" and "Cyber Incident," the definition of "Cyber Incident" goes far beyond the alleged hack that is the subject of the Complaint against John Doe; it seeks information about *any* "vulnerability" in information or communication systems used by the Company that "could be exploited by a threat source." (Dkt. 61-2 at PDF p. 9 (Definition #4)).

Thus, the requests for information are far from the type of "specific" requests for information to identify the John Doe defendant that are appropriate here and do not accord with *Strike 3 Holdings, LLC*, 329 F.R.D. at 520. And to reiterate: Kobre & Kim is not aware of the John Doe defendant's identity; its communications and work product produced with AlixPartners do not identify the John Doe defendant; and its analysis of blockchain information does not identify the John Doe defendant and is in any event publicly available. (*See* Dkt. 60 at 12.)

### II. THE OPPOSITION FAILS TO OVERCOME ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTIONS

Independent of the Instructing Party's failure to meet any relevant expedited discovery standard, the Motion should be granted because the Opposition cannot justify requesting attorney-client privileged and work product documents.

7

The Opposition claims that it is entitled to Kobre & Kim's privileged documents because they are not "actionable" and because there is only "potential" for misuse (Dkt. 64 at 13.) It is not entirely clear what the Opposition means by "actionable," and it notably fails to cite any precedent that there is such a standard for privileged communications or work product to be protected. Indeed, the protections afforded by attorney-client privilege do not depend on any showing beyond the communication being between an attorney and client for the purposes of seeking legal advice. *See generally Upjohn Co. v. United States*, 449 U.S. 383 (1981). The Opposition entirely ignores the absolute privilege over attorney-client communications which does not depend on any showing of undue hardship. *See Wultz v. Bank of China Ltd.*, 61 F. Supp. 3d 272, 283 (S.D.N.Y. 2013) (quoting *Carte balance (Singapore) PTE., Ltd. v. Diners Club Int'l Inc.*, 130 F.R.D. 28, 32 (S.D.N.Y. 1990)). The Subpoena requests attorney-client communications such as "All Communications with SingularDTV GmbH" and "All internal Communications of Kobre & Kim concerning any investigation." (Dkt. 61 at ¶ 11, Ex. 2 at PDF p. 11.) As such, the Court should quash the Subpoena under Rule 45(3)(A)(iii).[7]

Regarding its request for work product, the Instructing Party claims a substantial need and undue hardship. But the Instructing Party fails to establish why it has a substantial need or undue hardship necessitating production of Kobre & Kim work product to Morrison Tenenbaum in these circumstances.[8] As detailed in the Motion and above, there is no substantial need for the Plaintiff (i.e., the Company) to subpoena these documents because it already possesses or has access to

---

[7] The Opposition also makes unfounded assertions that LeBeau has been effectively exculpated of any responsibility for the hacking incident. (Dkt. 64 at 13-14.) But there has been no final determination about LeBeau's involvement, particularly since he appears to have helped cause and personally benefited from it, as discussed in the Motion and Madura Declaration. (Dkt. 60 at 2, 4-5; Dkt. 26 at 12.)

[8] Kobre & Kim also has an ethical duty to prevent disclosure of privileged material, especially to parties who could abuse such material to SingularDTV's detriment. That risk exists here, as LeBeau and Jackson remain adverse to SingularDTV in the LeBeau Action and other pending actions in Switzerland.

8

them. There is also no undue hardship where the Instructing Party can leverage the information provided in the Madura Declaration and analyze public blockchain information themselves. Morrison Tenenbaum, LeBeau and Jackson may feel *they* "need" these documents and prefer not to pursue their own blockchain analysis—but these are mere wishes and preferences, which fall far short of the high bar for overcoming work product protections.

Even though confidentiality agreements and orders are meant to preserve the confidentiality of *non-privileged* documents exchanged during discovery, the Instructing Party suggests that a confidentiality agreement would be a potential work-around for *privileged* documents. The Opposition, however, does not explain how SingularDTV could or should enter into a confidentiality agreement with itself (as its absurd suggestion would require an agreement between SingularDTV, whom Morrison Tenenbaum claims to represent against its wishes, and SingularDTV, whom Kobre & Kim indisputably represents). Moreover, the Opposition claims it is the *Movant's* (*i.e.*, Kobre & Kim's) "concern that LeBeau or Jackson could realize an unfair benefit in separate litigations." (Dkt. 64 at 15.) But it is *SingularDTV* that has this concern as well as the right to not be represented by, and thus to not furnish information to, counsel that is concurrently representing parties against whom it is directly adverse. A confidentiality agreement with use restrictions does nothing to prevent the counsel receiving privileged communications and work product from having a direct view into an adverse party's legal analysis, thoughts and strategies. This is precisely what the work product protection guards against.[9]

---

[9] The Opposition also seeks production of a privilege log without recognizing that privilege logs are not required while objections are pending. *Grand River Enterprises Six Nations, Ltd. v. King*, No. 02 CIV.5068(JFK), 2009 WL 63461, at *3 (S.D.N.Y. Jan. 12, 2009) ("Defendants did not have to complete their privilege logs while this objection was pending") citing *United States v. Philip Morris, Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) ("[I]f a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections."). Moreover, there is an unjustifiable burden and cost to produce a privilege log in circumstances like this where the Subpoenas request privileged

9

## III. KOBRE & KIM SHOULD NOT BE COMPELLED TO PRODUCE DOCUMENTS

The Opposition's request that the Court compel the production of documents under Rule 26 is entirely misguided.[10] Rule 26(d)(1) "forbids a party from seeking discovery from any source before the parties have conferred as required by Rule 26(f)." *Strike 3 Holdings. LLC*, 329 F.R.D. at 520. The only relevant inquiry is the analysis for expedited discovery discussed above. The Opposition's arguments focus on the inquiry applicable to discovery from parties under Rule 26 after service and a Rule 26(f) conference. Where no defendant has been identified, much less served, the standard applicable to expedited discovery from non-parties is the stringent standard discussed above.

## IV. THE COURT SHOULD AWARD COSTS TO KOBRE & KIM

Finally, given the Instructing Party's failure to adhere to Rule 45, and to reduce the significant financial burden incurred in opposing the Subpoena, we respectfully submit that it is appropriate for the Court to order the Instructing Party to pay costs and fees associated with opposing the Subpoena, including but not limited to the Responses and Objections dated May 31, 2022, and the briefing in this matter.

### CONCLUSION

For the foregoing reasons, Kobre & Kim respectfully requests that the Court grant its Motion and request for legal fees and costs arising from opposing the Subpoena.

---

and work product information and there is a pending Motion based in part on privilege and work product issues.

[10] The briefing schedule approved by this Court (Dkt. 63) contemplated the possibility of the Instructing Party filing a cross-motion, in which case the Instructing Party's reply would be due July 21, 2022. Because the Instructing Party did not file a Cross-Motion, no reply should be filed.

Dated: New York, New York

July 14, 2022

                                                    Respectfully submitted,

                                                    /s/ Josef M. Klazen
                                                    Josef M. Klazen
                                                    Benjamin J. Sauter
                                                    Calvin K. Koo
                                                    Victor S. Leung
                                                    KOBRE & KIM LLP
                                                    800 Third Avenue
                                                    New York, NY 10022
                                                    Telephone: (212) 488-1200
                                                    Facsimile: (212) 488-1220