USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/26/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
SINGULARDTV, GmbH,                                          :
                                                            :
                                    Plaintiff,              :
                    -against-                               :
                                                            :     21-CV-6000 (VEC)
JOHN DOE,                                                   :
                                                            :     ORDER
                                    Defendant.              :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

      Plaintiff SingularDTV, GmbH ("SingularDTV"), has sued an as-yet-unidentified person, John Doe ("Doe"), under the Computer Fraud and Abuse Act and the Racketeer Influenced and Corrupt Organizations Act[1] for allegedly impersonating one of its shareholders through a fraudulent e-mail address and directing the shareholder's cryptocurrency settlement payment, worth about $2 million, to Doe's cryptocurrency wallet. *See generally* Compl., Dkt 1. Third parties Kobre & Kim LLP ("Kobre & Kim") and AlixPartners LLP ("AlixPartners") (together, the "Third Parties") have moved to quash subpoenas that Plaintiff served on them, purportedly to discover Defendant's identity (the "Third-Party Subpoenas"). *See* Kobre & Kim Not. of Mot., Dkt. 59; AlixPartners Not. of Mot., Dkt. 69. Plaintiff has also sought leave to serve another third-party subpoena on one of its own shareholders. *See* Pl. Third Letter Mot., Dkt. 78. For the following reasons, the Third Parties' motions to quash are GRANTED, and Plaintiff's request for leave to serve another third-party subpoena is DENIED.

---

[1]     Plaintiff has also asserted common law claims of conversion, fraud in the inducement, and unjust enrichment against Defendant. *See generally* Compl., Dkt. 1.

1

## BACKGROUND

SingularDTV is a Swiss company that uses blockchain technology to enable the distribution of entertainment and film content and that has itself issued a cryptocurrency that relies on blockchain technology.  Compl. ¶ 7.  In or about February 2019, two of its shareholders, Joseph Lubin ("Lubin") and Zach LeBeau ("LeBeau"), proposed a settlement agreement with its third shareholder, Arie Levy-Cohen ("Levy-Cohen"), pursuant to which Levy-Cohen would receive about $2 million in cryptocurrency in exchange for relinquishing his interest in the company.  *Id.* ¶ 9.

Although it appeared that Levy-Cohen returned the executed settlement agreement via a Google LLC ("Google") e-mail address and directed the settlement payment to a cryptocurrency wallet that belonged to him, Levy-Cohen informed SingularDTV after the settlement payment had been wired that, in fact, he had not signed the settlement agreement and that he was not associated with the e-mail account that had orchestrated the cryptocurrency transfer.  *Id.* ¶¶ 11–19.[2]  The settlement payment was eventually transferred to Binance Holdings Limited ("Binance"), a global cryptocurrency exchange.  *Id.* ¶ 15.

Shortly after bringing this action on July 13, 2021, *see* Compl., Plaintiff was granted leave by the Court to conduct expedited discovery pursuant to Federal Rule of Civil Procedure 26(d)(1) by serving Rule 45 subpoenas on Google and Binance.  *See* Dkt. 7.[3]

---

[2]     Ironically, Plaintiff was accused of impersonating SingularDTV in a later-withdrawn motion to intervene filed by Kobre & Kim, which represents SingularDTV in other matters.  *See* Dkts. 11–15, 35–36, 39.  The Court need not address which law firm actually has the authority to represent SingularDTV to resolve the motions at issue.  It is interesting to note, however, that Plaintiff's brief in response to the Third Parties' motions to quash reads as though the Plaintiff in this action is the law firm Morrison Tenenbaum, PLLC ("Morrison Tenenbaum") rather than SingularDTV.  *See, e.g.*, Pl. Mem. in Opp., Dkt. 64, at 2, 3 ("Morrison Tenenbaum is not in possession of the information"; "Morrison Tenenbaum has demonstrated a substantial need for the requested information . . . .").

[3]     The Court ordered the Google subpoena "to obtain information to identify . . . Doe, specifically her or his true name and recovery e-mail(s) and phone number(s)" associated with the fraudulent e-mail address.  *See* Dkt. 7 at

On September 29, 2021, Google produced information about the unknown e-mail account holder, including Doe's "Terms of Service IP" address and "Recovery SMS" number. *See* Dkt. 9.[4]

On April 20, 2022, Plaintiff requested permission to issue three more third-party subpoenas, purportedly as part of its effort to identify Doe. *See* Pl. First Letter Mot., Dkt. 40; *see also* Pl. Second Letter Mot., Dkt. 42.[5] Plaintiff specifically asked to subpoena (1) Kevin Madura ("Madura"), the Senior Vice President in AlixPartners' global cryptocurrency practice group; (2) Kobre & Kim, a law firm representing SingularDTV in other matters; and (3) Patrik Allenspach ("Allenspach"), a SingularDTV representative. Pl. Second Letter Mot. at 2–4.

With respect to Madura, Plaintiff stated that Madura had been hired by SingularDTV as an expert in a separate lawsuit that referenced the hack that is at issue in this lawsuit (the "LeBeau Lawsuit"),[6] and that Madura had helped Kobre & Kim investigate the alleged hacking incident. *Id.* at 3. Plaintiff conceded that Madura had "concluded that . . . LeBeau was involved with the hacking incident," but opined that there was likely evidence that pointed to others that had not been disclosed. *Id.* Plaintiff stated that it was seeking documents and communications regarding SingularDTV's engagement of AlixPartners and its investigative process and findings in connection with the alleged hacking incident. *Id.* With respect to Kobre & Kim, Plaintiff

---

2. The Court ordered the Binance subpoena "to obtain information to identify and locate the wallet addresses of current [cryptocurrency] holders." *Id.*

[4]   On November 15, 2021, Plaintiff advised the Court that Binance was not cooperating with its subpoena. *See* Dkt. 10. Since then, Binance's posture has changed, and it is now assisting Plaintiff with its investigation. *See* Dkt. 55 at 2.

[5]   Plaintiff initially requested leave to serve these subpoenas through a letter motion which provided minimal information about the nature of and need for its request, *see* Pl. First Letter Mot., Dkt. 40, and provided further information on May 17, 2022 in response to a Court order, *see* Pl. Second Letter Mot., Dkt. 42.

[6]   That lawsuit, *SingularDTV GmbH v. LeBeau*, No. 21-CV-10130 (VEC) (S.D.N.Y. filed Nov. 29, 2021), has since been dismissed on *forum non conveniens* grounds. *See id.* Dkts. 126, 134.

3

stated that "any document[] demands would be strictly limited to communications, transmittals and documents related to its investigation of the hacking incident." *Id.* With respect to Allenspach, Plaintiff asserted that Allenspach had co-chaired a committee that had worked with forensic authorities regarding Doe's alleged conduct, and that Allenspach "should be compelled to provide all information in his possession related to the hacking incident."[7] *Id.* at 4. Plaintiff also stated that it sought documents and communications related to negotiations with Levy-Cohen and communications between SingularDTV and certain individuals "solely to the extent related to the hacking incident and subsequent investigations." *Id.*[8]

On May 9, 2022, the Court allowed Plaintiff to serve Rule 45 subpoenas on Madura, Kobre & Kim, and Allenspach "for the documents described in its letter request," but ordered that the subpoenaed parties would have 30 days from the date of service to move to quash the subpoenas. Dkt. 48. Plaintiff then served subpoenas on Kobre & Kim, *see* Dkt. 61-2 (the "Kobre & Kim Subpoena"), Allenspach, *see* Dkt. 61 at 3–4, and Madura and AlixPartners, *see* Dkt. 70-1 (the "AlixPartners Subpoena").

On June 7, 2022, Plaintiff informed the Court that Binance was cooperating with its subpoena and that it anticipated that Binance would be a "valuable partner in assisting Plaintiff to root out the perpetrator of the hacking incident." Dkt. 55 at 2.

Following Plaintiff's disagreement with Allenspach's counsel over how to serve document requests on Allenspach (he is located in Switzerland), *see* Dkts. 55, 58, Plaintiff requested permission from the Court to serve a third-party subpoena on Lubin instead, *see* Pl.

---

[7] Plaintiff represented that this same information could also be obtained from Lubin, who had co-chaired the committee with Allenspach. *See* Pl. Second Letter Mot. at 4.

[8] Plaintiff asserted that subpoenas targeting information in SingularDTV's possession were necessary because an "opposing faction" of the company had "frozen the faction represented by [Morrison Tenenbaum] out of all company matters." Pl. Second Letter Mot. at 2. The Court need not address this accusation to resolve the motions at issue.

Third Letter Mot.; Pl. Fourth Letter Mot., Dkt. 79; Pl. Fifth Letter Mot., Dkt. 82; Pl. Sixth Letter Mot., Dkt. 84; Pl. Seventh Letter Mot., Dkt. 86.[9]  Kobre & Kim, although not representing Lubin, opposed the request.  *See* Dkts. 80, 83, 85, 87.

## DISCUSSION

### I. Legal Standard

When determining whether to grant expedited discovery, courts in this District apply a "flexible standard of reasonableness and good cause. . . ." *Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (internal quotation marks and citations omitted).[10]  In cases involving John Doe defendants, courts routinely "have found good cause for expedited discovery to determine the identity of [such] defendants where the plaintiff has stated a prima facie case and is unable to identify the defendants without a court-ordered subpoena." *AdMarketplace, Inc. v. Tee Support, Inc.*, No. 13-CV-5635 (LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) (collecting cases).

Courts have generally only granted expedited discovery requests to identify John Doe defendants, however, where a plaintiff asked for no more information than "[was] necessary to identify and serve the [d]efendant," *Strike 3 Holdings, LLC v. Doe*, 329 F.R.D. 518, 521 (S.D.N.Y. 2019), *see also Malibu Media, LLC v. Doe No.4*, 12-CV-2950 (JPO), 2012 WL 5987854, at *3 (S.D.N.Y. Nov. 30, 2012), and where a plaintiff established that "it lack[ed] the

---

[9]  Plaintiff is ordered to stop requesting permission from the Court to serve third-party subpoenas through half-baked letter motions.  Henceforth, any request for expedited discovery should be made through a formal notice of motion, memorandum of law, and supporting affidavits and exhibits.  *See* S.D.N.Y. Local Rule 7.1(a).

[10]  Kobre & Kim urges the Court to apply the four-part test articulated in *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982), Kobre & Kim Mem. in Supp. of Mot., Dkt. 60, at 11, but that test has fallen out of favor in this Circuit in recent years, *see In re Keurig Green Mountain Single-serve Coffee Antitrust Litig.*, 14-MD-2542 (VSB), 2014 WL 12959675, at *1 (S.D.N.Y. July 23, 2014) (collecting cases), and was designed to address factual circumstances not present here, *see Notaro*, 95 F.R.D. at 404–05 (addressing plaintiffs' request to take defendant's deposition within thirty days of filing the action to support a permanent injunction).

means to obtain the [defendant's] identifying information" other than by the subpoena at issue, *John Wiley & Sons, Inc. v Doe Nos. 1-30*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012), *see also Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004). Courts have therefore denied expedited discovery where a plaintiff's subpoena "swe[pt] broadly" by seeking documents other than those concerning the identity and location of an unknown accountholder, *Pearson Educ., Inc. v. Doe*, No. 12-CV-4786 (BSJ) (KNF), 2012 WL 4832816, at *6 (S.D.N.Y. Oct. 1, 2012), or where a plaintiff merely offered a "self-serving conclusory assertion" that defendants' identities could only be uncovered by subpoenaing the third parties at issue, *Mizra v. Doe #1*, 20-CV-9877 (PGG) (KNF), 2021 WL 2581421, at *2 (S.D.N.Y. June 23, 2021).

## II. Plaintiff Is Not Entitled to Expedited Discovery

Kobre & Kim argues[11] that Plaintiff is not entitled to expedited discovery from the Third Parties because its subpoenas sweep too broadly and because Plaintiff has no basis for believing that Kobre & Kim or AlixPartners have publicly inaccessible records that would help identify Doe. *See* Kobre & Kim Mem. in Supp. of Mot., Dkt. 60, at 7–10.[12] In opposition, Plaintiff asserts that it sufficiently alleged a prima facie case against Doe, that it is "unable to identify Defendant without court[-]ordered subpoenas," and that its demands are "specific and narrowly tailored" to information regarding the alleged hacking incident. *See* Pl. Mem. in Opp., Dkt. 64, at 9–13.

---

[11] AlixPartners incorporates Kobre & Kim's arguments in favor of its motion to quash by reference. *See* AlixPartners Mem. in Supp. of Mot., Dkt. 71, at 2.

[12] Kobre & Kim also argues that Plaintiff's subpoena seeks documents that are within SingularDTV's control (and which should, therefore, already be accessible to SingularDTV's attorneys if they were actually bringing this action on SingularDTV's behalf); that Plaintiff already has the benefit of Madura's publicly filed declaration about Doe's conduct; and that Plaintiff's subpoena is an attempt to abuse discovery procedures by circuitously seeking privileged documents. *See* Kobre & Kim Mem. in Supp. of Mot. at 7–10.

The Court agrees with Kobre & Kim.[13] Although Plaintiff has alleged a prima facie cause of action against Doe, the Third-Party Subpoenas sweep much too broadly. Far from targeting information about Doe or even the alleged hacking incident, the Kobre & Kim Subpoena requests fourteen broad categories of documents "related to any Cyber Incidents, including without limitation the Alleged Hack," including all of Kobre & Kim's communications with SingularDTV; all of its internal communications "concerning any investigation"; and the names of all persons employed by Kobre & Kim who produced, reviewed, or analyzed documents, records, or information "concerning any investigation." Kobre & Kim Subpoena at 5, ¶¶ f, g, l.[14] The definitions make clear that limiting the requests to documents "related to any Cyber Incident" is virtually no limitation at all. "Cyber Incident" is defined as "the ALLEGED HACK and any other event occurring on or conducted through a computer network that actually or imminently jeopardized the integrity, confidentiality, or availability of information or communications systems, or information resident thereon, utilized by" SingularDTV. *Id.* at 3, ¶ 4. "Cyber Incident" also includes "a vulnerability in information or communications systems, system security procedures, internal controls, or implementations that could be exploited by a threat source that affect [sic] or control [sic] networks utilized by" SingularDTV. *Id.*

The AlixPartners Subpoena is more targeted at Doe's alleged hack than the Kobre & Kim Subpoena, but it also broadly requests documents, records, or information that SingularDTV provided to AlixPartners; documents, records, or information AlixPartners collected or created in

---

[13]     Because the Court finds that Plaintiff failed to establish good cause for expedited discovery from Kobre & Kim or AlixPartners, it need not address the Third Parties' other arguments in favor of quashing the Third-Party Subpoenas.

[14]     The only item in the Kobre & Kim Subpoena limited to the alleged hack seeks "[d]ocuments, records and information reviewed by Kobre & Kim to investigate the [a]lleged [h]ack." Kobre & Kim Subpoena, Dkt. 61-2, at 5, ¶ m. Even that request, however, is broad, and Plaintiff has failed to establish that it cannot identify Doe without subpoenaing Kobre & Kim, as further discussed *infra* Section II.

7

the course of evaluating "any declarations, transcripts and other pleadings or sworn statements" by certain current or former SingularDTV executives; and all communications between AlixPartners and SingularDTV.  *See* AlixPartners Subpoena at 5, ¶¶ c, f, j.

Such broad demands are not consistent with Plaintiff's letter requests to serve additional third-party subpoenas, *see* Pl. First Letter Mot., Pl. Second Letter Mot., and are not supported by caselaw regarding expedited discovery aimed at identifying Doe defendants, *see Pearson Educ., Inc.*, 2012 WL 4832816, at *6 (denying expedited discovery where plaintiffs asserted that their request for expedited discovery was "narrowly tailored to target only documents concerning the identity and location of the owner of the . . . accounts used in the infringing [conduct]" discussed in the complaint, but the subpoena that was served sought to discover "much more"); *Attkisson v. Holder*, 113 F. Supp. 3d 156, 164 (D.D.C. 2015) (denying expedited discovery where plaintiffs sought to identify "a broad range of individuals with knowledge not limited to the particular individuals plaintiffs intend[ed] to sue" and the proposed discovery was therefore "not at all narrowly tailored to discovering the identity of Doe defendants").

Plaintiff has also failed to establish that the Third-Party Subpoenas are necessary to identify Doe.  Plaintiff already received information about Doe from Google, is communicating about Doe with Binance, and has access to Madura's declaration discussing Doe's alleged hack.  *See* Dkts. 9, 55; Madura Decl., Dkt. 26.  It has failed entirely to explain why the Third-Party Subpoenas are necessary to identify Doe beyond asserting in a conclusory fashion that they are.  *See* Pl. Mem. in Opp. at 11–12.  Madura's declaration mentions a possible suspect, LeBeau, and provides the publicly-accessible data behind that conclusion, as well as screenshots of business records SingularDTV provided for his analysis.  *See generally* Madura Decl.  Plaintiff's submissions to the Court, however, do not mention any investigation into the only named suspect

8

in Madura's declaration. Nor does it discuss any effort to identify Doe through Madura's detailed, publicly-available analysis. Instead, Plaintiff merely speculates that Madura failed to identify the full range of possible culprits in his declaration. *See* Pl. Second Letter Mot. at 3. In short, it falls woefully short of establishing good cause. *See Mizra*, 2021 WL 2581421, at *2; *Malibu Media, LLC v. Doe*, No. 15-CV-1883 (LTS) (KNF), 2015 WL 1780965, at *3 (S.D.N.Y. Apr. 10, 2015) (denying expedited discovery where "plaintiff's conclusory, unsupported contention that no alternative means exist[ed] to obtain the defendant's identity except by serving a subpoena on [a third party], without more, d[id] not militate in favor of finding good cause" and noting that plaintiff's submissions were "devoid of any information describing what, if any, alternative means the plaintiff attempted to use to obtain the defendant's identity").

For the foregoing reasons, the Third Parties' motions to quash are GRANTED,[15] and Plaintiff's request to serve a third-party subpoena on Lubin is DENIED. The Clerk of Court is respectfully directed to close the open motions at Dockets 59 and 69. Plaintiff's next status report on its progress in identifying Doe is due on November 15, 2022. That report must set forth in detail the efforts Plaintiff has made to identify Doe beyond serving these three subpoenas.

**SO ORDERED.**

Date:  October 26, 2022  
 New York, New York

VALERIE CAPRONI  
United States District Judge

---

[15]  The Court declines to award attorneys' fees at this time. *See Molefi v. Oppenheimer Trust*, No. 03-CV-5631 (FB)(VVP), 2007 WL 538547, at *3 n.7 (E.D.N.Y. Feb. 15, 2007) (noting that a non-party is not entitled to attorneys' fees "every time a court quashes a [third-party] subpoena") (internal quotation marks and citation omitted).